Lance P. Jasper
Cynthia K. Smith
JASPER MORIN SMITH OLSON P.C.
P.O. Box 7785
Missoula MT 59807-7785
(406) 541-7177
(406) 541-7179 (Fax)
cks@montanalaw.com

David R. Paoli
Heather Latino
PAOLI, LATINO & KUTZMAN, P.C.
P.O. Box 8131
Missoula MT 59807-8131
 (406) 542-3330
(406) 542-3332 (Fax)
davidrp@aol.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

WALTER PESCHEL, M.D., and                    Cause No. CV-08-79-M-DWM-JCL
PEGGY PESCHEL,

                Plaintiffs,                    **COMPLAINT
AND JURY DEMAND**

vs.

CITY OF MISSOULA, CITY OF MISSOULA
POLICE DEPARTMENT, MISSOULA COUNTY,
MISSOULA COUNTY SHERIFF'S DEPARTMENT,
MISSOULA COUNTY DETENTION FACILITY,
MISSOULA CITY POLICE CHIEF
RUSTY WICKMAN, ASSISTANT CHIEF MARK MUIR,
LT. GREG WILLOUGHBY, SGT. JASON HUNTSINGER,
OFFICER CRAIG SERBA, OFFICER RYAN PRATHER,
MISSOULA COUNTY SHERIFF MIKE MCMEEKIN
and DOES 1-25,

                Defendants.

COME NOW Plaintiffs Dr. Walter Peschel and Peggy Peschel (hereinafter

1

referenced collectively as "the Peschels"), by and through counsel, Jasper Morin Smith

Olson P.C. and Paoli, Latino and Kutzman, P.C., and for their Complaint against the

Defendants, allege as follows:

## JURISDICTION AND VENUE

1.      This action arises under the Fourth and Fourteenth Amendments to the United

States Constitution, the Montana Constitution and Montana law.  This Court has

original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because some

of the claims arise under the United States Constitution.  The Court has further

jurisdiction under 28 U.S.C. § 1343 because Defendants have acted under color

of state law to deprive Dr. Peschel of his federal rights, privileges and

immunities.

2.      This Court also has supplemental jurisdiction over the Peschels' state law claims

pursuant to 28 U.S.C. § 1367, because the state law claims are part of the same

case and controversy as the federal claims.

3.      Pursuant to 28 U.S.C. § 1391(b)(1), (2), and (3) and L.R. 1.11, venue is proper in

the Missoula Division of the District of Montana because all of the Defendants

reside in and the events giving rise to these claims occurred in Missoula,

Montana.

4.      Because these claims are not alleged against the State of Montana, the

Peschels are not required to file administrative claims against the City of

Missoula and Missoula County prior to filing this action.  Mont. Code Ann. § 2-9-

301 (2007); *Stratemeyer v. Lincoln County,* 915 P.2d 175, 179 (Mont. 1996).

## PARTIES

5.     The Peschels are and were at all times relevant hereto citizens of the United States and residents of Missoula County, Montana.

6.     Defendant City of Missoula is a political organization existing under the laws of the State of Montana and is located in Missoula County.

7.     Defendant Missoula County is a political organization existing under the laws of the State of Montana.

8.     Defendant City of Missoula Police Department is a law enforcement agency of the City of Missoula.

9.     Defendant Missoula County Sheriff Department is a law enforcement agency of Missoula County.

10.    Defendant Missoula County Detention Facility is an agency of Missoula County.

11.    Defendants Missoula County Sheriff Mike McMeekin, Missoula City Police Chief Rusty Wickman, Assistant Chief Mark Muir, Lt. Greg Willoughby, Sgt. Jason Huntsinger and Officers Craig Serba, and Ryan Prather are and were at all times relevant hereto residents of the State of Montana.  Defendants McMeekin, Wickman, Muir, Willoughby, Huntsinger, Serba, and Prather are being sued in their individual and official capacities for acts and omissions that occurred within the course and scope of their employment with the City of Missoula.

12.    The true names and capacities of Does 1 - 25 are unknown at this time.  It is believed that they are and were at all times relevant hereto residents of the State of Montana.  On or more of Does 1 - 25 are individuals or entities who, in the

3

course and scope of their employment with Missoula County, wrongfully caused or contributed to the injuries alleged in this Complaint.  When their identities and capacities are determined, the Peschels will amend this Complaint to include their true names and capacities, together with the specific wrongful conduct in which they engaged.

