Lance P. Jasper
Cynthia K. Smith
**JASPER MORIN SMITH OLSON P.C.**
P.O. Box 7785
Missoula MT 59807-7785
(406) 541-7177
(406) 541-7179 (Fax)
cks@montanalaw.com

David R. Paoli
Heather Latino
**PAOLI, LATINO & KUTZMAN, P.C.**
P.O. Box 8131
Missoula MT 59807-8131
(406) 542-3330
(406) 542-3332
davidrp@aol.com
*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA,
### MISSOULA DIVISION

| | |
|---|---|
| WALTER PESCHEL, M.D., and PEGGY PESCHEL )<br><br>Plaintiffs, )<br><br>v. )<br><br>CITY OF MISSOULA, CITY OF MISSOULA POLICE DEPARTMENT, MISSOULA COUNTY, MISSOULA COUNTY SHERIFF'S DEPARTMENT, MISSOULA COUNTY DETENTION FACILITY, MISSOULA CITY POLICE CHIEF RUSTY WICKMAN, ASSISTANT CHIEF MARK MUIR, LT. GREG WILLOUGHBY, SGT. JASON HUNTSINGER, OFFICER CRAIG SERBA, OFFICER RYAN PRATHER, OFFICER DUNCAN CRAWFORD, MISSOULA COUNTY SHERIFF MIKE MCMEEKIN and DOES 1-25, )<br><br>Defendants. ) | Cause No.: CV-08-79-M-DWM-JCL<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO CITY'S MOTION TO DISMISS** |

## INTRODUCTION

This brief is in response to the City Defendants' motion to dismiss filed on August 6, 2008. Dr. Peschel contests all of the motion to dismiss except the 42 U.S.C. § 1985 claims. Although Dr. Peschel believes that some of the officers' actions may have been motivated by ageism, he will voluntarily dismiss this claim. Some of this brief is ordered differently from the City's motion to facilitate a clear discussion of the issues.

## DISCUSSION

### I.    STANDARD FOR A MOTION TO DISMISS

Dismissal is only allowed where there is no plausible set of facts that could entitle the plaintiff to recovery according to the complaint. *Teahan v. Wilhelm*, Slip Copy 2007 WL 5041440 at *2 (S.D. Cal. December 21, 2007); *Bell Atlantic Corp. v. Twombly*, ___U.S.___, 127 S. Ct. 1955, 1964–65 (May 21, 2007).

Much of Defendant's argument for dismissal rests on a reading of *Bell Atlantic Corp. v. Twombly* that is unsupportable on its face or by its subsequent treatment. *Twombly* is an antitrust case in which the plaintiffs alleged, "[Major] telecommunications providers engaged in certain parallel conduct unfavorable to competition." *Twombly*, 127 S. Ct. at 1961. The plaintiff in that case argued that the "agreement" to refrain from competing was inferable from the providers not meaningfully pursuing attractive business opportunities when they had a competitive advantage. *Id.* at 1962. The complaint did not allege other factual context that would have dissuaded the Court that the providers were acting for other, independent business purposes. *Id.* at 1961. Ultimately, the plaintiffs relied on an inference from negative facts (absence of meaningful competition).

The Court held that the requirement to plead grounds for relief requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1965. Rule 8(a)(2) requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* In *Twombly*, pleading context undermining the alternate explanation could have been enough. *Id.* at 1966. For example, the Court said, "parallel behavior that would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties" would be sufficient. *Id.* at n. 4. "[I]n practice, a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 1969 (internal quotation omitted). The Court held that a Rule 12(b)(6) motion succeeds if there is no set of plausible facts suggested by the complaint under which the plaintiff may prevail. *Id.*

The Supreme Court was not clear about whether the "plausibility" standard applies outside the antitrust context. The Court subsequently cited *Twombly* for the proposition that "[specific] facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, ___U.S.___, 127 S. Ct. 2197, 2200 (June 4, 2007) (internal quotations omitted, citing *Twombly*). The *Twombly* decision also cites *Sweirkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), for the proposition that a heightened pleading standard would require an amendment to the Federal Rules of Procedure. *Twombly*, 127 S. Ct. at 1973 n. 14. There, the Court held that the requirements of a complaint depend on the context of the

suit, and affirmed that discovery may be required to present a full *prima facie* case.

