## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

WALTER PESCHEL, M.D., and
PEGGY PESCHEL,                          CV 08-79-M-RFC-JCL

        Plaintiffs,

                         ORDER, and
     vs.                              FINDINGS AND
                         RECOMMENDATION OF
CITY OF MISSOULA, acting through the     UNITED STATES
Missoula Police Department,              MAGISTRATE JUDGE
MISSOULA COUNTY,
MISSOULA COUNTY SHERIFF'S DEPARTMENT,
MISSOULA COUNTY DETENTION FACILITY,
MISSOULA CITY POLICE CHIEF RUSTY
WICKMAN, ASSISTANT CHIEF MARK MUIR,
LT. GREGG WILLOUGHBY, SGT. DANIEL JASON
HUNTSINGER, OFFICER CRAIG SERBA,
OFFICER RYAN PRATHER, MISSOULA
COUNTY SHERIFF MIKE MCMEEKIN,
OFFICER KEVIN RIEKENA, OFFICER
MICHAEL HASH, OFFICER JEREMY BOECKEL,
and OFFICER GARRETT JOHNSON,

        Defendants.

_____

    Pending before the Court is Defendants City of Missoula,

Missoula Police Department, Rusty Wickman, Mark Muir, and Gregg

Willoughby's Motion to Dismiss filed under Fed. R. Civ. P.

12(b)(6).  On November 13, 2008, the Court heard oral argument on

the motion.  Having considered the parties' arguments, and having

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 1

reviewed the parties' briefs, the Court deems it appropriate to grant the motion in part as stated below.

**I.**   **BACKGROUND**

This lawsuit arises from events which occurred in Missoula, Montana on August 18, 2007, when officers of the Missoula Police Department arrested Plaintiff Walter Peschel.  On that date Dr. Peschel was attempting to prevent an individual, Julie Huguet, from committing suicide.  Ms. Huguet was in her car in the parking lot of an apartment complex.

While attempting to assist Ms. Huguet, Dr. Peschel asked a bystander to call the police.  When the police officers arrived at the scene the officers directed Dr. Peschel to step away from Ms. Huguet's car.  For various reasons described in the Amended Complaint, and contrary to the police officers' orders, Dr. Peschel determined he needed to remain at Ms. Huguet's side to prevent her from committing suicide.  Eventually, Ms. Huguet became unconscious and Dr. Peschel stepped away from Ms. Huguet. While walking away from Ms. Huguet's vehicle Dr. Peschel alleges Defendants Craig Serba and Ryan Prather, Missoula City Police Officers, tackled Peschel, pushed him to the ground, kneed him in the back, twisted his arms, and "electrocuted" him with a taser gun.  Am. Compl. at ¶ 28.

The police officers arrested Dr. Peschel and transported him to the Missoula County Detention Facility ("MCDF").  Dr. Peschel

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 2

alleges that while at the MCDF he was visibly exhausted and had visible signs of pain.  He states he had undergone multiple heart surgeries and that he suffers from diabetes.  Dr. Peschel alleges that the officers at the MCDF ignored his requests for medical assistance for more than an hour and then released him from custody without providing him any medical treatment.  Dr. Peschel states that after his release from custody he walked from the MCDF to St. Patrick Hospital's emergency room.

The City of Missoula subsequently prosecuted Dr. Peschel for obstructing a peace officer in violation of Mont. Code Ann. § 45-7-302.  Following a jury trial Dr. Peschel was acquitted of all the criminal charges.

Walter and Peggy Peschel commenced this action based on the foregoing events which they allege give rise to Defendants' liability.[1]  Mrs. Peschel was present at the scene of the events described above, and she witnessed the police officers' alleged excessive use of force against Dr. Peschel.  The Peschels advance several causes of action against the Defendants under both state and federal law.  For their relief the Peschels request both compensatory and punitive damages.

Defendants City of Missoula, Missoula Police Department, Rusty Wickman, Mark Muir, and Gregg Willoughby (collectively

---

[1]This action is presently proceeding on the Peschels' Amended Complaint and Jury Demand filed on September 23, 2008.

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 3

referred to as the "City Defendants") filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) requesting dismissal of several of the legal claims pled against them.  Each aspect of their motion is discussed separately below.

## II.  <u>APPLICABLE LAW - MOTION TO DISMISS</u>

A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).  In addressing a Rule 12(b)(6) challenge the Court accepts all factual allegations in the complaint as true (*Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740 (1976)), and construes the pleading in the light most favorable to the nonmoving party.  *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint need only set forth a short and plain statement of the claim showing the pleader is entitled to relief, and it "does not need detailed factual allegations[.]"  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007).  A plaintiff must, however, set forth "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do[.]" *Id*. at 1965.  Allegations must indicate the pleader has a right to relief, and they must rise above the level of mere speculation.  *Id*.  The pleading must at least set forth factual grounds supporting a plausible basis on which liability can be imposed, or it must set forth enough facts "to raise a reasonable expectation that discovery will reveal evidence of" a basis for liability.  *Id*.  Even if a court believes actual proof of the facts alleged is improbable, or that recovery is remote or unlikely, a pleading should still survive dismissal.  *Id*.

Nonetheless, dismissal can be granted if there is a lack of a cognizable legal theory or if there is an absence of sufficient facts alleged under a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  Even a liberal interpretation of a civil rights complaint may not supply essential elements of a claim that the plaintiff failed to plead initially.  *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Additionally, the Court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III.  DISCUSSION

### A.  Official Capacity Claims

The City Defendants move to dismiss the Peschels' claims pled against Defendants Wickman, Muir, and Willoughby in their official capacities.  During the November 13, 2008 hearing counsel for the Peschels conceded that those claims should be dismissed.  Accordingly, it is so recommended.

