# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

WALTER PESCHEL, M.D., and
PEGGY PESCHEL,                                           CV 08-79-M-JCL

                Plaintiffs,

                                    ORDER

     vs.

CITY OF MISSOULA, acting through the
Missoula Police Department,
MISSOULA COUNTY,
MISSOULA COUNTY SHERIFF'S DEPARTMENT,
MISSOULA CITY POLICE CHIEF RUSTY
WICKMAN, ASSISTANT CHIEF MARK MUIR,
LT. GREGG WILLOUGHBY, SGT. DANIEL JASON
HUNTSINGER, OFFICER CRAIG SERBA,
OFFICER RYAN PRATHER, MISSOULA
COUNTY SHERIFF MIKE MCMEEKIN,
OFFICER KEVIN RIEKENA, OFFICER
MICHAEL HASH, OFFICER JEREMY BOECKEL,
and OFFICER GARRETT JOHNSON,

                Defendants.

_____

Defendants Missoula County, Missoula County Sheriff's Department,

Missoula County Detention Facility, Sheriff Mike McMeekin, and Missoula

County Detention Facility Officers Kevin Riekena, Michael Hash, Jeremy

ORDER - Page 1

Boeckel, and Garrett Johnson (collectively referred to as the "County

Defendants") filed a Motion to Dismiss Plaintiffs' Second Amended Complaint

under Fed. R. Civ. P. 12(b)(6).  For the reasons discussed below, the Court deems

it appropriate to only partially grant the motion.

## I.      BACKGROUND

The parties, as well as the Court, are entirely familiar with both the factual

background and the procedural history of this case which need not be detailed

here.  In short, this lawsuit arises from events which occurred in Missoula,

Montana on August 18, 2007, when officers of the Missoula Police Department

arrested Plaintiff Walter Peschel, M.D.  Dr. Peschel alleges that in effecting his

arrest Missoula City Police Officers used excessive force causing injury to him.

Second Am. Compl. at ¶ 28.  Following Dr. Peschel's arrest, the officers

transported him to the Missoula County Detention Facility ("MCDF").

Dr. Peschel alleges that upon his arrival at the MCDF he was in need of

medical care and he attempted to get assistance from Officers Riekena, Hash,

Boeckel, and Johnson at the MCDF ("MCDF Officers").  Dr. Peschel claims he

informed the MCDF Officers he was experiencing chest pain, and needed an EKG.

Dr. Peschel asserts the MCDF Officers ignored his requests and released him from

custody over an hour later without providing him any assistance in obtaining any

ORDER - Page 2

medical treatment.  Second Am. Compl. at ¶¶ 33-34.  Dr. Peschel claims he had to walk to a local hospital after his release to obtain treatment.

Walter and Peggy Peschel commenced this action seeking compensation and punitive damages under various theories of liability grounded in both state and federal law.

## II.    APPLICABLE LAW - MOTION TO DISMISS

A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).  In addressing a Rule 12(b)(6) challenge the Court accepts all factual allegations in the complaint as true (*Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740 (1976)), and construes the pleading in the light most favorable to the nonmoving party.  *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint need only set forth a short and plain statement of the claim showing the pleader is entitled to relief, and it "does not need detailed factual allegations[.]"  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007).  A plaintiff must, however, set

ORDER - Page 3

forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id*. at 1965.  Allegations must indicate the pleader has a right to relief, and they must rise above the level of mere speculation. *Id*.  The pleading must at least set forth factual grounds supporting a plausible basis on which liability can be imposed, or it must set forth enough facts "to raise a reasonable expectation that discovery will reveal evidence of" a basis for liability.  *Id*.  Even if a court believes actual proof of the facts alleged is improbable, or that recovery is remote or unlikely, a pleading should still survive dismissal.  *Id*.

Nonetheless, dismissal can be granted if there is a lack of a cognizable legal theory or if there is an absence of sufficient facts alleged under a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  Even a liberal interpretation of a civil rights complaint may not supply essential elements of a claim that the plaintiff failed to plead initially.  *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Additionally, the Court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

ORDER - Page 4

III.   **DISCUSSION**

  A.   **Claims Advanced Against Defendants Missoula County Sheriff's Department and the Missoula County Detention Facility**

The County Defendants move to dismiss the Missoula County Sheriff's Department ("MCSD") and the MCDF from this action.  They assert that the MCSD and the MCDF are not separately identifiable entities and, thus, lack the capacity to be sued.  The Peschels concede the County Defendants' argument in this regard and concur with the dismissal of the MCSD and the MCDF.  The motion is granted in this respect.[1]

  B.   **Official Capacity Claims Against McMeekin and MCDF Officers**

The County Defendants move to dismiss all of the claims advanced by the Peschels under 42 U.S.C. § 1983 against Defendants Mike McMeekin and the individual MCDF Officers in their official capacities.  The Peschels concede that those claims represent an unnecessarily duplicative method of pursuing claims

---

[1]The parties recognize the MCDF is not named as a Defendant in the caption of the Peschels' Second Amended Complaint.  *See* Plaintiffs' Notice to Court, Dkt. # 74 at p. 2 (noting that MCDF is removed as a Defendant from the Second Amended Complaint).  The Peschels contend, therefore, that the issue of dismissing the MCDF is moot.  The Court finds, however, that the body of the Peschels' pleading identifies the MCDF as one of the "Parties" to this action. Second Am. Compl. at ¶ 10.  Therefore, it is appropriate to grant the County Defendants' motion.

against Missoula County, and that the claims can be dismissed.  Accordingly, the

County Defendants' motion is granted.