## GENERAL ALLEGATIONS

13.   The Peschels reallege Paragraphs 1 through 12 as if fully set forth herein.

14.   On August 18, 2007, retired physician Walter Peschel was mowing the lawn of an apartment complex he owns in the City of Missoula.  Dr. Peschel was summoned by one of his tenants, Anna Martello, to provide medical care and assistance to another tenant, Julie Huguet, who was obviously incapacitated and struggling to stand upright in the parking lot of the apartment complex.

15.   When Dr. Peschel came to Ms. Huguet's aid she was standing by her car with a gun.  Before he could stop her, Ms. Huguet got into her car.

16.   Ms. Huguet pleaded with Dr. Peschel to help her, and advised him that she had ingested a large quantity of prescription medications in an effort to take her own life.

17.   Dr. Peschel asked Ms. Martello to call the police for help and to instruct the police to come without sirens so that they did not further agitate Ms. Huguet.

18.   Dr. Peschel also arranged for another person to block the parking lot exit so that Ms. Huguet could not drive away and risk injuring herself or others.

19.   While Dr. Peschel was attempting to get the exit blocked, Ms. Huguet put the car

4

in gear, backed into a parked car, and then drove to another part of the parking lot.

20.     Dr. Peschel ran to Ms. Huguet and put a rock under her tire so that she could not drive away again.  As he pleaded with her not to take her life with the gun, Missoula City Police officers began to arrive with sirens on and lights flashing.

21.     When Ms. Huguet saw the police she became more agitated and put the gun to her mouth.  Dr. Peschel assured her that she was not in trouble and that the police were there to help her.

22.     The police ordered Dr. Peschel to step away from the car, but Ms. Huguet kept begging Dr. Peschel for help and told him she would shoot herself if he left her.

23.     Over the next hour, more police arrived with flashing lights and sirens.  Ms. Huguet's overdose was taking effect, and she was starting to doze off.  Each time the police yelled at Dr. Peschel to move away from the car, Ms. Huguet would awaken, put the gun to her chest or mouth, and beg Dr. Peschel not to leave her.

24.     Dr. Peschel repeatedly asked the law enforcement officers to assist him, but they did not help him administer aid to Ms.Huguet.

25.     Dr. Peschel advised the law enforcement officers that Ms. Huguet was in grave danger because she needed to have her stomach pumped as soon as possible, and that every moment that passed threatened her life.

26.     Dr. Peschel also asked the officers to go to Ms. Huguet's apartment to find the bottle from the pills she ingested, so that Denver Poison Control could be

contacted for advice on how to treat Ms. Huguet.  The officers did not do so.

27.     When Ms. Huguet finally became unconscious, Dr. Peschel walked away and

told the police it was safe to remove her from the car.

28.     Instead of helping Ms. Huguet, the police tackled Dr. Peschel, pushing him down

a hill.  Officers Prather and Serba knocked Dr. Peschel to the ground, kneed him

in the back, and twisted his arms as they handcuffed him.  Officer Serba

electrocuted Dr. Peschel with a taser gun after he was on the ground.

29.     Peggy Peschel was present at the scene, and witnessed the excessive force

used on Dr. Peschel and the impact of the force upon him.

30.     The officers placed Dr. Peschel into the back seat of a patrol car with the

windows rolled up in the mid-day heat, and later transported him to the Missoula

County Detention Facility ("MCDF").

31.     When Dr. Peschel arrived at MCDF in the patrol car, he was visibly exhausted,

with labored breathing.  He was showing visible signs of pain.

32.     Dr. Peschel's health was fragile.  He had undergone multiple heart surgeries in

the past and suffered from diabetes.

33.     Dr. Peschel repeatedly told the MCDF officers that he was having chest pains

and needed an EKG.  For more than an hour, the MCDF officers ignored Dr.

Peschel's repeated requests for medical assistance.

34.     The MCDF officers then released Dr. Peschel without ever providing medical

assistance or transporting him to a medical facility.  Dr. Peschel was forced to

walk more than a mile from the MCDF facility to the St. Patrick Hospital

Emergency Room.

## FIRST CAUSE OF ACTION - 42 U.S.C. § 1983

35.   The Peschels reallege Paragraphs 1 through 34 as if fully set forth herein.

36.   At all times in which they interacted with Dr. Peschel on August 18, 2007,
      Defendants were acting under color of state law.

37.   At all times in which they interacted with Dr. Peschel on August 18, 2007,
      Defendants were acting within the course and scope of their employment.