*Sweirkiewicz*, 534 U.S. at 512.

> "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) *ovrtn'd. on other grnds. Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

A few courts have held that *Twombly* does not heighten the general standard of pleading at all outside of the antitrust context. *Ollie v. Plano Independent School Dist.*, 2008 WL 783562, *2 (E.D.Tex. Mar 20, 2008) (concluding that *Bell* did not overturn the *Swierkiewicz* and holding that a pleading must give a defendant fair notice and that a heightened pleading standard in the employment discrimination context is not appropriate); *CBT Flint Partners, LLC v. Goodmail Systems, Inc.*, 529 F.Supp.2d 1376, 1381 (N.D. Ga. 2007) (refusing to incorporate a heightened pleading standard into the patent context). Thus, *Twombly* may not lay down a generally applicable heightened standard.

If the general pleading standard is different, it only requires a flexible plausibility component based on the context of the case. Most Circuits have interpreted *Twombly* to heighten the general standard in only a limited way. "After careful consideration of the Court's [*Twombly*] opinion and the conflicting signals from it that we have identified, we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible "plausibility standard," which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007); *see*

---

*also Grosz v. Lassen Community College Dist.*, 2008 WL 2119923 at *5 (E.D. Cal. May

20, 2008) (adopts plausibility standard in the employment context); *Boykin v. KeyCorp*,

521 F.3d 202, 213–14 (2d Cir. 2008) (adopts the plausibility standard of *Twombly*, but

rejects the need for amplification of factual claims in a *pro se* case); *Andrews Farms v.

Calcot, Ltd.*, 527 F.Supp.2d 1239, 1250, 1257 (E.D. Cal. 2007) (adopting plausibility

theory and denying a motion to dismiss in the fraud context); *Filiti v. USAA Cas. Ins.

Co.*, 2007 WL 2345012 at *3 (E.D. Cal. 2007) (applying the plausibility theory to the

contracts context, but upholding a complaint).

In a particularly thoughtful opinion, the Tenth Circuit explains, "'plausible'

cannot mean 'likely to be true.' Rather, 'plausibility' in this context must refer to the

scope of the allegations in a complaint: if they are so general that they encompass a wide

swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims

across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242,

1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).  Here, Dr. Peschel has not

just "crossed the plane" of the "goal line," but has securely buried his complaint well into

the plausible "end zone."

The Tenth Circuit goes on to hold that the sufficiency of the complaint depends

largely on context, but that the *Twombly* Court "was particularly critical of complaints

that 'mentioned no specific time, place, or person involved...'" *Id.* at 1248; *see also Hear-

Wear Technologies, LLC v. Oticon, Inc.*, 551 F.Supp.2d 1272, 1279 (N.D. Okla. 2008)

(upholding an antitrust complaint in the wake of *Twombly*, according to the *Robbins*

holding).  To the extent that Defendants have articulated a legal standard beyond this for

dismissal, they are incorrect.

## II.   DEFENDANTS WICKMAN, MUIR, AND WILLOUGHBY ARE NOT IMMUNE FOR MALICIOUS, OPPRESSIVE, OR FRUADULENT ACTION UNDER MONTANA LAW

The jumbled Montana statutory scheme outlining government actors' immunity provides for immunity only for actions within the course and scope of the employee's duties.  Mont. Code Ann. § 2-9-305(5), under which the defendants claim immunity, provides:

> "(5) Recovery against a governmental entity under the provisions of parts 1 through 3 of this chapter constitutes a complete bar to any action or recovery of damages by the claimant, by reason of the same subject matter, against the employee whose negligence or wrongful act, error, omission, or other actionable conduct gave rise to the claim. In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity *acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment*, unless the claim constitutes an exclusion provided in subsections (6)(b) through (6)(d)." (emphasis added).