### B.  Defendant Missoula Police Department

The City Defendants move to dismiss the Missoula Police Department (MPD) from this action.  At the hearing, counsel for the Peschels advised that they concede the MPD should also be dismissed.  Accordingly, it is so recommended.

The Peschels moved to amend the caption in this case to reflect the dismissal of the MPD, and to identify the City of Missoula as follows:  "CITY OF MISSOULA, acting through the Missoula Police Department".  The City Defendants did not oppose the Peschels' request to amend the caption.  Accordingly, pursuant to Fed. R. Civ. P. 15(a) the caption is amended as the Peschels request, and the caption shall hereafter read as set forth above.

### C.  Federal Claims

The Peschels advance claims under both state and federal law.  The Peschels' federal claims are prosecuted under authority of 42 U.S.C. § 1983 which provides as follows:

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 6

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983.  In general, to establish that a defendant is liable for a claim under 42 U.S.C. § 1983 a "plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right.'"  *Harry A. v. Duncan*, 351 F. Supp. 2d 1060, 1072 (D. Mont. 2005) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  Section 1983 liability requires proof that a defendant's deliberate or affirmative act or omission caused the unconstitutional deprivation.  *Harry A.*, at 1072 (citing *Stevenson v. Koskey*, 877 F.2d 1435, 1439 (9th Cir. 1989)).  *See Daniels v. Williams*, 474 U.S. 327, 330-332 (1986) (concluding mere negligent conduct is insufficient for a claim under § 1983).

     1.   **Municipality Liability**

    The Defendant City of Missoula moves to dismiss all of the Peschels' federal civil rights claims pled against it.  The City contends that the Peschels' allegations of municipality liability are conclusory and do not satisfy the "plausibility" standard under *Twombly*, supra.  The City argues the Peschels' pleading

fails to set forth sufficient facts establishing that the City is liable for its alleged custom, policy or practice of committing acts of unconstitutional conduct, failing to properly train its officers, and improperly hiring, employing, supervising, and retaining its employees.  Specifically, and as emphasized by counsel at the November 13, 2008 hearing, the City contends that to survive dismissal under Fed. R. Civ. P. 12(b)(6) the Peschels' allegations must identify specific deficiencies in the City's customs, policies, or practices which allegedly caused the deprivations of the Peschels' constitutional rights.  The City of Missoula has not, however, cited to any legal authority in support of this contention.

For the reasons discussed below, the City's motion should be denied.  *Twombly* does not impose a heightened pleading standard with regard to claims of municipality liability.

In *Twombly* the United States Supreme Court only slightly amplified the notice pleading standard in certain circumstances. The Court concluded that certain legal claims advanced by a plaintiff may require some additional factual allegations to support the necessary elements of the particular claim for relief and to demonstrate that the claim is plausible.  Specifically, the Court considered the question of what allegations were required to state an antitrust claim under § 1 of the Sherman Act, 15 U.S.C. § 1, which imposes liability for an improper

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 8

restraint of trade effected by a "contract, combination [...], or conspiracy." *Twombly*, 127 S.Ct. at 1961, 1964.  In applying its "plausibility" standard the Court held that the pleading must set forth sufficient factual allegations to suggest that a prohibited agreement was made, or that an antitrust conspiracy existed.  *Id.* at 1965, 1973.

The Court in *Twombly* stated that in developing the "plausibility" standard it did not intend to impose a heightened pleading standard, or broaden the scope of Fed. R. Civ. P. 9 which requires only certain claims to be pled with particularity. *Twombly*, 127 S.Ct. at 1973 n.14.  *Twombly* does not establish "a blanket heightened pleading standard for all cases."  *Young v. State of Hawaii*, 548 F. Supp. 2d 1151, 1160 (D. Hawaii 2008).

Subsequent to *Twombly* the United States Supreme Court confirmed that Fed. R. Civ. P. 8(a)(2):

> requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"

*Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (quoting *Twombly*).  Thus, the notice pleading standard under Fed. R. Civ. P. 8(a)(2) controls because "the Supreme Court has repeatedly instructed [the courts] not to impose [a] heightened standard in the absence of an explicit requirement in a statute or federal

rule." *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 841-42 (9th Cir. 2007).

In its motion, the City emphasizes the substantive law of municipality liability which imposes stringent requirements of proof. A county or municipal governmental entity qualifies as a "person" within the meaning of 42 U.S.C. § 1983, and can be sued for damages under that statute. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). A county or other local governmental entity, however, cannot be found liable under § 1983 on a *respondeat superior* theory of recovery merely by virtue of the conduct of its employees. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 694. Instead, a plaintiff must ultimately demonstrate, as a matter of proof, that the municipality *itself* acted deliberately or culpably, and that there is a direct causal link between the municipality's action and the deprivation of federal rights. *Bryan County*, 520 U.S. at 404. Consequently, liability can be imposed on a municipality only for injuries inflicted pursuant to its official custom, policy, or practice. *Monell*, 436 U.S. at 693-94; *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986).

The Ninth Circuit has identified the following substantive requirements for imposing liability on a municipality:

> [t]o impose municipal liability under § 1983 for a violation
> of constitutional rights plaintiff must show: "(1) that [the
> plaintiff] possessed a constitutional right of which []he
> was deprived; (2) that the municipality had a policy; (3)
> that this policy 'amounts to deliberate indifference' to the
> plaintiff's constitutional right; and, (4) that the policy
> is the 'moving force behind the constitutional violation.'"

*Plumeau v. School District #40*, 130 F.3d 432, 438 (9th Cir. 1997)

(citation omitted).  The municipality's custom, practice, or

policy must have "caused the constitutional injury."  *Leatherman*

*v. Tarrant County Narcotics Intelligence and Coordination Unit*,

507 U.S. 163, 166 (1993).

Although the forgoing substantive law of municipality

liability imposes a demanding burden of proof on a plaintiff, the

United States Supreme Court has specifically rejected the

application of a heightened pleading standard to such a claim.