### C.   <u>Federal Claims</u>

The Peschels' federal claims are prosecuted under authority of 42 U.S.C. §

1983 which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured[.]

42 U.S.C. § 1983.  In general, to establish that a defendant is liable for a claim

under 42 U.S.C. § 1983 a "plaintiff must show '(1) that the conduct complained of

was committed by a person acting under color of state law; and (2) that the

conduct deprived the plaintiff of a constitutional right.'"  *Harry A. v. Duncan*, 351

F. Supp. 2d 1060, 1072 (D. Mont. 2005) (quoting *Balistreri v. Pacifica Police

Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  Section 1983 liability requires proof

that a defendant's deliberate or affirmative act or omission caused the

unconstitutional deprivation.  *Harry A.*, at 1072 (citing *Stevenson v. Koskey*, 877

F.2d 1435, 1439 (9th Cir. 1989)).  *See Daniels v. Williams*, 474 U.S. 327, 330-332

ORDER - Page 6

(1986) (concluding mere negligent conduct is insufficient for a claim under §

1983).

### 1.   Missoula County - Municipal Liability

Missoula County argues that all of the federal civil rights claims advanced

against it must be dismissed because the Peschels' complaint fails to adequately

allege facts establishing: (1) that the Defendants acted pursuant to an official

county policy that was deliberately indifferent to the Peschels' rights; (2) that

Missoula County, through McMeekin, ratified the Defendants' conduct; and (3)

that Dr. Peschel, as a pretrial detainee, possessed a constitutional right of which he

was deprived. The Court addresses each argument in turn.

### a.   Custom or Policy

A county or municipal governmental entity qualifies as a "person" within

the meaning of 42 U.S.C. § 1983, and can be sued for damages under that statute.

*Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). A county or other

local governmental entity, however, cannot be held liable under § 1983 on a

*respondeat superior* theory of recovery merely by virtue of the conduct of its

employees. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S.

397, 403 (1997); *Monell*, 436 U.S. at 694. Instead, a plaintiff must ultimately

demonstrate, as a matter of proof, that the municipality *itself* acted deliberately or

ORDER - Page 7

culpably, and that there is a direct causal link between the municipality's action

and the deprivation of federal rights. *Bryan County*, 520 U.S. at 404.

The Ninth Circuit Court of Appeals succinctly set forth the contours of

municipal liability in *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001):

> "A local government entity is liable under § 1983 when 'action pursuant to
> official municipal policy of some nature cause[s] a constitutional tort.' "
> *Oviatt v. Pearce*, 954 F.2d 1470, 1473-74 (9th Cir.1992) (quoting *Monell v.
> Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611
> (1978)).  In addition, a local governmental entity may be liable if it has a
> "policy of inaction and such inaction amounts to a failure to protect
> constitutional rights."  *Id*. at 1474 (citing *City of Canton v. Harris*, 489 U.S.
> 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Monell*, 436
> U.S. at 690-91, 98 S.Ct. 2018.  The custom or policy of inaction, however,
> must be the result of a "conscious," *City of Canton*, 489 U.S. at 389, 109
> S.Ct. 1197, or " 'deliberate choice to follow a course of action ... made from
> among various alternatives by the official or officials responsible for
> establishing final policy with respect to the subject matter in question.' "
> *Oviatt*, 954 F.2d at 1477 (quoting *Pembaur v. City of Cincinnati*, 475 U.S.
> 469, 483-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).
>
> A local governmental entity's failure to train its employees can also create §
> 1983 liability where the failure to train "amounts to deliberate indifference
> to the rights of persons" with whom those employees are likely to come into
> contact.  *City of Canton*, 489 U.S. at 388-89, 109 S.Ct. 1197.  "[F]or
> liability to attach in this circumstance the identified deficiency in a [local
> governmental entity's] training program must be closely related to the
> ultimate injury."  *Id*. at 391, 109 S.Ct. 1197 (emphasis added).  In other
> words, a plaintiff must show that his or her constitutional "injury would
> have been avoided" had the governmental entity properly trained its
> employees.  *Oviatt*, 954 F.2d at 1474 (citing *City of Canton*, 489 U.S. at
> 389-91, 109 S.Ct. 1197).

*Lee*, 250 F.3d at 681.

ORDER - Page 8

The claimant must prove that the municipality's custom, practice, or policy was the moving force behind, or in other words caused the constitutional violation. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993); *Plumeau v. School District #40*, 130 F.3d 432, 438 (9th Cir. 1997).

Despite the stringent substantive requirements for ultimately proving a claim of municipal liability, the standards set forth in *Twombly* do not heighten the standard for pleading a claim of municipality liability in the context of a Rule 12(b)(6) motion.  The Court in *Twombly* stated that in developing the "plausibility" standard it did not intend to impose a heightened pleading standard, or broaden the scope of Fed. R. Civ. P. 9 (requiring only certain claims to be pled with particularity).  *Twombly*, 127 S.Ct. at 1973 n.14.  *Twombly* does not establish "a blanket heightened pleading standard for all cases."  *Young v. State of Hawaii*, 548 F. Supp. 2d 1151, 1160 (D. Hawaii 2008).