38.   The Missoula City Police Department and its officers unlawfully arrested Dr.
      Peschel and used excessive force when they tackled him, kneed him in the back,
      twisted his arms, and tasered him, all in violation of Dr. Peschel's established
      and obvious statutory and constitutional rights.

39.   The MCDF and its employees acted with deliberate indifference to Dr. Peschel's
      serious medical needs in violation of his rights under the Eighth Amendment,
      rights of which a reasonable person would have been aware.

40.   Missoula City Police Chief Rusty Wickman and Missoula County Sheriff Mike
      McMeekin personally participated in the deprivation of Dr. Peschel's
      constitutional rights by enacting or ratifying policies that permitted his injuries to
      occur, and by failing to properly train, supervise, retain, and/or control the law
      enforcement personnel who injured Dr. Peschel.  Furthermore, Wickman and
      McMeekin later ratified the wrongful conduct of their personnel.

41.   Defendants Wickman and McMeekin knew or should have known that Dr.
      Peschel's constitutional rights were being violated by the conduct of the

7

personnel they supervised.

42.   Defendants Wickman and McMeekin failed to properly investigate and punish
      prior constitutional deprivations, which encouraged a culture in their departments
      of unlawful arrests, excessive use of force and deliberate indifference to the
      medical needs of inmates and arrestees.

43.   The wrongful acts of all defendants were set in motion by Defendants Wickman
      and McMeekin, and their acts or omissions caused and/or contributed to the
      deprivation of Dr. Peschel's statutory and constitutional rights, rights of which
      reasonable persons should have been aware.

44.   Defendants City of Missoula, Missoula County, Missoula Police Department,
      Missoula County Sheriff's Department and MCDF established policies that
      caused the violation of Dr. Peschel's rights under the Fourth and Fourteenth
      Amendments to the United States Constitution.

45.   The defendants committed the unlawful acts and constitutional deprivations
      pursuant to policy statements, ordinances, regulations, customs, standard
      operating procedures, or official decisions adopted and or promulgated by the
      officers and officials of the City of Missoula, Missoula County, Missoula Police
      Department, Missoula County Sheriff's Department and MCDF.

46.   It is the policy, practice, and/or custom of the City of Missoula, Missoula County,
      Missoula Police Department, Missoula County Sheriff's Department and MCDF
      to negligently hire, employ, and retain law enforcement officers.  The negligent
      hiring, employment, and retention amounted to indifference to the rights of

8

persons with whom law enforcement officers under their employ would come into contact, including Dr. Peschel.

47.    Defendants City of Missoula, Missoula County, Missoula Police Department, Missoula County Sheriff's Department and MCDF were deliberately indifferent to and acted in conscious disregard for the need to train, supervise, and discipline law enforcement officers employed by them with respect to responding to crisis situations involving suicidal persons, arresting individuals, the use of force, responding to medical needs, and investigating the misconduct of law enforcement officers.

48.    The policies adopted by these defendants regarding training, supervision, and discipline amounted to deliberate indifference to Dr. Peschel's constitutional rights.

49.    The individuals who violated Dr. Peschel's statutory and constitutional rights were officials with final policy-making authority.  Thus, the constitutional violations were acts of official governmental policies.

50.    Through their policies, ordinances, regulations, customs, or official decisions, Defendants City of Missoula, Missoula County, Missoula Police Department, Missoula County Sheriff's Department and MCDF endorsed law enforcement officers' unlawful arrests, application of excessive force and deliberate indifference to the serious medical needs of arrestees.

51.    Defendants City of Missoula, Missoula County, Missoula Police Department, Missoula County Sheriff's Department and MCDF employed policies of inaction

or acquiescence relative to law enforcement misconduct which amounted to a failure to protect Dr. Peschel's constitutional rights.  The inaction amounted to deliberate indifference because the connection between the need for more or different training, supervision, and/or discipline and the likely resulting constitutional deprivations was obvious.

52.    The City of Missoula, Missoula County, Missoula Police Department, Missoula County Sheriff's Department and MCDF policies, ordinances, regulations, customs or official decisions were the moving force behind the deprivation of Dr. Peschel's statutory and constitutional rights.

53.    Each of the foregoing acts and/or omissions (¶¶ 13-52), including the unlawful arrest, excessive use of force and failure to obtain medical assistance, directly and proximately caused and or contributed to Dr. Peschel's constitutional deprivations, injuries and damages.