Mont. Code Ann. § 2-9-305(6), which outlines the government's duty to defend and indemnify provides:

> "(6) In a noncriminal action in which a governmental entity employee is a party defendant, the employee may not be defended or indemnified by the employer for any money judgments or legal expenses, including attorney fees, to which the employee may be subject as a result of the suit if a judicial determination is made that:
> (a) the conduct upon which the claim is based constitutes oppression, fraud, or malice or for any other reason does not arise out of the course and scope of the employee's employment;
> (b) the conduct of the employee constitutes a criminal offense as defined in Title 45, chapters 4 through 7;
> (c) the employee compromised or settled the claim without the consent of the government entity employer; or
> (d) the employee failed or refused to cooperate reasonably in the defense of the case."

This statute blocks city liability for any of the actions listed, and removes the governmental duty to defend.

This scheme does not provide immunity for actors who, under color of state law, commit malicious, fraudulent, or oppressive actions. The plain language of the statute excepts any actions outside of the course and scope of duty from immunity. *Id.* at § 2-9-305(5). This section also specifically precludes immunity for criminal action or actions interfering with a civil defense by reference to subsection (6)(b)–(6)(d). *Id.* Subsection (a) is notably absent from the immunity statute. However, the plain language of subsection (a) is a definition of action outside of the course and scope of duty: "(a) the conduct upon which the claim is based constitutes oppression, fraud, or malice *or for any other reason does not arise out of the course and scope of the employee's employment…*" *Id.* at 2-9-305(6)(a) (emphasis added).

Governmental actor immunity cannot be extended to acts the government is not required to defend or for which it will not accept liability. If the statute is read as Defendants suggest, the result is that Defendants Wickman, Muir, and Willoughby are immune from liability for the acts outside the course and scope of their employment and the City has no liability from these acts either. *See* Mont. Code Ann. § 2-9-105 (exempting government entities for exemplary damages). A statutory scheme that creates a convoluted zone of governmental action, for which there is *no* liability is unfair and unconstitutional, in violation of Mont. Const. Art. II, § 16. This interpretation denies plaintiffs—who have suffered real loss—any collection on these serious claims from anyone and the ability to secure punishment through punitive damages, where appropriate. To the extent that Mont. Code Ann. § 2-9-305(6)(a) defines actions that

cannot be presumed to be within the course and scope of employment, the City is precluded from simply declaring that these actions are within the course and scope of employment, thus blocking the plaintiffs from recovering for malicious, oppressive, and fraudulent conduct.

Dr. Peschel has identified two distinct actions from which his state and federal claims arise. The first actions are those taken by the police officers who tackled and tased Dr. Peschel and the detention center guards who refused medical aid and ignored his serious medical needs. *See* Compl. ¶¶ 28, 33, 34. Some of these actions were committed under the course and scope of the various officers' duties. For these parts of the actions, the individual defendants are entitled to indemnity and defense under Mont Code Ann § 2-9-305(6). However, some of these actions, or some parts of these actions, cannot be considered to be under the course and scope of the duties because they fit into the exceptions to Mont. Code Ann. § 2-9-305(6). These are actions classified as oppressive, fraudulent, or malicious. *All of these actions*, whether covered by immunity or indemnity statutes were taken under color of state law. That is, all of the actions were done for the benefit of the municipalities, and are admitted to have been within the duties of the officers for the purposes of federal liability. *See e.g.* Ans. ¶ 9 (admitting that the actions were conducted under the course and scope of the officer's duties).

The second set of actions includes the failure to train, failure to supervise, failure to discipline, and ratification of civil rights violations that has created a culture of deliberate indifference to the rights of bystanders, the criminally accused, and citizens with mental health conditions, which Dr. Peschel alleges allowed his injuries to happen. Compl. ¶¶ 40–53. Under § 1983, municipalities are liable for deliberate indifference that

results in constitutional violations. In this case, the city of Missoula is liable for all of Dr.

Peschel's damages caused by the police—whether malicious, oppressive, fraudulent, or

not—because *its* failures constitute deliberate indifference to him and others like him.