*Leatherman*, 507 U.S. at 164, 168.  The Court noted that litigants

must instead rely on the use of discovery and summary judgment to

dispose of any municipality liability claims which have no merit.

*Id*. at 168-69.

The Ninth Circuit has also consistently rejected the

application of a heightened pleading standard to a claim of

municipality liability under § 1983, and the "plausibility"

standard in *Twombly* has not affected the federal courts'

continued rejection of a heightened standard.  *See Young v. State*

*of Hawaii*, 548 F. Supp. 2d 1151, 1161 (D. Hawaii 2008); *Crump v.*

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 11

*The City and County of San Francisco*, 2007 WL 2220938, *3 (N.D. Cal. 2007).  Instead, under the law of the Ninth Circuit:

> a claim of municipal liability under [§] 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.

*Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) (quoting *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)).  The district courts in the Ninth Circuit have applied the above-quoted standard post-*Twombly*.  *See Young*, 548 F. Supp. 2d at 1161; *Cerros v. North Las Vegas Police Department*, 2008 WL 608641, *10 (D. Nev. 2008); *Roe v. City of Spokane*, 2008 WL 2705142, *5 (E.D. Wash. 2008); and *Butler v. Los Angeles County*, 2008 WL 4911852, *5 (C.D. Cal. 2008).  In *Cerros*, for instance, the court concluded that bare allegations, asserted on the plaintiff's information and belief, that the actions of the police officers were "undertaken in accord [with] the policies and procedures of the North Las Vegas Police Department and in accord with training given such officers" were sufficient to state a claim of municipality liability and to survive a motion to dismiss.  *Cerros*, at *10.

The Peschels have pled numerous allegations relative to their claim of municipality liability against the City of Missoula.  The Peschels allege City of Missoula police officers violated Dr. Peschel's various constitutional rights in the

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 12

course of effecting Dr. Peschel's arrest.  Am. Compl. at ¶ 38.
Dr. Peschel alleges the City of Missoula followed policies or
practices of "failing to properly train, supervise, retain,
and/or control" its police officers, and the policies or
practices permitted the violations of his rights to occur.  *Id*.
at ¶¶ 40, 44.  Specifically, the Peschels allege Defendant
Wickman failed to investigate and impose punishment in prior
situations where unlawful arrests occurred, or where excessive
force was used.  *Id*. at ¶ 42.  Allegations suggesting that
certain conduct was not an isolated incident can be sufficient to
demonstrate the existence of a custom, policy, or practice.  *See
Crump*, 2007 WL 2220938, *3-4.

     The Peschels also allege the City of Missoula followed
policies of inaction or acquiescence which resulted in a failure
to protect Dr. Peschel's constitutional rights.  Am. Compl. at ¶
51.  The City of Missoula followed policies, customs, or
practices relative to the hiring, employment, and retention of
its police officers which "amounted to indifference to the rights
of persons" with whom the police officers would come into
contact.  *Id*. at ¶ 46.  Additionally, the Peschels allege the
City was deliberately indifferent to the need to train,
supervise, and discipline its police officers relative to their
conduct in effecting an arrest, using force, and responding to
crisis situations involving suicidal individuals.  *Id*. at ¶¶ 47-

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 13

48.  Finally, the Peschels allege a causal connection existed between the City's policies of inaction and the constitutional deprivations of which the Peschels complain.  *Id*. at ¶ 51.

A municipality's failure to train or supervise its employees may subject it to liability "where the failure to train 'amounts to deliberate indifference to the rights of persons' with whom those employees are likely to come into contact."  *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)).  Consistent with the standard in *Twombly* such a claim will survive a motion to dismiss as long as the claim "contains both allegations of misconduct and allegations of failure to train."  *Roe v. City of Spokane*, 2008 WL 2705142, *5 (E.D. Wash. 2008) (citing *Atchison v. District of Columbia*, 73 F.3d 418, 423 (D.C. Cir. 1996)).  The notice pleading standard of *Leatherman* requires nothing more. *Roe*, at *5.  Allegations demonstrating the existence of a custom, policy or practice, together with allegations that the custom, policy or practice was the "moving force" behind the alleged constitutional violations are sufficient to survive a motion to dismiss.  *Crump*, 2007 WL 2220938, *3-4.

The Peschels allege all Defendants "committed the unlawful acts and constitutional deprivations pursuant to policy statements, ordinances, regulations, customs, standard operating

procedures, or official decisions adopted and[/]or promulgated by
the officers and officials of the City of Missoula[.]"  Am.
Compl. at ¶ 45.  The City of Missoula's policies or customs were
the "moving force" behind the resulting deprivations of Dr.
Peschel's constitutional rights.  *Id*. at ¶ 52.

Taking all of the Peschels' allegations together, the Court
finds the Peschels have sufficiently stated a claim of
municipality liability against the City of Missoula.  The
Peschels have gone beyond the minimal "bare allegations" standard
followed by the Ninth Circuit.  The Peschels have alleged
Defendants deprived Dr. Peschel of certain constitutional rights,
that the City of Missoula had a policy which amounts to
deliberate indifference to Dr. Peschel's constitutional rights,
that the Defendants acted pursuant to such policy, and that the
policy was the moving force behind the constitutional violations.
The City of Missoula's motion to dismiss should be denied in this
respect.

> **2.   Unlawful Arrest and Excessive Force Claims Under
> the Fourteenth Amendment to the United States
> Constitution**

The City Defendants move to dismiss the Peschels' federal
civil rights claims under the Fourteenth Amendment to the United
States Constitution alleging that the Defendants effected Dr.
Peschel's arrest through the use of excessive force.  The City
Defendants correctly assert that the Fourth Amendment to the

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 15

United States Constitution, not the due process clause of the Fourteenth Amendment, provides the proper textual source for analyzing unlawful arrest or excessive use of force claims.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (excessive use of force) and *Saucier v. Katz*, 533 U.S. 194, 204 (2001) (same); and *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (unlawful arrest).