Subsequent to *Twombly* the United States Supreme Court confirmed that Fed. R. Civ. P. 8(a)(2):

> requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"

*Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (quoting *Twombly*).  Thus, the notice pleading standard under Fed. R. Civ. P. 8(a)(2) controls because "the Supreme Court has repeatedly instructed [the courts] not to impose [a] heightened standard in the absence of an explicit requirement in a statute or federal rule." *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 841-42 (9th Cir. 2007).

The United States Supreme Court has specifically rejected the application of a heightened pleading standard to a claim of municipality liability under § 1983 (*Leatherman*, 507 U.S. at 164, 168), and the "plausibility" standard in *Twombly* has not affected the federal courts' continued rejection of a heightened standard. *See Young v. State of Hawaii*, 548 F. Supp. 2d 1151, 1161 (D. Hawaii 2008); *Crump v. The City and County of San Francisco*, 2007 WL 2220938, *3 (N.D. Cal. 2007).  Instead, under the law of the Ninth Circuit:

> a claim of municipal liability under [§] 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.

*Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) (quoting *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)).  The district courts in the Ninth Circuit have applied the above-quoted standard post-*Twombly*.  *See*

ORDER - Page 10

*Young*, 548 F. Supp. 2d at 1161; *Cerros v. North Las Vegas Police Department*, 2008 WL 608641, *10 (D. Nev. 2008); *Roe v. City of Spokane*, 2008 WL 2705142, *5 (E.D. Wash. 2008); and *Butler v. Los Angeles County*, 2008 WL 4911852, *5 (C.D. Cal. 2008).  In *Cerros*, for instance, the court concluded that bare allegations, asserted on the plaintiff's information and belief, that the actions of the police officers were "undertaken in accord [with] the policies and procedures of the North Las Vegas Police Department and in accord with training given such officers[]" were sufficient to state a claim of municipality liability and to survive a motion to dismiss.  *Cerros*, at *10.

The operative allegations of the Peschels' complaint state:

(1) Missoula County's employees acted with deliberate indifference to Dr. Peschel's serious medical needs.  Second Am. Compl. at ¶ 39;

(2) "Missoula County [...] established policies that caused the violation of Dr. Peschel's rights under the Fourth and Fourteenth Amendments to the United States Constitution."  *Id*. at ¶ 44;

(3) the individual Defendants acted pursuant to policies, "ordinances, regulations, customs, standard operating procedures, or official decisions adopted and or promulgated by" Missoula County.  *Id*. at ¶ 45;

(4) Defendant Sheriff Mike McMeekin "failed to properly investigate and punish prior constitutional deprivations, which encouraged a culture in [his] department[] of [...] deliberate indifference to the medical needs of inmates and arrestees."  *Id*. at ¶ 42;

ORDER - Page 11

(5) Missoula County, through McMeekin, enacted or ratified policies or practices of "failing to properly train, supervise, retain, and/or control" its employees, that permitted the violations of Dr. Peschel's rights to occur. Second Am. Compl. at ¶¶ 40, 44;

(6) Missoula County followed policies, customs, or practices relative to the hiring, employment, and retention of its employees which "amounted to indifference to the rights of persons" with whom the officers would come into contact. *Id*. at ¶ 46;

(7) Missoula County was deliberately indifferent to the obvious need to train, supervise, and discipline its employees relative to their conduct in responding to medical needs. *Id*. at ¶¶ 47-48, 51; and

(8) Missoula County's policies of inaction caused the constitutional deprivations and resultant damages of which Peschel complains. *Id*. at ¶¶ 45, 51, 52, 53.

In view of the substantive requirements essential to impose liability upon a municipality under § 1983, allegations that a municipality had a custom, policy or practice that was the "moving force" behind an asserted constitutional violation are sufficient to survive a motion to dismiss. Read in their entirely, the Peschels' allegations are sufficient to survive the County Defendants Fed. R. Civ. P. 12(b)(6) challenge.

### b.     <u>Ratification</u>

Missoula County challenges the Peschels' theory of municipality liability which is based on McMeekin's alleged ratification of the Missoula County employees' conduct. *See* Second Am. Compl. at ¶ 40. The Peschels' ratification

ORDER - Page 12

theory allegations, however, are sufficient to state a claim and to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

For purposes of establishing a municipality's liability, the United States Supreme Court has recognized that a policymaker's ratification of an employee's conduct can constitute a policy of the municipality because the policymaker's authority "is necessarily the authority to make *final* policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (emphasis in original). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id*. (emphasis added). Thus, one of the three recognized ways of establishing the existence of a policy or custom of a municipality is "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1155 (9th Cir. 2007) (emphasis added) (quoting *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002)).

Dr. Peschel alleges that the individuals who violated his rights "were officials with final policy-making authority." Second Am. Compl. at ¶ 49. Under *Rosenbaum*, the Peschels' allegations are sufficient to establish the existence of a Missoula County policy under the theory of ratification.