## SECOND CAUSE OF ACTION - VIOLATION OF DR. PESCHEL'S RIGHTS UNDER THE MONTANA CONSTITUTION

54.    The Peschels reallege Paragraphs 1 through 53 as if fully set forth herein.

55.    Under the Montana Constitution and *Dorwart v. Caraway,* 58 P.3d 128 (Mont. 2002), Dr. Peschel has the following fundamental, inalienable, and self-executing constitutional rights: The right to individual privacy (Article II, Section 10); the right to be secure in his person, papers, home and effects from unreasonable searches and seizures (Article II, Section 11); and the right not to be deprived of life, liberty, or property without due process of law (Article II, Section 17),

56.    Defendants' acts or omissions before, during and after August 18, 2007, violated

Dr. Peschel's aforementioned constitutional rights.

57.   Dr. Peschel has the right to certain unenumerated rights, including but not limited to the right to seek recourse against those who violate his constitutional rights.

58.   As a direct and proximate result of Defendants' violation of rights granted to Dr. Peschel under the Montana Constitution, Dr. Peschel suffered severe physical and emotional injury.  Dr. Peschel is therefore entitled to compensatory damages and attorneys' fees for Defendants' violations of his state constitutional rights.

## THIRD CAUSE OF ACTION - NEGLIGENCE

59.   The Peschels hereby reallege Paragraphs 1 through 58 as if fully set forth herein.

60.   Defendants owed Dr. Peschel a duty of care while maintaining the peace and while booking him into MCDF.  In carrying out their official functions as law enforcement officers and entities, Defendants were required to protect Dr. Peschel's constitutional, statutory and common law rights.

61.   Defendants violated Dr. Peschel's constitutional, statutory and common law rights and breached duties to him as described in this complaint.  The violations accrued, in part, as a result of Defendants' negligent response to a crisis involving a suicidal individual; negligent decision to arrest Dr. Peschel when he was following his obligation to not abandon his patient; negligent use of excessive force; negligent hiring, retention, training, supervision, and discipline of law enforcement officers; negligent enactment, enforcement, and violation of law enforcement policies and procedures; negligent violation of Dr. Peschel's

constitutional, statutory, and common law rights; and negligent performance of official duties.

62.   As a direct and proximate result of Defendants' negligence, Dr. Peschel suffered severe physical and emotional injuries.

## FOURTH CAUSE OF ACTION - ASSAULT AND BATTERY

63.   The Peschels hereby reallege Paragraphs 1 through 62 as if fully set forth herein.

64.   Defendants Serba, and Prather intentionally made harmful or offensive contact with Dr. Peschel, or acted in a manner that caused him an imminent apprehension of such contact.  Defendants' use of force exceeded that necessary to restrain Dr. Peschel.

65.   Defendants' intentional acts constituted assault and battery upon Dr. Peschel, and directly and proximately caused Dr. Peschel to suffer severe physical and emotional injury.

## FIFTH CAUSE OF ACTION - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

66.   The Peschels hereby reallege Paragraphs 1 through 65 as if fully set forth herein.

67.   Defendants' negligent acts or omissions caused serious or severe emotional distress to Dr. Peschel and Peggy Peschel.  The Peschels' emotional distress was a reasonably foreseeable consequence of Defendants' wrongful conduct.

68.   As a direct and proximate result of Defendants' wrongful conduct, Dr. Peschel and Peggy Peschel suffered serious and severe emotional distress that no

reasonable person would be expected to endure.

## SIXTH CAUSE OF ACTION -
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69.   The Peschels hereby reallege Paragraphs 1 through 68 as if fully set forth

herein.

70.   Defendants' intentional acts or omissions caused serious or severe emotional

distress to Dr. Peschel and Peggy Peschel.  The Peschels' emotional distress

was a reasonably foreseeable consequence of Defendants' conduct.

71.   As a direct and proximate result of Defendants' conduct, Dr. Peschel and Peggy

Peschel suffered serious and severe emotional distress that no reasonable

person would be expected to endure.

## SEVENTH CAUSE OF ACTION - SLANDER

72.   The Peschels hereby reallege Paragraphs 1 through 71 as if fully set forth

herein.

73.   After Dr. Peschel's arrest, Defendant Rusty Wickman told a television news

reporter that Dr. Peschel prescribed the medication upon which Ms. Huguet

overdosed.

74.   Defendant Wickman's statements were false, unprivileged and defamatory *per

se,* and the statements were the direct and proximate cause of injury to Dr.

Peschel.

## EIGHTH CAUSE OF ACTION - MALICIOUS PROSECUTION

75.   The Peschels hereby reallege Paragraphs 1 through 74 as if fully set forth

herein.