In sum, Defendants' admission that the actions of the officers and officials were

within the course and scope of their duties is truncated by the immunity and indemnity

statutes, which categorically deny some actions as being within the course and scope.[1]

The admission is forceful evidence, however, that the actions were all done under color

of state law for the purpose of the federal claims. Dismissal should be denied.

## III.   DR. PESCHEL HAS ALLEGED PLAUSIBLE FACTS INDICATING LIABILITY UNDER 42 U.S.C. § 1983[2]

Congress enacted § 1983 as a recovery mechanism for damages caused by a

violation of federally guaranteed rights. *Graham*, 490 U.S. 386, 393 (1989); *See also*

*Baker v. McCollan,* 443 U.S. 137, 144, n. 3 (1979).

> "Every person who, under color of any statute, ordinance, regulation, custom, of usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983 (2006).

This section "provides a cause of action for all citizens injured by an abridgment of

[protections granted by the Federal Constitution]." *Collins v. City of Harker Heights*, 503

U.S. 115, 120 (1992). Courts analyze § 1983 claims in two steps: 1) whether the injury is

---

[1] Further, the City denies that officers tased Dr. Peschel or refused him medical attention. Therefore, the City has not acknowledged that taking or refusing medical aid was within the course and scope.

[2] This contention is in response to the Defendants' third articulated argument, but is reordered for conceptual clarity and to respond better to Defendants' motion.

---

caused by a violation of the constitution, and 2) whether the state organ being sued is responsible for the violation. *Id.*

Dr. Peschel has sufficiently alleged that his Fourth and Eighth Amendment rights—incorporated against the states and political subdivisions through the Fourteenth Amendment—have been violated. Dr. Peschel called the police to help him with a dangerous situation. Compl. ¶¶ 17, 24–26. The police responded to the situation by tackling him, twisting his arms and electrocuting him. *Id.* at ¶ 28. For no justifiable reason, they placed him into the police car, shirtless, beaten up, and wholly without concern for his wellbeing. *Id.* at ¶¶ 28–29, 31. When Dr. Peschel tried to tell them that he was nervous about his medical risks, they responded by ignoring him or escalating their rough treatment of him. Compl. ¶¶ 33–34. These facts plausibly indicate a violation of his constitutional rights.

The abhorrent actions of the individual defendants who are undoubtedly individually liable for their actions are not the basis for municipal liability under § 1983. Rather, deliberate indifference by the government employer gives rise to municipal liability under § 1983, if a constitutional violation results. For the purposes of § 1983, "every person" includes municipalities "since municipalities through their official acts could, equally with natural persons, create harms intended to be remedied." *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 685–86 (1978). "*Monell* requires only that the official policy cause the constitutional violation, not that the policy itself be unconstitutional." *McKinley v. City of Eloy*, 705 F.2d 1110, 1117 (9th Cir. 1983). However, liability does not extend to mere employers of tortfeasors under § 1983. A plaintiff may establish that a municipality caused a violation in at least three ways: 1)

prove that the violation was committed pursuant to a formal governmental policy or a practice or custom of the local government entity; 2) prove that the tortfeasor acted with final policymaking authority when the tort was committed; or 3) prove that the action has been ratified by an official with final policymaking authority. *Gilette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). Policymaking authority is a question of fact or a matter of state law. *Hammond v. County of Madera*, 859 F.2d 797, 802 (9th Cir. 1988). Municipalities often spread policymaking authority. *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir. 1991) (holding that the Sheriff may be the ultimate policymaking authority for training) *decision superseded by statute on other grounds* 1991 Amendments to the Civil Rights Act; *See Davis v. City and Co. of San Francisco*, 976 F.2d 1536 (9th Cir. 1992)).

A policy or custom theory requires a showing that there is a permanent, widespread practice with the force of law. *Gilette*, 979 F.2d at 1348–49. The plaintiff can prove this by "repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Id.* at 1349. A single unconstitutional incident with employees is not sufficient, generally. *Sanders v. District if Columbia*, 522 F. Supp. 2d 83, 88 (Dist. D.C. 2007).