During the November 13, 2008 hearing, counsel for the Peschels conceded Dr. Peschel's claims of unlawful arrest and excessive force must be analyzed under the Fourth Amendment. Peschels' counsel explained the Complaint, as amended, referenced the Fourteenth Amendment in conjunction with the Fourth Amendment only to reflect that the Fourth Amendment is applicable to the states through its incorporation into the Fourteenth Amendment. The Peschels conceded they cannot and are not attempting to state an independent claim under the Fourteenth Amendment for a denial of due process.  *See Hillblom v. County of Fresno*, 539 F. Supp. 2d 1192, 1207, 1209 (E.D. Cal. 2008).  Accordingly, the City Defendants' motion should be denied as moot in light of the Peschels' concession.

D.   **State Law Claims**

Jurisdiction over the Peschels' claims advanced under Montana law is founded upon the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).  "[A] federal court exercising

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 16

supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).  "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980).  Federal courts "are bound by the pronouncements of the state's highest court on applicable state law[,]" *Appling v. State Farm Mutual Auto. Ins. Co.*, 340 F.3d 769, 778 (9th Cir. 2003) (quoting *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)), and "are generally bound by the dicta of state courts." *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1110 n.12 (9th Cir. 2007).

When an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (citations omitted).  In doing so, the court must "look to existing state law without predicting potential changes in that law." *Ticknor*, 265 F.3d at 939.

(citation omitted).  The court should also rely on persuasive authorities, including treatises and decisions from other jurisdictions, as guidance.  *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865 (9th Cir. 1996).

### 1.   **State Law Claims Against Defendants Wickman, Muir and Willoughby in their Individual Capacities**

The City Defendants contend that Defendants Wickman, Muir and Willoughby are immune, under the provisions of Mont. Code Ann. § 2-9-305, from liability for the various state law claims the Peschels advance against them in their individual capacities.  Accordingly, they move to dismiss all state law claims as against Wickman, Muir and Willoughby.

Mont. Code Ann. § 2-9-305, titled "[i]mmunization, defense, and indemnification of employees[]" provides in pertinent part:

(5) Recovery against a governmental entity under the provisions of parts 1 through 3 of this chapter constitutes a complete bar to any action or recovery of damages by the claimant, by reason of the same subject matter, against the employee whose negligence or wrongful act, error, omission, or other actionable conduct gave rise to the claim.  In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, unless the claim constitutes an exclusion provided in subsections (6)(b) through (6)(d).

(6) In a noncriminal action in which a governmental entity employee is a party defendant, the employee may not be defended or indemnified by the employer for any money judgments or legal expenses, including attorney fees, to

which the employee may be subject as a result of the suit if a judicial determination is made that:

> (a) the conduct upon which the claim is based constitutes oppression, fraud, or malice or for any other reason does not arise out of the course and scope of the employee's employment;
>
> (b) the conduct of the employee constitutes a criminal offense as defined in Title 45, chapters 4 through 7;
>
> (c) the employee compromised or settled the claim without the consent of the government entity employer; or
>
> (d) the employee failed or refused to cooperate reasonably in the defense of the case.

Mont. Code Ann. § 2-9-305(5) and (6).

The immunity provision at issue here is set forth in the second sentence of subsection (5).  The Montana Supreme Court applied this provision in *Kenyon v. Stillwater County*, 254 Mont. 142, 835 P.2d 742 (1992).  *Kenyon* was an age discrimination suit brought by the former secretary for the Stillwater County Attorney and which named both Stillwater County and the county attorney as defendants.  254 Mont. at 145, 835 P.2d at 744.  The Court upheld the district court's grant of summary judgment to the county attorney individually because it concluded he was entitled to immunity under Mont. Code Ann. § 2-9-305(5):

> Absent consideration of exceptions not at issue here, where an action is brought against a county based on actionable conduct by an employee, the employee is immune from individual liability for the conduct if the county acknowledges that the conduct arose out of the course and scope of the employee's official duties.

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 19

*Kenyon*, 254 Mont. at 146, 835 P.2d at 745.

The court again applied the second sentence of § 2-9-305(5) in *Germann v. Stephens*, 2006 MT 130, 332 Mont. 303, 137 P.3d 545 and affirmed its reasoning in *Kenyon*.  2006 MT 130, ¶¶ 41-44, 332 Mont. 303, ¶¶ 41-44, 137 P.3d 545, ¶¶ 41-44.  Germann advanced claims against the City of Whitefish and individual City Council members arising from the same conduct, that being the Council's actions in passing ordinances and denying Germann's applications for conditional use permits.  *Germann*, ¶ 35.  In view of the city's acknowledgment that Germann's claims were based upon conduct taken by the Council members in the course and scope of their employment, the court stated: "The plain language of § 2-9-305(5), MCA, and our decision in *Kenyon* demonstrate that the Council Members clearly enjoyed immunity from Germann's state law claims."  *Germann*, ¶ 44.

Here the Peschels seek to impose liability upon Defendants Wickman, Muir and Willoughby under state law "for acts and omissions that occurred within the course and scope of their employment with the City of Missoula."  Am. Compl., Dkt. #34, ¶ 11.  The Peschels elected to also name the City of Missoula as a Defendant, which they allege is collectively liable for the state claims set forth in the Amended Complaint.  The City of Missoula has admitted, and thus acknowledged that the state claims made by the Peschels against Wickman, Muir and Willoughby are based upon

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 20

conduct taken by these individuals in the course and scope of their employment with the City.  City Defendants' Joint Answer, Dkt. #35, p. 5, ¶ 9.  The Montana Supreme Court's decisions in *Kenyon* and *Germann* establish that Wickman, Muir and Willoughby are immune under Mont. Code Ann. § 2-9-305(5) from individual liability for the Peschels' state law claims.