ORDER - Page 13

Under a ratification theory a plaintiff must, as a matter of proof, establish that the official with final policymaking authority made a conscious, affirmative, or deliberate choice, from among various alternatives, to follow a particular course of action. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Missoula County argues the Peschels have failed to establish that McMeekin made a conscious, deliberate choice to ratify the Missoula County employees' conduct and, in accordance with *Lassiter v. City of Bremerton*, ___ F.3d ___, 2009 WL 467060 (9th Cir. 2009), their failure renders their ratification theory defective as a matter of law.

Missoula County's reliance on *Lassiter*, however, is misplaced. *Lassiter* addressed the substantive merits of the plaintiffs' proof of their municipality liability claim in the context of a motion for summary judgment. 2009 WL 467060 at * 1-2, and 5. The decision did not address the standard for pleading a municipality liability claim.

### c.   Constitutional Right

Missoula County argues the Peschels cannot state a claim of municipality liability because they have failed to allege a viable constitutional right of which Dr. Peschel was deprived. Specifically, Missoula County argues Dr. Peschel has

only alleged Defendants violated his rights under the Eighth Amendment to the United States Constitution, which only affords protection to a person convicted and sentenced for a crime.  *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

Missoula County is correct that the Eighth Amendment does not apply to a pretrial detainee like Peschel.  Rather, a pretrial detainee's challenge to conditions of confinement are evaluated under the Due Process Clause of the Fourteenth Amendment.  *Lee*, 250 F.3d at 686; *Redman v. County of San Diego*, 942 F.2d 1435, 1440 (9th Cir. 1991) (en banc), *cert. denied*, 502 U.S. 1074 (1991); and *Lolli v. County of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003).

This being said, the Peschels have alleged Defendants violated Dr. Peschel's rights under the Fourteenth Amendment.  Second Am. Compl. at ¶ 44. Consequently, the Peschels have alleged a due process claim sufficient to withstand dismissal under Rule 12(b)(6).

### 2. Defendant Mike McMeekin

The County Defendants move to dismiss all of the Peschels' federal claims pled against McMeekin.  They argue the Peschels have failed to set forth sufficient factual allegations establishing that McMeekin personally participated in any of the conduct alleged in the Second Amended Complaint.  The County Defendants

ORDER - Page 15

contend the Peschels have failed to allege McMeekin's "integral participation" in any alleged violation of Dr. Peschel's constitutional rights, and they argue McMeekin cannot be held liable based only on his position as a supervisor.

The County Defendants accurately state that a claim under 42 U.S.C. § 1983 against an individual defendant requires proof that the individual defendant personally participated in, and had an integral involvement in the alleged unlawful conduct. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008). For liability to exist an individual must be an actual and integral participant as opposed to a mere bystander; each individual's liability must be based on his or her own conduct. *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996). The individual's own conduct must have caused a constitutional deprivation. The focus is on the specific facts of each individual's personal acts or omissions, and the direct causal connection between those acts and the constitutional violation. *Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988).

> A person deprives another of a constitutional right, where that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which[that person] is legally required to do that causes the deprivation of which complaint is made."

*Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978)).

ORDER - Page 16

The Peschels, however, do not seek to impose liability on McMeekin based on his own on-the-scene, personal and integral participation in the alleged unlawful conduct committed against Dr. Peschel at the MCDF on August 18, 2007.  Instead, the Peschels contend McMeekin is liable for his personal conduct as the supervisor of the MCDF Officers named as individual Defendants in this action.

Personal participation, however, is not the only basis that liability may be imposed under 42 U.S.C. § 1983.  Rather, a plaintiff may, within limits, establish that a supervisor is liable for his or her involvement in the conduct of the supervisor's subordinates.  *See Torres*, 548 F.3d at 1206.

A supervisor may not be held vicariously liable for the conduct of a subordinate as there is no *respondeat superior* theory of liability under 42 U.S.C. § 1983 in the absence of a state law imposing such liability.  *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citation omitted).[2]

The supervisor can be held liable based on the supervisor's own individual conduct.  The inquiry focuses on whether the supervisor's personal action or inaction caused a civil rights violation to occur.  Thus, a supervisor can be liable

---

[2]The Peschels do not argue that Montana law imposes vicarious liability upon a supervisor.

ORDER - Page 17

for a subordinate's actions "if the supervisor participated in or directed the

violations, or knew of the violations and failed to act to prevent them." *Taylor*,

880 F.2d at 1045.  Liability can be imposed on a supervisor "if there exists either

(1) his or her personal involvement in the constitutional deprivation, or (2) a

sufficient causal connection between the supervisor's wrongful conduct and the

constitutional violation." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001)

(internal quotations and citations omitted).  "The requisite causal connection can

be established ... also by setting in motion a series of acts by others which the

actor knows or reasonably should know would cause others to inflict the

constitutional injury." *Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th

Cir. 2004) (quotation omitted).  "The critical question is whether it was reasonably

foreseeable [to the supervisor] that the actions" of his or her subordinates would

lead to the violations of the plaintiff's constitutional rights which are alleged to

have occurred.  *Id*.

> Specifically, a supervisor can be liable for his or her direct involvement in

the implementation of a policy.