76.    Following Dr. Peschel's unlawful arrest, the City of Missoula instigated a criminal prosecution against him.

77.    The City lacked probable cause to prosecute Dr. Peschel for his refusal to abandon his patient.

78.    The City maliciously chose to continue the prosecution solely to avoid a civil lawsuit.

79.    A jury of his peers acquitted Dr. Peschel of all criminal charges against him.

80.    The City's malicious conduct directly and proximately caused Dr. Peschel to suffer severe emotional and physical distress.

### NINTH CAUSE OF ACTION - SPOLIATION OF EVIDENCE

81.    The Peschels hereby reallege Paragraphs 1 through 80 as if fully set forth herein.

82.    At least one of the City police vehicles at the scene of Ms. Huguet's August 18, 2007, suicide crisis videotaped the interchange between Dr. Peschel and law enforcement officers and his subsequent arrest.

83.    The video was downloaded to a Missoula City Police Department hard drive. Several City police officers viewed the video after it was taken, concentrating especially on the part of the video that recorded the assault on Dr. Peschel and his arrest.

84.    The last person to view the video was Defendant Huntsinger.

85.    After Defendant Huntsinger viewed the video, Defendants claimed that the video became "lost" or "corrupted."

14

86.    The loss or corruption of the video occurred because someone either negligently or intentionally deleted or wrote over the video.

87.    Defendant City of Missoula Police Department made some effort to retrieve the lost video, but failed to send the computer hard drive to a forensic analyst for retrieval of the video.

88.    Defendant City of Missoula Police Department had a duty to preserve the video as potential evidence for Dr. Peschel in his criminal and civil cases.

89.    Defendant City of Missoula failed in its duty to preserve the video evidence.

90.    Defendant City of Missoula Police Department knew that Dr. Peschel was likely to file a civil complaint against it.

91.    The loss of the video evidence severely impaired Dr. Peschel's defense in his criminal case, and will severely impair his civil case as well, because the video contains incontrovertible evidence of what occurred on August 18, 2007, at the scene of Ms. Huguet's suicide crisis.

92.    The Defendants' wrongful spoliation of the evidence was the direct and proximate cause of injury to Dr. Peschel and Peggy Peschel.

**TENTH CAUSE OF ACTION - CONSPIRACY UNDER 42 U.S.C. § 1985(2)**

93.    The Peschels hereby reallege Paragraphs 1 through 92 as if fully set forth herein.

94.    Defendants City of Missoula Police Department and Defendants Wickman, Muir, Willoughby, Huntsinger, Serba and Prather are all "persons" as that term is used in 42 U.S.C. §1985(2).

15

95.     Under color of state law, these defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of impeding, hindering, obstructing and defeating the due course of justice in the State of Montana, with the intent to deny Dr. Peschel the equal protection of the laws.

96.     The actions of the City of Missoula Police Department and Defendants Wickman, Muir, Willoughby, Huntsinger, Serba and Prather evidenced a reckless and callous disregard for, and deliberate indifference to, Dr. Peschel's constitutional rights.

97.     As a direct and foreseeable consequence of this conspiracy, Dr. Peschel was deprived of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

98.     As a direct and foreseeable consequence of these deprivations, Dr. Peschel has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, and irreparable harm to his reputation.

## ELEVENTH CAUSE OF ACTION - MALICIOUS ACTS OR OMISSIONS

99.     Dr. Peschel hereby realleges Paragraphs 1 through 98 as if fully set forth herein.

100.    Dr. Peschel's damages as alleged herein were caused by Defendants' malicious acts or omissions.

101.    Defendants knew of facts or deliberately disregarded facts that created a high probability of injury to Dr. Peschel.  Defendants deliberately proceeded to act with indifference to the high probability of injury to Dr. Peschel.

102.   As a direct and proximate result of Defendants' intentional and malicious acts or omissions, Dr. Peschel suffered damages in an amount to be determined at the trial of this action.

### TWELFTH CAUSE OF ACTION - ACTING IN CONCERT

103.   The Peschels hereby reallege Paragraphs 1 through 102 as if fully set forth herein.

104.   At all times pertinent to this claim, Defendants committed tortious acts, in concert with one another, in violation of Dr. Peschel's constitutional, statutory, and common law rights.

105.   The Defendants, acting in concert, joined together to violate Dr. Peschel's constitutional, statutory, and common law rights and encouraged the violations by participating therein, thus further aiding and abetting such tortious acts.