A ratification theory requires that some official with policymaking authority has ratified the decision and the rationale of tortious conduct. *Gilette*, 979 F.2d at 1348. "An unconstitutional governmental policy can be inferred from a single decision taken by officials whose acts represent official policy, even though the decision is not intended to govern future situations." *Hammond*, 859 F.2d at 801. (holding a board of supervisors liable for recording invalid deeds, authorizing incorporations of roads) *abrogated on*

*gross negligence standard, L.W. v. Grubbs*, 92 F.3d 894, 897–98 (9th Cir. 1996). "[The Supreme Court] did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such violation, could trigger municipal liability." *Bd. of Co. Commnrs. of Bryan Co. v. Brown*, 520 U.S. 397, 409 (1997).

The burden of a complaint is to allege sufficient facts to move the case forward. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). In *Phillips*, a decedent brought a § 1983 action against a 911 call center employee, who used his job at 911 to find his former girlfriend and shoot her, her sister, and her boyfriend. *Id.* at 235. The *Phillips* Court analyzed *Twombly* and decided, "courts accept all factual allegations as true, construe the complaint in a light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* at 223 (citation omitted). "[*Twombly*] 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* at 234.

Dr. Peschel has plead that his injuries and damages are the plausible result of a failure on the part of the City to scrutinize new hires, to train those employees on the limits of force or suicide protocol, to supervise those employees, a custom of ratification of bad actions by the police, or an overall custom of failure to consider the constitutional rights of those unfortunate persons who come into contact with some members of the police force in mixed circumstances. Compl. ¶¶ 40–53. The context of this case, however, makes pleading more information than this very difficult. At the pleading

stage, the City is in possession of the majority of the evidence of this claim and in some circumstances has destroyed it or failed to maintain it, despite a duty to do so. *See id.* at ¶¶ 82–90. Dr. Peschel presents his good faith belief that a government with employment practices that take constitutional rights into consideration, will not have employees who tackle and tase a sixty-one year old doctor who is trying to aid them in a dangerous situation. *Id.* at ¶ 28. He does not have access to all of the internal records of the city and cannot plead with certainty where the city failed. The city police should not take a clearly innocent man to the detention center for negligible reasons, ignore his medical requests, and then prosecute him. *Id.* at ¶¶ 28–29, 31, 76–80. Dr. Peschel is entitled to discover if his explanation of the City's failure is correct and, if he is correct, to request his damages from a jury. These are the allegations contained in the complaint, and if taken as true, state a claim that the City of Missoula, through the police department and its leaders have created policy and taken action without regard to the rights of citizens in the position of Dr. Peschel. Because Dr. Peschel has alleged plausible facts under a cognizable legal theory, this Court should deny dismissal.

## IV. MISSOULA POLICE DEPARTMENT AND DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE LISTED SEPARATELY TO PUT THE PARTIES AND THE COURT ON NOTICE OF THEIR SEPARATE ROLES IN THE CONSTITUTIONAL VIOLATIONS[3]

Dr. Peschel sued and identified the parties who likely have final policymaking authority with regard to some of the policies and practices that make up the overall custom of deliberate indifference or ratification. Pleadings are designed to provide notice to the defendants, the judge, and the jury of the claims that are being alleged.

---

[3] This contention is in response to the Defendants' second and fourth articulated arguments, but is reordered and combined for conceptual clarity and to respond better to Defendants' motion.

"In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008).

As discussed, the federal claims in this suit require identification of the final policymakers. Dr. Peschel has identified those defendants, singly, whom he believes have final policymaking authority in this case, to the best of his knowledge.

Defendants in this motion have considered the utility of naming parties with a view towards collection, only. They argue that because Dr. Peschel can expect only one collection, the parties are the same. Def. Br. at 6, 11–12. While the coffer may be singular, the identities that give rise to liability are not, and so Dr. Peschel has named all parties who may have final policy making authority in an attempt to put Defendants on notice of the claims which require defending. Because discovery is required to determine which of these parties have final policymaking authority, dismissal is unwarranted and unwise. Contrary to Defendants' position, a motion to dismiss these "parties"—or manifestations of the same party, according to Defendants' theory—makes the complaint less clear, and removes a good indicator of the plain statement of Dr. Peschel's liability theory.