In resisting the individual Defendants' assertion of immunity under § 2-9-305(5), the Peschels do not address *Kenyon* or *Germann*.  Instead, they argue that § 2-9-305, and particularly subsection (6)(a), excepts from immunity all conduct of an individual taken outside the course and scope of that individual's employment duties.  Thus, they assert that the second sentence of § 2-9-305(5) must be construed to except from immunity any conduct of an individual which constitutes oppression, fraud, or malice.  Because it is alleged that Wickman, Muir and Willoughby acted with malice, Peschels argue the immunity provided to an employee by § 2-9-305(5) cannot be extended to these individuals.  The Peschels stress that if § 2-9-305(5) is construed to mean that an employee is immune from liability for malicious conduct if the governmental entity makes the requisite acknowledgment, then a claimant is denied "any collection on these serious claims from anyone and the ability to secure punishment through punitive damages[.]"  Peschels' Br.,

Dkt. #28, p. 7.[2, 3]   The plain language of § 2-9-305(5) belies the Peschels' argument.

The second sentence of § 2-9-305(5) provides that where an action is brought against a governmental entity based upon the conduct of an employee, the employee is entitled to immunity if the governmental entity acknowledges that the employee's conduct upon which the claim is brought was undertaken in the course and scope of the employee's employment, "unless the claim constitutes an exclusion provided in subsections (6)(b) through (d)."  If, as in this case, the governmental entity makes the requisite acknowledgment, the exclusion set forth in subsection (6)(a) is inapplicable.  In other words, an acknowledgment by the governmental entity resolves the "course and scope" issue and the governmental entity must pay any judgment for damages to the

---

[2]A similar argument was rejected by the Montana Supreme Court in its application of the first sentence of § 2-9-305(5).  *See Stansbury v. Lin*, 257 Mont. 245, 249 (1993).

[3]The only challenge mounted by the Peschels to the validity of the statute lies in their assertion that if construed in this manner the statute would violate their rights to full legal redress under Article II, § 16 of the Montana Constitution.  As discussed in the following section, the Montana Supreme Court has rejected the notion that Article II, § 16 creates a fundamental right.  *See infra* at pp. 24-26.  Consequently, this Court, like the Court in *Stansbury*, is simply interpreting the plain language of § 2-9-305(5).

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 22

extent required by the law, even if the employee's conduct constituted oppression, fraud, or malice.[4]

In this regard, the Peschels' concern is that the immunity afforded Wickman, Muir and Willoughby would result in the City being the only potentially liable party, thereby allowing the City to avail itself of the limitation on liability and immunity from punitive damages granted to governmental entities.  Mont. Code Ann. §§ 2-9-105 (immunity from exemplary and punitive damages) and 108 (limitation on damages in tort).  Issues regarding the interplay among § 2-9-305, and §§ 2-9-105 and 108 have not been specifically raised or addressed by the parties, and are not before the Court at this juncture.  The precise questions of whether a governmental entity which makes the requisite acknowledgment under § 2-9-305(5) would be held responsible for punitive damages and compensatory damages beyond the "cap" of § 2-9-108 remain to be determined.  What is clear, however, is that Defendants Wickman, Muir and Willoughby are entitled to the immunity afforded by § 2-9-305(5) in accordance

---

[4]Contrary to the Peschels' suggestion, an employee's malicious conduct is not necessarily committed outside the course and scope of the individual's employment.  *See Kornec v. Mike Horse Mining & Milling Co.*, 120 Mont. 1, 7-9, 180 P.2d 252, 256 (1947); *Rocky Mountain Enterprises, Inc. v. Pierce Flooring*, 286 Mont. 282, 306, 951 P.2d 1326, 1341 (1997) (concluding that intentional acts of criminal conduct could be committed within the course and scope of a defendant's employment sufficient to impose vicarious liability on the defendant's employer).

with the Montana Supreme Court's pronouncements in *Kenyon* and *Germann.*

### 2.   Right to Recourse Under the Montana Constitution

The Peschels allege the Defendants violated various of their fundamental and self-executing rights protected under the Montana Constitution.  The Peschels allege they have "the right to seek recourse against those who violate [their] constitutional rights[]" as provided by the Montana Constitution, art. II, § 16. Am. Compl. at ¶ 57.  They contend the constitutional right to full legal redress embodied in art. II, § 16 provides them with an independent cause of action for monetary damages.

The City Defendants move to dismiss the Peschels' claim alleging a right to recourse to the extent they advance it as an independent cause of action.  The City Defendants assert the right is not a self-executing right and does not provide a cause of action for the Peschels.

The Peschels retort that they can pursue a cause of action for a violation of Mont. Const. art. II, § 16 which provides as follows:

> Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character.  No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state.  Right and justice shall be administered without sale, denial, or delay.

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 24

Mont. Const. art. II, § 16.  The Court disagrees.

The Montana Supreme Court has recognized that certain fundamental rights or self-executing provisions of the Montana Constitution provide a cause of action for money damages.  *See Dorwart v. Caraway*, 2002 MT 240, ¶ 44, 312 Mont. 1, ¶ 44, 58 P.3d 128, ¶ 44 (recognizing Mont. Const. art. II, §§ 10, 11, and 17 as self-executing rights).  The Montana Supreme Court has not, however, expressly recognized Article II, § 16 as a self-executing, fundamental right.  To the contrary, the court has held that Article II, § 16 is a "remedy clause[] to insure equal administration of justice[, which is] aimed at the judiciary[.] [... The] remedy guarantee does not create a fundamental right to full legal redress."  *Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 30, 776 P.2d 488, 493 (1989).  Thus, the first sentence of § 16 is directed to the "Courts" and does not impose any obligation on a party to litigation.  The remedy provision "does not guarantee a fundamental right to a particular cause of action, remedy, or redress."  *Meech*, 238 Mont. at 36, 776 P.2d at 497.[5]

The Peschels argue that Justice James C. Nelson's specially concurring opinion in *Kloss v. Edward D. Jones & Co.*, 2002 MT

_____

[5]The second sentence of § 16 does not apply to the facts of this case.  The provision prohibiting the deprivation of "full legal redress" was drafted narrowly for "the single purpose of limiting the lawmakers' power in restricting third party actions in workers' compensation law."  *Meech*, 238 Mont. at 36, 40, 776 P.2d at 497, 499.