> Supervisory liability exists even without overt personal participation in the
> offensive act if supervisory officials implement a policy so deficient that the
> policy "itself is a repudiation of constitutional rights" and is "the moving
> force of the constitutional violation."

ORDER - Page 18

*Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (quoting

*Thompkins v. Belt*, 828 F.2d 298, 304 (9th Cir. 1991)).

The Peschels have pled sufficient allegations which, if true, would impose liability on McMeekin for his personal involvement in controlling the actions of his subordinates.  The Peschels allege McMeekin "personally participated in the deprivation of Dr. Peschel's constitutional rights by enacting or ratifying policies that permitted his injuries to occur, and by failing to properly train, supervise, retain, and/or control the law enforcement personnel who injured Dr. Peschel." Second Am. Compl. at ¶ 40.

The Peschels also allege McMeekin was aware of, or reasonably should have known that the MCDF Officers' conduct would lead to the violations of Dr. Peschel's rights to receive medical care and his rights under the Fourteenth Amendment which he alleges occurred.  Second Am. Compl. at ¶ 41.  They allege Defendants "acted with deliberate indifference to Dr. Peschel's serious medical needs" in violation of his constitutional rights.  *Id*. at ¶ 39.  The Peschels allege McMeekin's conduct "set in motion" the MCDF Officers' wrongful conduct which caused deprivations of Dr. Peschels' constitutional rights.  *Id*. at ¶ 43.

ORDER - Page 19

It remains to be seen whether the Peschels can actually sustain the burden in establishing McMeekin's individual liability.  The Peschels' allegations, while sparse, are sufficient to state a claim against McMeekin.

### 3.    <u>Qualified Immunity</u>

The County Defendants move to dismiss the Peschels' claims against McMeekin and the MCDF Officers on the grounds that they enjoy qualified immunity from suit under the facts of this case.[3]  The Court disagrees.

Government officers who are sued for allegedly violating a plaintiff's constitutional rights enjoy immunity from liability under certain qualified circumstances.  If the requisite circumstances are established then qualified immunity provides immunity from suit as opposed to a mere defense to liability; the immunity provide a defendant "an entitlement not to stand trial or face the other burdens of litigation."  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

In considering qualified immunity there are two inquiries the Court must make.  *Saucier*, 472 U.S. at 200.  First, the threshold question is whether the facts alleged, if true, establish that the officer's conduct violated a constitutional right.

---

[3]Although not necessarily advisable in every case, a defendant may raise the qualified immunity defense in a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004)

*Id*. at 201.  If there is no constitutional violation then no further inquiry is necessary.  *Id*.

If a violation of a constitutional right can be found, then the second inquiry is whether the right was clearly established.  *Saucier*, at 200.  Under this inquiry a defendant may be shielded from liability if his or her "actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).[4]

Under the first qualified immunity inquiry, the County Defendants argue the Peschels have failed to state a legally cognizable claim for a violation of a constitutional right because contrary to the Peschels' allegations Dr. Peschel was not afforded any rights under the Eighth Amendment.  For the reasons discussed above, however, the Due Process Clause of the Fourteenth Amendment afforded

---

[4]In *Saucier*, the Supreme Court essentially mandated that the courts make these two inquiries in the proper sequence.  *Saucier*, 472 U.S. at 200.  Upon reconsideration, however, the Supreme Court has since determined that the sequence for considering the two inquiries is no longer mandatory, although the sequence may still be beneficial.  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  Instead the courts may exercise their "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id*.  For purposes of the County Defendants' motion the Court will follow the sequence established in *Saucier*.

Dr. Peschel certain rights to medical care as a pretrial detainee.  Second Am.

Compl. at ¶ 44.  *See Lee*, 250 F.3d at 686; *Lolli*, 351 F.3d at 418-19.

A plaintiff's claim alleging officials deprived him of proper medical care

under the Fourteenth Amendment is governed by the same standards established

under the Eighth Amendment.  *Lolli*, 351 F.3d at 419.  The appropriate inquiry

into a state actor's conduct is whether he or she exhibited deliberate indifference

to a serious medical need, or caused the unnecessary and wanton infliction of pain.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Specifically, a pretrial detainee must

show:

> that he was (1) "confined under conditions posing a risk of 'objectively,
> sufficiently serious' harm" and (2) "that the officials had a 'sufficiently
> culpable state of mind' in denying the proper medical care."

*Lolli*, 351 F.3d at 419 (quoting *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir.

2002)).  A defendant is liable if he "knows of and disregards an excessive risk to

inmate health and safety."  *Id*. (quoting *Gibson v. County of Washoe*, 290 F.3d

1175, 1187 (9th Cir. 2002)).  "Prison officials are deliberately indifferent to a

prisoner's serious medical needs when they deny, delay, or intentionally interfere

with medical treatment."  *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.2002)

(internal quotation marks and citations omitted).

ORDER - Page 22

The Peschels have sufficiently stated a Fourteenth Amendment claim alleging the MCDF Officers denied Dr. Peschel's requests for necessary medical treatment. Dr. Peschel alleges that upon his arrival at the MCDF he was visibly exhausted, experiencing labored breathing, and showing visible signs of pain. Dr. Peschel told the officers that he was having chest pain and that he needed an EKG. The officers, however, allegedly ignored his requests for medical assistance and never provided any medical assistance to him. Second Am. Compl. at ¶¶ 31-34. The Peschels allege Missoula County's employees acted with deliberate indifference to Dr. Peschel's serious medical needs in violation of his rights. *Id*. at ¶ 39. From a pleading standpoint, these allegations sufficiently allege Defendants' deliberate indifference to Dr. Peschel's chest pain and potential heart problems which constitute serious medical needs.