106.   Defendants knew that the other participants' actions breached duties owed to Dr. Peschel and violated Dr. Peschel's constitutional, statutory and common law rights.  Despite this knowledge, Defendants continued to offer substantial assistance or encouragement to the other participating tortfeasors.

107.   As a direct and proximate result of Defendants' concerted acts, Dr. Peschel suffered damages in an amount to be determined at the trial of this action.

108.   Defendants are jointly and severally liable for Dr. Peschel's injuries.

### COMPENSATORY DAMAGES

109.   As a direct and proximate result of Defendants' unlawful conduct, Dr. Peschel suffered violations of his constitutional rights as set forth above.

110. As a direct and proximate result of Defendants' unlawful conduct, Dr. Peschel suffered physical and mental pain and injuries, including medical expenses, and may incur future medical expenses.

111. As a direct and proximate result of Defendants' unlawful conduct, Dr. Peschel and Peggy Peschel suffered serious and severe emotional distress.

112. As a direct and proximate result of Defendants' unlawful conduct, Dr. Peschel suffered from fright, humiliation, disgrace, embarrassment, impairment of reputation and standing in the community, and injury to character.

113. As a direct and proximate result of Defendants' unlawful conduct, Dr. Peschel suffered a loss of his established course of life.

**PUNITIVE DAMAGES**

114. The Peschels have filed this action against the law enforcement Defendants in their individual and official capacities.

115. At all times pertinent hereto: (1) Defendants exhibited a reckless or callous disregard for Dr. Peschel and Peggy Peschel's constitutional, statutory and common law rights, (2) Defendants intentionally violated federal law, and/or (3) Defendants' conduct was precipitated by evil motive or intent.  Accordingly, imposition of punitive damages is proper and warranted under 42 U.S.C. §§ 1983 and 1985.

116. Defendants' unlawful acts and omissions were willful and/or reckless. Defendants deliberately proceeded to act with indifference to the high probability of injury to Dr. Peschel and Peggy Peschel.  Such conduct justifies the

18

imposition of punitive damages under Sections §§ 27-1-220 and 221 of the Montana Code in an amount sufficient to punish Defendants and to serve as a warning to other persons and legal entities similarly situated that conduct of the kind engaged in by these Defendants is unacceptable in our society and will not be tolerated.

## ATTORNEYS' FEES

117. 42 U.S.C. § 1988 provides that the Court may allow plaintiffs to recover reasonable attorneys' fees if they prevail on claims asserted under 42 U.S.C. §§ 1983 or 1985. Dr. Peschel has brought this action, in part, under 42 U.S.C. §§ 1983 or 1985. Accordingly, Dr. Peschel may recover his attorneys fees incurred in bringing this action pursuant to 42 U.S.C. § 1988.

118. Dr. Peschel is entitled to recover reasonable attorneys' fees for violation of his state constitutional rights under the private attorneys general doctrine.

## DEMAND FOR JURY TRIAL

The Peschels hereby demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Peschels pray for judgment as follows:

1. Damages in a reasonable amount to fully compensate Dr. Peschel for deprivation of his constitutional rights;

2. Damages in a reasonable amount to fully compensate Dr. Peschel for any past and future medical expenses;

3. Damages in a reasonable amount to fully compensate Dr. Peschel for his past

and future physical and mental pain and suffering;

4.    Damages in a reasonable amount to fully compensate Dr. Peschel and Peggy
      Peschel for their past and future emotional distress;

5.    Damages in a reasonable amount to fully compensate Dr. Peschel for the loss of
      his established course of life;

6.    Damages in a reasonable amount to fully compensate Dr. Peschel for his
      humiliation, loss of reputation and community standing, and injury to character;

7.    Punitive damages in an amount sufficient to punish Defendants and serve as a
      warning to other similarly situated persons and entities that such conduct will not
      be tolerated;

8.    Attorney fees pursuant to 42 U.S.C. § 1988 and Montana law;

9.    Dr. Peschel's costs and disbursements incurred herein; and

10.   Such other and further relief as the Court deems just and proper.

      DATED this 29th day of May 2008.

                              JASPER MORIN SMITH OLSON P.C.


                              By: /s/ Lance P. Jasper
                                  Lance P. Jasper
                                  Attorney for Plaintiffs

                              PAOLI, LATINO & KUTZMAN P.C.

                              By: /s/ David R. Paoli
                                  David Paoli
                                  Attorney for Plaintiffs