The named parties should not be dismissed because Dr. Peschel has alleged that they have final policymaking authority in good faith. The police department is a political subdivision, which has been delegated power by the City and which may have final policymaking authority as to training, supervision, and hiring of some police officers. Compl. ¶¶ 6, 8. A local municipal corporation, like the police department, is just as

likely to have official acts, policy, or custom that may violate the rights of a citizen as a city or county under the *Monell* standard. Dr. Peschel alleged that the officers, in their official capacities have a similar grant of power, or they have the power to ratify the injurious acts of their subordinates. *See e.g.* Compl. ¶ 11.

Dr. Peschel has stated his claim in the clearest way he could. Because clarity is valuable in pleading, the Court should deny the request for dismissal.

## V.    § 1983 ANALYSIS CAN PROCEED ACCORDING TO ANY CONSTITUTIONAL GUARANTY

*Graham* did not foreclose all Fourteenth Amendment claims under § 1983 of the Civil Rights Act. "We reject this notion that all excessive force claims brought under § 1983 are governed by a single generic standard." *Graham*, 490 U.S. at 393. Rather, the claim should be governed by the standard that applies to the underlying constitutional right. *Id.* at 393–94; *See also Tennessee v. Garner,* 471 U.S. 1, 7-22 (1985) (excessive arrest analyzed under the Fourth Amendment); *Whitley v. Albers,* 475 U.S. 312, 318-326 (1986) (claim of excessive force on convicted prisoner analyzed under the Eighth Amendment) "In most instances, [§ 1983 rights] will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct." *Graham*, 490 U.S. at 393–94.

The holding in *Graham* was a response to a national trend set off by *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973), which advocated a single substantive due process analysis for all excessive force claims. *Graham* does not suggest that remedies are never available under § 1983 for violations of substantive due process rights. Rather, it

suggests that *most* excessive force claims would be better categorized as Fourth or Eighth Amendment issues. Moreover, the Fourteenth Amendment is the source of obligation for the Fourth and Eighth Amendment duties placed on the states through incorporation, all of which is fairly called "substantive due process." *See Baze v. Rees*, 128 S. Ct. 1520, 1529 (2008) (impliedly holding that the Eighth Amendment applies to the states); *Mapp v. Ohio*, 367 U.S. 643 (1961) (incorporating the Fourth Amendment along with the exclusionary rule). § 1983 provides a claim for the violation of any federally guaranteed right, and this Court should deny Defendants' request for dismissal.

VI.    **ARTICLE II, § 16 OF THE MONTANA CONSTITUTION IS FUNDAMENTAL AND SELF-EXECUTING, AND A CLAIM BASED ON THE RIGHT TO RECOURSE IS A COGNIZABLE LEGAL THEORY**

The right to seek recourse under Art. II, § 16 of the Montana Constitution is a fundamental right. Rights articulated in Art. II—the Declaration of Rights—of the Montana Constitution are fundamental. *Butte Community Union v. Lewis*, 219 Mont. 426, 430, 712 P.2d 1309, 1311 (1986). A right is also fundamental if without it, other fundamental rights would be meaningless. *Id.* at 430, 712 P.2d at 1311–13. The right to seek recourse is located in the Montana Declaration of Rights and even if it was not, it is a right without which every other right would be rendered meaningless. Defendants' reliance upon *Meech* is misplaced considering its more recent treatment in *Kloss* and the development of Montana fundamental right analysis. "This right is as much a fundamental right as is any other Article II right...not only because the right of access to the courts is included within the Constitution's Declaration of Rights, but also, and just as importantly, without the right of access to the courts, other Article II rights would have little protection from infringement and, thus, little meaning." *Kloss v. Edward D. Jones*

*& Co.*, 2002 MT 129, ¶ 57, 310 Mont. 123, ¶ 57, 54 P.3d 1, ¶ 57 (Nelson, Trieweiler, Leaphart & Cotter, JJ., concurring).[4]  Access to speedy recourse is a fundamental right.