129, 310 Mont. 123, 54 P.3d 1 establishes Article II, § 16 as a fundamental right on which the Peschels can base an independent cause of action.  The Peschels are correct in that Justice Nelson opined that § 16 constitutes a "fundamental right".  2002 MT 129, ¶ 57, 310 Mont. 123, ¶ 57, 54 P.3d 1, ¶ 57.  Justice Nelson reached this conclusion, however, in the context of the issue of whether a party had waived the rights provided under § 16 through the execution of a contract.  Justice Nelson concluded the rights provided by § 16 were fundamental and, therefore, "the waiver of such rights will not be lightly presumed."  *Id*. at ¶ 64.  Justice Nelson's concurrence, however, expressly noted that the Court had "explicitly and implicitly" held in *Meech* and its progeny that § 16 is not a fundamental right, and the objective of the concurrence was not to challenge the reasoning of the prior cases.  *Id*. at ¶¶ 59, 64.  Consequently, *Kloss* did not overrule *Meech*.[6]  The Court reiterates that in the exercise of supplemental jurisdiction it is not simply free to predict potential changes in Montana law.  *Ticknor*, 265 F.3d at 939.

_____

[6]The Peschels assert the special concurrence is the holding in the case because it constitutes a plurality opinion.  The Montana Supreme Court has made clear that it did not premise its holdings in *Kloss* on Article II, § 16.  *LaFournaise v. Montana Development Center*, 2003 MT 240, ¶ 25, 317 Mont. 283, ¶ 25, 77 P.3d 202, ¶ 25.

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 26

The City Defendants' motion to dismiss should be granted. Peschels' claims alleging a violation of Mont. Const. art. II, § 16 should be dismissed.

### 3.   Spoliation

The Peschels' Amended Complaint includes allegations that certain Defendants negligently or intentionally spoliated a video recording of the events which transpired at the scene of Dr. Peschels' arrest.  The video was later downloaded to a City of Missoula Police Department computer and viewed by several police officers.  The Peschels allege Defendant Sgt. Daniel Huntsinger was the last person to view the video before the video became "lost" or "corrupted" due to negligent or intentional conduct. The Peschels contend that the City of Missoula "had a duty to preserve the video as potential evidence for Dr. Peschel in his criminal and civil cases[,]" but it failed to do so.  Am. Compl. at ¶¶ 88-89.  The Peschels assert that the loss of the video impaired Dr. Peschel's defense in his criminal case, and will likewise impair his ability to succeed on his claims in this civil action.

The Montana Supreme Court has recognized the torts of negligent and intentional spoliation as viable independent causes of action.  *Oliver v. Stimpson Lumber Co.*, 1999 MT 238, ¶ 40, 297 Mont. 336, ¶ 40, 993 P.2d 11, ¶ 40.  These torts, however, are cognizable only when the loss or destruction of evidence is

committed by an entity or individual who is a third party to the plaintiff's underlying cause of action and dispute. *Oliver*, at ¶¶ 32-34. Otherwise, the Montana Supreme Court has found "no reason to recognize a new tort theory to provide relief to litigants when evidence is intentionally or negligently destroyed by a party to the litigation." *Id*. at ¶ 32.

The *Oliver* court's rationale for precluding a cause of action for spoliation against a first party is that "[r]emedies already exist for parties to an action who have suffered a loss as a result of the spoliation of evidence by another party." *Oliver*, 1999 MT 238 at ¶ 32. Specifically, a trial court is well equipped under the rules of civil procedure "to address the problem as it occurs and deal with it accordingly, even entering default when the circumstances justify such relief." *Id*.

Under the rationale of *Oliver*, the Peschels cannot sustain an independent cause of action for spoliation against any of the City Defendants. The Pechels' cause of action for spoliation is expressly pled against the City of Missoula, and implicitly pled against Defendant Sgt. Daniel Huntsinger. Because the City of Missoula is not a third party to the Peschels' dispute, their claim for spoliation against it is not cognizable as an independent action under Montana law.

To the extent the Peschels seek to impose liability on Defendant Huntsinger for his alleged involvement in the loss or

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 28

destruction of the video, he is deemed a first party to this
action for purposes of a spoliation claim.[7]  The City of Missoula
is liable for the torts committed by its employees acting within
the scope of the employees' employment or duties.  Mont. Code
Ann. § 2-9-102.  Additionally, a municipality, through its mayor
or city manager, has charge of, supervision over, and direct
control of the city's police department.  *State of Montana v.
District Court of the Thirteenth Judicial District*, 170 Mont. 15,
19, 550 P.2d 382, 384 (1976); Mont. Code Ann. §§ 7-32-4101 and
4103.  Therefore, the municipality is liable for the conduct of
the employees of the police department.  *State of Montana*, 170
Mont. at 19-20, 550 P.2d at 384.