Under the second qualified immunity inquiry, the County Defendants suggest the Peschels have not properly alleged that the individual Defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. The County Defendants contend the Peschels' allegations in this regard are conclusory.

Under the qualified immunity analysis, an officer must have "fair warning" that certain conduct is unconstitutional before liability can be imposed. *Hope v.*

ORDER - Page 23

*Pelzer*, 536 U.S. 730, 739-40 (2002).  The reasonableness of the notice to an officer of unlawful conduct is judged in light of existing law and the particular circumstances of the situation the officer faced.  Therefore, the determination of whether a right was "clearly established" "must be undertaken in light of the specific context of the case, not as a broad general proposition[.]"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The circumstances of the particular case determine the level of clarity or specificity with which the existing right must be defined, thus making it "clearly established."  In a case of an obvious violation of a constitutional right, however, a broad and general statement of the right can be sufficient, by itself, to deem the right clearly established.  *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *See Lazy Y Ranch, Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

Under the circumstances of the Peschels' allegations, it is clear that the Due Process Clause of the Fourteenth Amendment requires government officials to provide medical care to individuals injured while being apprehended by the police, and to provide medical care to pretrial detainees.  *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983); *Lolli*, 351 F.3d 418-19.  This right was clearly established as of time of the events alleged herein, and it is a right which a reasonable person would have known as the Peschels allege in paragraph

ORDER - Page 24

43 of their Second Amended Complaint.  The County Defendants are not entitled to qualified immunity.

### D.   State Law Claims

Jurisdiction over the Peschels' claims advanced under Montana law is founded upon the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). "[A] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).  "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980).  Federal courts "are bound by the pronouncements of the state's highest court on applicable state law." *Appling v. State Farm Mutual Auto. Ins. Co.*, 340 F.3d 769, 778 (9th Cir. 2003) (quoting *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)).

When an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical

ORDER - Page 25

*Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (citations omitted).  In doing so, the court must "look to existing state law without predicting potential changes in that law."  *Ticknor*, 265 F.3d at 939 (citation omitted).  The court should also rely on other persuasive authorities including treatises and decisions from other jurisdictions, as guidance. *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865 (9th Cir. 1996).

## 1. Immunity from State Law Claims - Defendants McMeekin, and the Individual MCDF Officers in their Individual Capacities

The County Defendants move to dismiss all state law claims advanced by the Peschels against Defendants McMeekin, and the individual MCDF Officers on the grounds these individual Defendants are entitled to immunity under Mont. Code Ann. § 2-9-305.

The legal issues raised by the County Defendants' invocation of § 2-9-305 were previously addressed by the Court in disposition of a motion to dismiss presented by Defendants Rusty Wickman, Mark Muir, and Gregg Willoughby, employees of Defendant City of Missoula.  The rationale previously expressed by the Court in concluding the individual City of Missoula employees were entitled

to immunity, applies with equal force to the individual Missoula County

Defendants.  *See* Dkt. #s 72 and 86.

The Peschels' Second Amended Complaint asserts claims against

Defendants McMeekin, and the MCDF Officers under state law "for acts and

omissions that occurred within the course and scope of their employment with

Missoula County."  Second Am. Compl. at ¶¶ 11-12.  The Peschels elected to also

name Missoula County as a Defendant, which they allege is liable for the state law

claims set forth in the Second Amended Complaint.  Missoula County admits, and

thus acknowledges, that the Peschels' state claims against McMeekin and the

MCDF Officers are based upon conduct taken by them in the course and scope of

their employment with Missoula County.  Answer to Amended Complaint at ¶¶ 6-

7.  These allegations satisfy the conditions for immunity under § 2-9-305(5).

The Peschels do not present any viable theory establishing that any of the

exceptions to immunity provided at Mont. Code Ann. § 2-9-306(6)(b) through (d)

are applicable in this case.  The Peschels incorporate by reference their arguments

with respect to the exceptions which they presented in response to the City

Defendants' prior Motion to Dismiss.  This Court previously addressed those

arguments and concluded that the arguments fail to establish that the exceptions to

immunity apply in this case.  Dkt. # 72 at pp. 21-23.

ORDER - Page 27

In preserving the record, the Peschels state they are "compelled to note" that the facts in *Germann v. Stephens*, 2006 MT 130, 332 Mont. 303, 137 P.3d 545 are distinguishable from the facts in this case.  They suggest the circumstances of the Council Members' conduct in *Germann* could not possibly invoke any of the exceptions to immunity under Mont. Code Ann. § 2-9-305(6).  Regardless of whether the exceptions would ever apply in circumstances such as those in *Germann*, the application of any exception under subsection (6) must be determined on a case-by-case basis.  This Court's reliance on *Germann* is not based on the fact that the exceptions to immunity were not invoked in that case, but on the Montana Supreme Court's express discussion of § 2-9-305.