The right to recourse and speedy remedy is self-executing according to the factors relied on in *Shields v. Gerhart* and affirmed in *Dorwart*. *Dorwart v. Caraway*, 2002 MT 42, ¶ 44, 312 Mont. 1, ¶ 44, 38 P.3d 128, ¶ 44 (advocating the self-executing analysis in *Shields v. Gerhart*, 163 Vt. 219, 5658 A.2d 924 (1995).  *Shields* suggests three criteria, "no one of which is dispositive." *Shields*, 658 A.2d at 928.  According to these criteria, a self-executing provision should 1) be more than an expression of general principles; 2) not address itself to the legislature; and 3) be in harmony with the rest of the constitutional scheme of rights.  *Id.*  More recently the Montana Supreme Court has focused the self-executing analysis to the second criteria under *Shields*.  *Columbia Falls Elementary School Dist. No. 6 v. Montana*, 2005 MT 69, ¶ 14, 326 Mont. 304, ¶ 14, 109 P.3d 257, ¶ 14.

> Art. II, § 16 is self-executing.
>
> "Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state. Right and justice shall be administered without sale, denial, or delay."

This language is directed to the individual and to the legislature, but it calls for no legislative action in order to be effective.  It is a specific guaranty to the individual.

---

[4] This is actually a holding in this case signed onto by a plurality of justices.  The Defendants rely on *Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 776 P.2d 488 (1989).  The development of fundamental rights analysis in *Butte Community Union* and *Kloss*, makes the precedence value of *Meech* tenuous.  To the extent *Meech* is still good law, it stands for the proposition that a plaintiff may not insist on a specific remedy.  *Meech*, 238 Mont. at 30–35, 776 P.2d at 493–96.  That is, the legislature can change the common law by statute.  This point is not in dispute.

Defendants hindered Dr. Peschel's right to seek recourse and thereby damaged him. He alleged that the Defendants have spoliated evidence in direct contravention of his right to bring this suit and defend himself against a criminal charge. Compl. ¶¶ 82–91. He has alleged that the City maliciously prosecuted him. Compl. ¶¶ 75–79. Both of these actions by the City and its subdivisions have inhibited and potentially denied Dr. Peschel's fundamental right to a speedy remedy for his injuries.

## VII.   SPOLIATION IS A COGNIZABLE LEGAL THEORY FOR RECOVERY UNDER MONTANA LAW

"Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages." Mont. Code Ann. § 27-1-202. Detriment is "a loss or harm suffered in person or property." *Id.* at § 27-1-201. Spoliation of evidence is unlawful and can support a recovery of damages, when other judicial remedies are not sufficient. *Lauman v. Lee*, 192 Mont. 84, 89, 626 P.2d 830, 833 (1981); *See also Oliver v. Stimson*, 1999 MT 328, ¶¶ 34, 40–57, 297 Mont. 336, ¶¶ 34, 40–57, 993 P.2d 11, ¶¶ 34, 40–57. Spoliation also supports a recovery of exemplary damages. *Lauman*, 192 Mont. at 89, 626 P.2d at 833.

Dr. Peschel alleges that the Defendants spoliated exculpatory evidence to the detriment of his criminal defense. Compl. ¶¶ 82–86. The spoliation impaired his criminal defense because the physical evidence on the videotape would have been dispositive. Thus, the spoliation of the videotape required an innocent man to find alternate means to prove his innocence, and because he was innocent—not because the videotape was wholly unnecessary to his defense—he was set free. For Defendants to argue that because an innocent man can prove innocence in many ways, the City and Police are free of their obligation to protect, preserve, and share exculpatory evidence, is

---

shocking and offensive. *See* Def. Br. at 14. Dr. Peschel paid the price in the cost of his criminal defense, which would have been wholly unnecessary if the videotape, spoliated by Defendants, was available to him. He also suffered anxiety and stress associated with trying to clear his name without the tape. Moreover, the absence of this tape may make his damages and liability harder to prove in this civil trial as alleged. Compl. ¶ 91. "Damages may be awarded in a judicial proceeding for detriment resulting after the commencement thereof or certain to result in the future." Mont. Code Ann. § 27-1-203. Dr. Peschel is entitled by law to any damages that he can prove to the satisfaction of the jury and a preponderance of the evidence. Dr. Peschel plead this claim affirmatively to preserve his right to recover those damages.