The parties concede Defendant Huntsinger acted within the
course and scope of his employment relative to the matters
alleged in this action.  Am. Compl. at ¶ 11; City Defendants'

---

[7]The Peschels' cause of action for spoliation is not
expressly pled against Defendant Huntsinger.  The only
allegations within the spoliation claim which refer to Defendant
Huntsinger simply identify him as the last person to view the
video.  There are no allegations implicating Huntsinger or
suggesting he was responsible for the loss of the video.
Instead, the Peschels allege the "City of Missoula" had a duty to
preserve the video, that the "City of Missoula" breached the
duty, and that the "City of Missoula" knew that Dr. Peschel would
likely file a civil action.  Am. Compl. ¶¶ 88-90.  Therefore, on
its face, the Peschels' pleading does not seek to impose
liability on Huntsinger for any alleged spoliation.  Nonetheless,
during the hearing counsel for the Peschels asserted Huntsinger
is liable for spoliation.  Accordingly, the Court will address
the issue of whether the pleading states a claim of spoliation
against Huntsinger.

Joint Answer, Second Defense at ¶ 9; and Joint Answer of
Huntsinger, Prather and Serba at ¶ II.  Therefore, any potential
liability arising from Huntsinger's alleged conduct with respect
to the loss of the video would be imposed against the City of
Missoula.  Huntsinger is necessarily considered a first party
against whom a claim of spoliation is not cognizable.
Consequently, this aspect of the City Defendants' motion to
dismiss should be granted.

Although an independent cause of action for spoliation is
not cognizable under the facts of this case, as indicated in
*Oliver* there remain potential sources of legal authority and
remedies to address the loss or destruction of evidence committed
by a party to the action.  One such source of legal authority
applicable to circumstances where evidence is lost or destroyed
before a lawsuit is filed is the court's general inherent
authority.  The federal courts are vested with inherent powers by
virtue of "the control necessarily vested in courts to manage
their own affairs so as to achieve the orderly and expeditious
disposition of cases."  *Unigard Security Ins. Co. v. Lakewood
Engineering & Manufacturing Corp.*, 982 F.2d 363, 368 (9th Cir.
1992) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).[8]

_____

[8]It is important to note that the Federal Rules of Civil
Procedure, which provide the legal authority for the imposition
of sanctions against a party under Rule 37, are not applicable to
pre-litigation loss or destruction of evidence.  *Unigard Security*

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 30

This inherent authority gives the courts "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Unigard Security Ins. Co.*, 982 F.2d at 368 (quoting *Campbell Industries v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)).  Therefore, the trial court's discretionary authority to make evidentiary rulings as a sanction for the pre-litigation loss of evidence includes the power, where appropriate, "to order the exclusion of certain evidence." *Glover v. BIC Corporation*, 6 F.3d 1318, 1329 (9th Cir. 1993).

As an alternative to the exclusion of evidence, the court also has authority "to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for the behavior." *Glover*, 6 F.3d at 1329 (citing *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)).  The rationale behind the allowance of an adverse inference is two-fold:

> (1) "a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document[;]" and
>
> (2) the adverse inference has "prophylactic and punitive effects.  Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial."

------

*Ins. Co.*, 982 F.2d at 365, 368.

*Akiona*, 938 F.2d at 161 (quoting *Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir. 1982)).  A finding of "bad faith" with respect to the loss or destruction of evidence is not required for the court to permit a jury to make an adverse inference; a party's simple notice of the "potential relevance to the litigation" will suffice.  *Glover*, 6 F.3d at 1329.

This Court's potential exercise of its inherent authority to impose sanctions for the spoliation of evidence necessarily requires the existence of an obligation or duty imposed upon an individual or entity to preserve the evidence in the first place. As discussed below, under the facts of this case it is the existence of the criminal prosecution against Dr. Peschel which, under Montana law, gave rise to the City of Missoula's obligation to preserve discoverable evidence it had in its possession.

The circumstances of a criminal investigation and prosecution, and the associated collection of evidence, impose various obligations on law enforcement officers to preserve and disclose evidentiary matters to an accused.  The Court is mindful of the criminal rule declaring that law enforcement officers have no duty to gather exculpatory evidence on behalf of a criminal defendant.  *State v. Belgarde*, 1998 MT 152, ¶ 19, 289 Mont. 287, ¶ 19.  Nonetheless, there is a distinction between gathering evidence and preserving evidence.  *Id.*  Therefore, once

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 32

potentially exculpatory evidence is gathered or collected by the police, and is in the police officers' possession, then the officers are obligated to preserve such "possible" exculpatory evidence; "the police ha[ve] a duty to see to its safekeeping[]" so that a defendant can exercise his or her "right to gather possible exculpatory evidence." *State v. Swanson*, 222 Mont. 357, 362, 722 P.2d 1155, 1158 (1986).

The *Swanson* case involved law enforcement officers' possession of the defendant's blood sample that was drawn upon his arrest for driving under the influence of alcohol.  The sample was to be refrigerated and sent to a lab for analysis, but a deputy sheriff in possession of the blood sample failed to refrigerate the sample while the defendant was held in custody. The sample remained unrefrigerated for two days, and the lack of refrigeration prevented the parties from obtaining a valid determination of the sample's blood alcohol content.  *Swanson*, 222 Mont. at 359-61, 722 P.2d at 1156-58.  The Montana Supreme Court recognized that the defendant had a "right to attempt to obtain exculpatory evidence."  *Swanson*, 222 Mont. at 360, 722 P.2d at 1157.  Accordingly, under the facts in *Swanson*, the court held that "[o]nce the authorities took control of the sample[...] they had a duty to properly care for it."  *Id*. at 362, 722 P.2d at 1158.

While the police have no duty under Montana law to assist a defendant in gathering exculpatory evidence, once it is obtained the police have a duty to preserve the evidence.  The police "cannot frustrate [the defendant's efforts to gather evidence] through either affirmative acts or their rules and regulations." *Id*.  Police officers "must avoid interference with the efforts on the part of the accused to obtain such [exculpatory] evidence." *State v. Patton*, 280 Mont. 278, 285, 930 P.2d 635, 639 (1996) (quoting *State v. Sadowski*, 247 Mont. 63, 79, 805 P.2d 537, 547 (1991)).  *See also Hammond v. State*, 569 A.2d 81, 88 (Del. 1990) (confirming that law enforcement agencies have a duty to preserve evidence in their possession which "could be favorable to a defendant").