The Peschels similarly also suggest *Germann* should have been controlled by Mont. Code Ann. § 2-9-111 which provides individuals and governmental entities immunity from suit for their legislative acts or omissions.  The Peschels contend that § 2-9-305 is applicable to *Germann* only by analogy and, therefore, reliance on *Germann* is not helpful to the Court's analysis under § 2-9-305 in this case.

The Peschels choose to ignore the fact that the holding in *Germann* is expressly based on Mont. Code Ann. § 2-9-305.  The court in *Germann* did not rely on Mont. Code Ann. § 2-9-111 as the basis for its decision, and it did not rely

ORDER - Page 28

on § 2-9-305 only by analogy.  While the Peschels may have wide latitude in expressing their disagreement with *Germann*, this Court does not enjoy that luxury.  Under the Ninth Circuit law, as noted above, this Court is bound by the law of Montana as interpreted by the Montana Supreme Court - it is not permitted to either ignore those interpretations or predict changes in those interpretations.

### 2.    Claims Under the Montana Constitution

The County Defendants move to dismiss all of the Peschels' claims advanced under the Montana Constitution.  The Peschels' claims against the County Defendants in this action stem from their alleged failure to provide Dr. Peschel with medical assistance, and the County Defendants argue there is no provision of the Montana Constitution guaranteeing Dr. Peschel a right to receive medical care under the circumstances of this case.

The Peschels assert the Montana Constitution provided Dr. Peschel with the "right to seek medical attention of choice[,]" and the right to receive necessary medical treatment while in pretrial custody.  Dkt. # 96 at p. 12.  The Peschels argue these rights arise, in part, under the Montana Constitution's cruel and unusual punishment provision, Article II, § 22, but also the human dignity provision, Article II, § 4.

ORDER - Page 29

Citing *Walker v. State*, 2003 MT 134, ¶ 73, 316 Mont. 103, 68 P.3d 872 (2003), the Peschels argue that in assessing a pretrial detainee's right to medical care, the proscription against cruel and unusual punishment must be read in tandem with the right to human dignity - the two of which together provide greater protection than that provided under the Eighth Amendment of the United States Constitution.

The *Walker* case involved an inmate, Mark Walker, who was held in maximum custody at the Montana State Prison while suffering from a host of mental health conditions including Hebephrenic and Schizophrenic Disorder, and Bipolar Disorder.  *Walker*, at ¶¶ 7-12.  Upon review of Walker's plight, the Court found the conditions of Walker's confinement were "intolerable".  *Walker*, at ¶ 77.

The egregious facts in *Walker* provided the Montana Supreme Court the opportunity to describe the type of circumstances which would invoke the human dignity provision in the context of an inmate's confinement in prison.  The Court emphasized that the right to dignity being inviolable, protects a person in state custody from treatment which degrades or demeans the person, deliberately reduces the person's value, or fails to acknowledge the person's worth.  *Walker*, at ¶ 81.  The Court concluded that the complementary application of the right to dignity with the proscription against cruel and unusual punishment provides

ORDER - Page 30

"citizens greater protections from cruel and unusual punishment than does the federal constitution." *Walker*, ¶ 73.

The Court proceeded to explicitly state that it would "analyze most cruel and unusual punishment questions implicating Article II, Section 22 of Montana's Constitution by reference to that section alone, [but] in certain instances where Montana's constitutional right to individual dignity (Article II, Section 4) is also specially implicated, [it would] of necessity, consider and address the effect of that constitutional mandate..." *Walker*, ¶ 75.

The facts in this case, as alleged by the Peschels, do not present the type of circumstances contemplated in *Walker* that would "specially implicate" the human dignity provision of the Montana Constitution.[5]  The Peschels do not allege the County Defendants engaged in degrading or demeaning conduct, violated Dr. Peschels' basic humanity, reduced Dr. Peschel's intrinsic worth as a person, or deprived him of his sanity.[6]

---

[5]The human dignity provision of the Montana Constitution is not implicated in every case.  Circumstances which do not violate human dignity and do not rise to the level of "unnecessary and wanton" punishment do not implicate the human dignity provision of the Montana Constitution.  *Quigg v. Slaughter*, 2007 MT 76, ¶¶ 26-28, 336 Mont. 474, 154 P.3d 1217 (2007).

[6]Alternatively, the Peschels assert that under authority of *Armstrong v. State*, 1999 MT 261, 296 Mont 361, 989 P.2d 364 (1999) individuals have a "right to make medical decisions and receive the care of their choice."  Dkt. # 96 at p. 13.

Peschels argue, in the alternative, that it cannot be seriously disputed that a pretrial detainee is entitled to at least the same protection afforded a prisoner under the cruel and unusual punishment provision of the Montana Constitution Article II, § 22.  The Court agrees.  The due process clause of the Montana Constitution which provides that "[n]o person shall be deprived of life, liberty, or property without due process of law[]" is properly construed to protect a pretrial detainee's right to receive necessary medical care while in the custody of the State.  Mont. Const. art. II, § 17.[7]

The Montana Supreme Court has not expressly recognized a pretrial detainee's right to receive medical care under the due process clause of the Montana Constitution.  Sitting in diversity, however, this Court must make a reasonable determination of the conclusion the Montana Supreme Court would reach if it were deciding this specific issue.  *Medical Laboratory Mgmt. Consultants*, 306 F.3d at 812.  This Court is also permitted to rely on other

---

The holding in *Armstrong* has no application to the facts of this case.  *Armstrong* defines the contours of the right to privacy in the context of a free citizen's private health care decisions with which the state cannot interfere.