Defendants rely on dicta from *Oliver* that is readily distinguishable from this case. *Oliver* recognized a third-party spoliation claim for both negligent and intentional spoliation, because the Rules of Civil Procedure are ill-equipped to deal with a situation where the spoliator is not a party. *Oliver*, ¶¶ 34, 40–57. Similarly, there is no procedural remedy for the spoliation in the criminal trial. Thus, under the analysis in *Oliver*, a spoliation claim is permissible. While the judge in the criminal trial, Judge Anderson, ruled in favor of the City on spoliation, she did so in error. Had Dr. Peschel been found guilty, he would have appealed that error. Having been acquitted, he has no sufficient remedy without this cause of action.

## VIII. THE MALICIOUS ACTS OR OMISSIONS CLAIM IS A METHOD OF AFFIRMATIVELY ALLEGING A BASIS FOR PUNITIVE DAMAGES AGAINST DEFENDANTS AS INDIVIDUALS, BUT IT COULD ALSO SUPPORT COMMON LAW DAMAGES

Dr. Peschel alleged malice affirmatively in order to preserve his right to exemplary damages against the Defendants. "[Reasonable] punitive damages may be

---

awarded when the defendant has been found guilty of actual fraud or actual malice." Mont. Code Ann. § 27-1-221.

Regardless, malice is an actionable claim under the common law. Mont. Code Ann. § 27-1-202 incorporates the idea that the common law is designed to change and grow in order to meet the situation. A theory of malice is not out of the question, merely because it has not yet been recognized. Any court can easily recognize an independent tort of malice, unless precluded by statute, and the tort of malice is not out of line with Montana punitive damages statutes, despite Defendants' unreasoned conclusion to the contrary. *See* Def. Br. at 16.

## CONCLUSION

Defendants' arguments throughout this motion seem like a shifting mirror to prevent a clearly damaged plaintiff from recovering. To say that an injured plaintiff can only *bring a complaint* and be made whole—by the City, or state actors, or whomever— when he can plead all of the information in the defendant's possession is not a fair characterization of the law of this case or the recent precedent in *Twombly*. The law imposing liability for violations of federally guaranteed rights is not a meaningless mirage. Dr. Peschel has plead sufficient facts under cognizable legal theories to support each of his claims.

DATED this 12th day of September, 2008.

> PAOLI, LATINO & KUTZMAN, P.C.
> ATTORNEYS FOR PLAINTIFFS
>
> By:   /s/ David R. Paoli
> David R. Paoli
> 257 West Front Street, Suite A
> P.O. Box 8131
> Missoula, Montana 59802

---

## CERTIFICATE OF SERVICE
### L.R. 5.2(b)

I herby certify that, on September 12, 2008, a copy of the foregoing document was served on the following persons by the following means:

1 ,2, 3, 4 CM/ECF

_____ Hand Delivery

_____ Mail

_____ Overnight Delivery Service

_____ Fax

_____ E-Mail

1.    Clerk of Court

2.    William L. Crowley
      Natasha Prinzing Jones
      Thomas J. Leonard
      Jeffrey M. Roth
      BOONE KARLBERG P.C.
      201 West Main, Suite 300
      P.O. Box 9199
      Missoula, MT 59807-9199

3.    Charles E. McNeil
      Elena J. Zlatnik
      Garlington, Lohn & Robinson, PLLP
      199 West Pine • P. O. Box 7909
      Missoula, MT 59807-7909

4.    Brendon J. Rohan
      Poore, Roth & Robinson
      1341 Harrison Avenue
      PO Box 2000
      Butte, MT 59702