In addition to the obligations discussed, the prosecutor, and police or investigative officers have an obligation to disclose evidence to an accused.  Mont. Code Ann. § 46-15-322. Specifically, and relevant to the facts of this case, a prosecutor must disclose to a defendant the existence of evidence within the prosecutor's control including evidence of "any electronic surveillance of any conversations to which the defendant was a party[.]"  Mont. Code Ann. § 46-15-322(2)(a). This obligation extends to evidence "in the possession or control of [...] any other persons who have participated in the

investigation or evaluation of the case."  Mont. Code Ann. § 46-15-322(4).

In accordance with the foregoing legal authority, the City of Missoula was obligated to preserve evidence it had in its possession relative to its criminal investigation and prosecution of Dr. Peschel.  Once the City of Missoula had possession of the video recording it was obligated to safeguard and preserve the evidence for Dr. Peschel's inspection and to afford him the opportunity to exercise his right to gather possible exculpatory evidence.  In *Swanson* it was not known to either party whether the blood sample would prove exculpatory or not, but the defendant had a right to determine for himself whether the sample was exculpatory.  Similarly, Dr. Peschel had a right to determine whether the video contained exculpatory evidence.

Dr. Peschel had a right to expect that the City of Missoula would fulfill its duty to preserve the video of his arrest for obstructing a peace officer in violation of Mont. Code Ann. § 45-7-302.  The duty imposed on the City remained throughout the course of its investigation and the ultimate disposition of the criminal charge.  The obligation to preserve would most certainly continue after the completion of the criminal proceedings where, as in this case, the accused is acquitted of all charges.  At that point, the prospect of subsequent civil litigation is reasonably foreseeable and obligates law enforcement authorities,

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 35

as potential defendants to a future civil action, to preserve the evidence. *See e.g. In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006); *Hynix Semiconductor Inc. v. Rambus, Inc.*, 2006 WL 565893, *21 (N.D. Cal. 2006); *China Ocean Shipping (Group) Co. v. Simone Metals Inc.*, 1999 WL 966443, *3 (N.D. Ill. 1999); and *Pastorell v. City of New York*, 2003 WL 1740606, *9 (S.D.N.Y. 2003).

The existence of the duty to preserve the video of Dr. Peschel's arrest provides a basis on which the Court may exercise its discretionary inherent authority to impose evidentiary sanctions for the pre-litigation breach of a duty to preserve evidence. *See e.g. In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1077-78 (N.D. Cal. 2006).  At this stage of the proceedings, however, the parties have not addressed the propriety of imposing sanctions, or the appropriate sanction to be imposed if warranted.  Those matters will be appropriately resolved upon further proceedings in this case.

### 4.   Malice

The City Defendants move to dismiss the Peschels' Tenth Cause of Action which alleges Defendants are liable for their "malicious acts or omissions".  Am. Compl. at 15.  The City Defendants contend the allegations fail to state a cognizable legal theory of recovery in that there exists no independent cause of action in Montana for malice.

ORDER, and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 36

The allegations of the Peschels' Tenth Cause of Action mirror the statutory language of Mont. Code Ann. § 27-1-221(2) which sets forth the standard for establishing that a defendant acted with actual malice for the purpose of imposing an award of punitive damages against a defendant.  The allegations serve to support the Peschels' claim for punitive damages.

The allegations do not, however, state a cognizable theory of recovery.  The Peschels do not cite to any legal authority under Montana law establishing a cause of action for "malicious acts or omissions".  To the contrary, terms such as "oppression" and "malice" "do not constitute [independent] torts[.]"  *Haines Pipeline Construction, Inc. v. Montana Power Co.*, 251 Mont. 422, 434, 830 P.2d 1230, 1238-39 (1991), *overruled on other grounds*, *Porter v. Galarneau*, 275 Mont. 174, 911 P.2d 1143 (1996).  The terms are instead used in the law as "adjectives [...] to characterize particular conduct."  *Id.*  There otherwise exists no authority under Montana law recognizing "malicious" conduct as an independent cognizable theory of recovery, and the City Defendants' motion should be granted in this respect.

Based on the foregoing, the Court hereby enters the following:

### ORDER

The Peschels' motion to amend is granted under Fed. R. Civ. P. 15(a), and the caption is hereby amended to identify the City

of Missoula as having acted through the Missoula Police

Department as set forth above.

## RECOMMENDATION

Defendants City of Missoula, Missoula Police Department,

Rusty Wickman, Mark Muir, and Gregg Willoughby's Motion to

Dismiss filed under Fed. R. Civ. P. 12(b)(6) should be **GRANTED** in

part as follows:

> 1.  The Peschels' claims pled against Defendants
> Wickman, Muir, and Willoughby in their official capacity
> should be dismissed;

> 2.  The Missoula Police Department should be dismissed;

> 3.  The Court should conclude that Defendants Wickman,
> Muir, and Willoughby are immune from liability for the
> Peschels' causes of action advanced under state law, and to
> the extent those state law claims are advanced against
> Wickman, Muir, and Willoughby the claims should be
> dismissed;

> 4.  The Peschels' claims alleging a violation of Mont.
> Const. art. II, § 16 should be dismissed;

> 5.  The Peschels' independent cause of action for
> spoliation should be dismissed, subject to the Court's
> possible exercise of its inherent authority to impose
> sanctions against the City of Missoula for the loss of the
> video recording; and

> 6.  The Peschels' independent cause of action for
> "malicious" conduct in their Tenth Cause of Action should be
> dismissed.

The City Defendants' motion should be **DENIED** in all further

respects.

DATED this 5th day of December, 2008.

```
                          /s/ Jeremiah C. Lynch
                         Jeremiah C. Lynch
                         United States Magistrate Judge
```