[7]The Montana Supreme Court has recognized that Article II, Section 17 constitutes a self-executing right and provides a cause of action for money damages.  *See Dorwart v. Caraway*, 2002 MT 240, ¶ 44, 312 Mont. 1, 58 P.3d 128 (2002).

persuasive authorities as guidance in considering how the Montana Supreme Court

would construe the due process clause in the context of an individual's pretrial

detention. *Strother*, 79 F.3d at 865.

The Montana Supreme Court has looked to federal constitutional

jurisprudence as persuasive authority for developing state law under the Montana

Constitution. Where a provision of the Montana Constitution mirrors a provision

of the United States Constitution, the Montana Supreme Court looks to the

decisional law of the federal courts for guidance on developing the applicable

analysis under the identical provision of the Montana Constitution. *Quigg v.

Slaughter*, 2007 MT 76, ¶ 18, 336 Mont. 474, 154 P.3d 1217 (2007).

Accordingly, "[i]t is perfectly proper for [the court] to use criteria developed in

federal cases" when state law under a provision of the Montana Constitution is

silent or lacking. *Kafka v. Montana Department of Fish, Wildlife and Parks*, 2008

MT 460, ¶ 162, 348 Mont. 80, 201 P.3d 8 (2008) (citation omitted). The Montana

Supreme Court has found it proper "to rely on federal jurisprudence as persuasive

authority" for construing a provision of the Montana Constitution which is similar

to a provision of the federal constitution. *Id*. This Court too will look to the

federal jurisprudence which has evolved in the interpretation of the Fourteenth

Amendment - as it applies to pretrial detainees - for guidance in predicting how

ORDER - Page 33

the Montana Supreme Court would construe the due process provision of the

Montana Constitution, Article II, Section 17.[8]

The due process clause of the Fourteenth Amendment to the United States

Constitution has been construed to protect a pretrial detainee's right to receive

necessary medical treatment while in custody - at the very least to the degree of

protection provided a convicted inmate under the Eighth Amendment.  *See Lolli*,

*Lee*, and *Redman*, supra.  In fact, the protections afforded to pretrial detainees

under the Fourteenth Amendment may exceed the protections provided convicted

prisoners under the Eighth Amendment and may carry a lesser burden of proof.

*Lolli*, at 419 n.6.

The standards for protecting rights under the due process clause of the

Montana Constitution would be, at the very least, as demanding as those applied in

the Fourteenth Amendment jurisprudence.  All of the rights set forth in the

Declaration of Rights in Article II of the Montana Constitution stand on their own

"and provide individuals with fundamental rights and protections far broader than

those available through the federal system."  *Snetsinger v. Montana University*

*System*, 2004 MT 390, ¶ 54, 325 Mont. 148, 104 P.3d 445 (2004).

---

[8]"The guarantee of due process has both a procedural and a substantive
component."  *Montanas for Justice v. State ex rel. McGrath*, 2006 MT 277, ¶ 29,
334 Mont. 237, 146 P.3d 759 (2006) (citation omitted).

ORDER - Page 34

The Court concludes, however, it need not resolve the issue of whether the due process clause of the Montana Constitution requires a more demanding standard for the protection of an individual's rights than the proscriptions under the cruel and unusual punishment provision in Article II, § 22. *Quigg*, 2007 MT 76, ¶ 18 (looking to federal law under the Eighth Amendment for guidance on establishing the applicable law under Article II, § 22).

The Court, as previously discussed, finds the Peschels' allegations satisfy the proscriptions against cruel and unusual punishment as applied under the Fourteenth Amendment analysis applicable to pretrial detainees. Therefore, the same allegations would necessarily satisfy the more demanding due process standards of the Montana Constitution. *Snetsinger*, at ¶ 54.

Because the Peschels have sufficiently stated a claim under the due process clause of the Montana Constitution, the County Defendants' motion requesting dismissal of the Peschels' claims under the Montana Constitution is denied.

## IV.   CONCLUSION

Based on the foregoing, the Court hereby enters the following:

### ORDER

The County Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint filed under Fed. R. Civ. P. 12(b)(6) is **GRANTED** in part as follows:

ORDER - Page 35

1.  The Peschels' claims pled against Defendants Mike McMeekin, Kevin Riekena, Michael Hash, Jeremy Boeckel, and Garrett Johnson in their official capacities are dismissed;

2.  The MCSD and the MCDF are dismissed; and

3.  Defendants Mike McMeekin, Kevin Riekena, Michael Hash, Jeremy Boeckel, and Garrett Johnson are immune from liability for the Peschels' causes of action advanced under state law, and those claims are dismissed.

The County Defendants' motion is **DENIED** in all further respects.

DATED this 27th day of March, 2009.

 /s/ Jeremiah C. Lynch_____
Jeremiah C. Lynch
United States Magistrate Judge

ORDER - Page 36