## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

WALTER PESCHEL, M.D.,                      CV 08-79-M-JCL

                 Plaintiff,

                                    ORDER

    vs.

CITY OF MISSOULA, acting through the
Missoula Police Department,
MISSOULA CITY POLICE CHIEF RUSTY
WICKMAN, ASSISTANT CHIEF MARK MUIR,
LT. GREGG WILLOUGHBY, SGT. DANIEL JASON
HUNTSINGER, OFFICER CRAIG SERBA,
and OFFICER RYAN PRATHER,

                 Defendants.

_____

      This matter is before the Court upon motion of the Plaintiff requesting the

Court impose a sanction - in the form of a default judgment - against Defendant

City of Missoula for spoliation of evidence.

## I.    <u>INTRODUCTION</u>

      On August 18, 2007, Plaintiff Walter Peschel was arrested by officers of the

City of Missoula, Montana Police Department for the misdemeanor offense of

obstructing a peace officer in violation of Mont. Code Ann. § 45-7-302.  The

City's resultant prosecution ended in a jury acquitting Peschel of the charge.

ORDER - Page 1

Peschel commenced this action against the individual officers who participated in Peschel's arrest, their superiors, and the City of Missoula. Peschel advances claims for relief under the Federal Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, as well as Montana's Constitution and common law. All of Peschel's claims for relief are bottomed on three basic assertions: (1) the officers lacked probable cause to arrest Peschel - thus rendering his arrest unlawful; (2) the officers used excessive force to effect the arrest; and (3) the officers deprived Peschel of necessary medical treatment after the arrest. The Court has contemporaneously entered an Order granting summary judgment to the City upon the claim of unlawful arrest, having found that the officers did, in fact, have probable cause to arrest Peschel. To put Peschel's claims in perspective, review of the circumstances surrounding the arrest is in order.

On August 18, 2007, Walter Peschel was mowing the lawn at an apartment complex he owns in Missoula when tenant, Anna Martello, asked him for assistance with another tenant, Julie Huguet. Peschel, a medical doctor, found Huguet in her car nearly unconscious from an apparent prescription medication overdose. Huguet had a gun and was threatening to commit suicide. Peschel engaged Huguet to dissuade her from taking her life - while directing Martello to call 911.

ORDER - Page 2

Numerous City of Missoula police officers responded to the scene. The officers immediately ordered Peschel to get away from Huguet's car and out of the line of fire. Instead of complying with the officers' directive, Peschel asked the officers to assist him with Huguet. With their guns trained in the direction of Peschel and Huguet, the officers repeated their command that Peschel move away from Huguet's car. Again, Peschel would not move away from Huguet's car because Huguet had apparently told him she would shoot herself if he left.

The tension between Peschel and the officers escalated as Peschel, agitated by the manner in which the police responded to the situation, cursed at the officers. The standoff continued for approximately 46 minutes - the officers repeatedly ordering Peschel to move away from the car and Peschel refusing.

Eventually, Huguet lost consciousness and sloughed to the seat of the car. At that point, Peschel moved away from the car to the top of a nearby grassy knoll. From below, Officer Duncan Crawford ordered Peschel to come down the knoll. When Peschel did not immediately comply with Crawford's order, the commanding officer at the scene, Jason Huntsinger, issued the order to arrest Peschel. Officer Craig Serba responded by knocking Peschel down from behind causing him to fall down the grassy slope. Peschel states that during his arrest Officers Serba and Ryan Prather were on top of him, and that he felt someone knee

ORDER - Page 3

him in the back.  Peschel also asserts that either Serba or Crawford used a taser on him - the officers claim no taser was used.

Peschel claims he suffered various injuries during the course of the arrest. He complains that although emergency medical responders were at the scene, the officers failed to offer him necessary medical treatment - notwithstanding the fact that Officer Prather noticed that Peschel was panting and sweating after the arrest. Instead, according to Peschel, the officers placed him face down in a police car - leaving him there with windows rolled up and no air conditioning on a very hot day.

The events which occurred at the scene - including the conduct of Officers Serba and Prather in gaining physical custody of Peschel - were recorded by a video camera located in one of the police cars.  The video was eventually uploaded to the hard drive of a Missoula Police Department computer and viewed by several police officers in the days following the arrest.  At some point, however, the video was "lost", as were numerous other video recordings of unrelated police encounters.  The City of Missoula unsuccessfully attempted to retrieve the video through a forensic computer analysis.

The Court has previously held that the City had a duty, under Montana law, to preserve the video recording of Peschel's arrest throughout the course of its

ORDER - Page 4

investigation and the ultimate disposition of the criminal charge.  The obligation

continued after Peschel was acquitted since the prospect of subsequent civil

litigation was reasonably foreseeable.  Dkt. # 72, at 32-36.  The existence of the

duty to preserve the arrest video provides a basis on which the Court may exercise

its discretionary inherent authority to impose an appropriate sanction for the pre-

litigation breach of the duty to preserve evidence.  *Id*.

Peschel advocates for the entry of default judgment against the City

because, in his opinion, a less drastic sanction would not adequately cure the

prejudice visited upon him by the spoliation.  Peschel also argues that an award of

attorneys' fees and costs is warranted.[1]

The City takes the position that a sanction of any kind would be

inappropriate because the video recording was accidently - not consciously or

deliberately - deleted.  Additionally, the City argues that Peschel has not been

prejudiced by the spoliation of the video recording.

---

[1]While Peschel asserts his motion for sanctions against the City, the Court
views the motion as pertaining to all Defendants, since the City has acknowledged
that the individual officers were acting within the course and scope of their
employment thereby rendering the City liable for any tortious conduct on the
officers' part in accordance with the provisions of Title 2, Chapter 9 of the
Montana Code Annotated.

ORDER - Page 5

II.    **DISCUSSION**

A.    **Controlling Law**

A district court may, under its inherent power to control litigation, levy sanctions for the spoliation of evidence. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citing *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995)). Sanctions may be levied, however, only when a party knew, or reasonably should have known, that the spoliated evidence was potentially relevant to a claim. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). "Bad faith" is not required to justify the imposition of sanctions for the spoliation of evidence. *Id.* ("Surely a finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation.'"); *See also Leon*, 464 F.3d at 959 (citation omitted).

Included within the repertoire of available sanctions is the court's ability to: (1) exclude evidence, including spoiled evidence; (2) admit evidence of the circumstances of the destruction or spoliation; or (3) instruct the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party. *Glover*, 6 F.3d at 1329. In the exercise of its inherent power, a court may also look to Fed. R. Civ. P. 37(b)(2)(A) for guidance as to other

ORDER - Page 6

alternative sanctions such as directing "designated facts be taken as established for purposes of the action[.]" Fed. R. Civ. P. 37(b)(2)(A)(i).

In appropriate circumstances the court may also dismiss an action or enter a default judgment. *Leon*, 464 F.3d at 958 (citation omitted); *See also Halaco Engineering Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988). One such circumstance would be where the spoliated evidence relates to the matters in controversy in such a way that its spoliation threatens to interfere with the rightful decision of the case. *See United States v. National Medical Enterprises, Inc.*, 792 F.2d 906, 912 (9th Cir. 1986) (citing *North American Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986), *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985), and *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 591 (9th Cir. 1983)).

The imposition of the more drastic sanctions of dismissal or default judgment require a finding of "willfulness, fault, or bad faith." *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch, Inc.*, 69 F.3d at 348 (citation omitted)). "A finding of any of these circumstances can justify the sanction of dismissal [or entry of default]." *Halaco Engineering Co.*, 843 F.2d at 380 (citing *Munoz-Santana v. INS*, 742 F.2d 561, 564 (9th Cir. 1984)); *but cf. Hilao v. Estate of Marcos*, 103 F.3d 762, 765 (9th Cir. 1996). "Fault" is a broad and amorphous concept not

ORDER - Page 7

specifically defined in Ninth Circuit decisional law.  *See Munoz-Santana*, 742

F.2d at 564; *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures*

*Corp*, 602 F.2d 1062, 1067 (2nd Cir. 1979).  But "fault" is recognized as distinct

from "willfulness" and "bad faith" and can serve as the basis for a dismissal or

default judgment.  *United Artists Corp. v. La Cage Aux Folles, Inc.*, 771 F.2d

1265, 1270 (9th Cir. 1985), *abrogated on other grounds*, *In re Slimick v. Silva*, 928

F.2d 304, 310 (9th Cir. 1990).

The Ninth Circuit has directed that in making a determination whether to

impose a dispositive sanction, the court should consider the following factors: (1)

the existence of certain extraordinary circumstances; (2) the presence of

willfulness, bad faith, or fault by the offending party; (3) the efficacy of lesser

sanctions; (4) the relationship or nexus between the misconduct and the matters in

controversy; and, as an optional consideration where appropriate, (5) the prejudice

to the party victim of the misconduct.  *Halaco Engineering Co.*, 843 F.2d at 380.

These considerations are much the same as the considerations which guide the

imposition of sanctions under Fed. R. Civ. P. 37.[2]

_____

[2]Most recently, the Ninth Circuit has stated that before imposing a
terminating sanction for spoliation the court should consider the five-factor test
usually used to review the propriety of a Rule 37 sanction - (1) the public's
interest in expeditious resolution of litigation; (2) the court's need to manage its
dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public

A dispositive sanction is ordinarily justified in circumstances where the spoliation is the result of willfulness or bad faith. *See Leon*, 464 F.3d at 958. But even when the spoliation is less culpable, "dismissal may be necessary if the prejudice to the [nonspoiling party] is extraordinary, denying it the ability to adequately defend [or prosecute] its case." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001). The prejudice inquiry, of course, "looks to whether the [spoliating party's] actions impaired [the affected party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (quoting *United States ex rel Wiltec Guam, Inc. v. Kahaluu Construction Co.*, 857 F.2d 600, 604 (9th Cir. 1988) (citation omitted)).

The court must exercise restraint and discretion in imposing sanctions for the spoliation of evidence. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). Ultimately, the court should fashion a sanction that:

(1)     sufficiently penalizes the spoliating party. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976);

(2)     has a sufficient deterrent value to the immediate spoliating party and future litigants. *Id*.;

(3)     sufficiently cures any prejudice to an affected party by restoring that party to the position it would have been in but for the spoliation. *See*

---

policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Leon*, 464 F.3d at 958.

*Unigard Security Ins. Co. v. Lakewood Engineering & Manufacturing Corp.*, 982 F.2d 363, 369 (9th Cir. 1992) and *Kronisch v. United States*, 150 F.3d 112, 126 (2nd Cir. 1998);

(4)     sufficiently restores the accuracy of the fact-finding process. *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 167 F.R.D. 90, 106 (D. Colo. 1996); and

(5)     places the risk of an erroneous judgment on the spoliating party. *Kronisch*, 150 F.3d at 126.

With the foregoing standards in mind, the Court turns to determine whether a sanction should be imposed in relation to the spoliation of the video recording, and what that sanction should be.

## B.     The Spoliation of the Video Recording Demands an Appropriate Sanction

The Court previously determined that the City had a duty, under Montana law, to preserve the video recording of Peschel's arrest. The duty arose, in the first instance, from the obligation imposed upon officers of the Missoula Police Department to preserve the video recording, during the entirety of the criminal proceedings, and disclose that video recording to Peschel. Dkt. # 72, at 32-34; *State v. Swanson*, 722 P.2d 1155, 1158 (Mont. 1986) ("the police ha[ve] a duty to see to [the] safekeeping [of potentially exculpatory evidence]"). The duty remained through the ultimate disposition of the criminal charge and continued after the completion of the criminal proceedings which ended in an acquittal of

ORDER - Page 10

Peschel.  At that point it was reasonably foreseeable that civil litigation would ensue which obligated the City, as a potential defendant in a future civil action, to preserve the evidence.  Dkt. # 72, at 35-36.  The existence of the duty to preserve the video recording of the arrest provides the basis upon which this Court may exercise its discretionary inherent authority to impose evidentiary sanctions for the pre-litigation breach of a duty to preserve the evidence.  *Id*.;  *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1077-78 (N.D. Cal. 2006).

The principle dispute in this case is whether or not the on-the-scene officers used unreasonable force, under the existing circumstances, to arrest Peschel.  The video recording which captured the entire sequence of events surrounding the arrest constituted not only relevant evidence, but the best evidence of the circumstances existing at the time of Peschel's arrest, as well as the type and amount of force used to effect his arrest.  *See Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005) ("[the] balancing test [employed in determining the reasonableness of a seizure] entails consideration of the totality of the facts and circumstances in the particular case, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest ...") (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  *See also Smith v. City of Hemet*, 394 F.3d 689, 701 (9th

ORDER - Page 11

Cir. 2005) (the reasonableness of a seizure must be assessed by carefully

considering the "objective facts and circumstances that confronted the arresting

officers").[3]

The City contends that a sanction of any kind is not warranted, let alone a

default judgment.  As to the issue of whether the officers used reasonable force,

the City argues that a sanction is not necessary to restore the Plaintiff to the

position he would have held had the video not been lost.  According to the City,

Peschel is not prejudiced because eye witnesses to the arrest can testify as to what

happened at the scene.  The Court disagrees.

Setting aside the testimony of Peschel himself and the on-the-scene officers,

the review of three percipient witnesses' characterizations of what occurred during

the arrest exposes the flaws of the City's argument.  Mr. Pat Harrison stated in a

non-testimonial interview to police, that he "felt the take-down of Dr. Peschel was

a little excessive considering his age."  Michelle Puerner, in turn, stated in a non-

testimonial interview that the officers "kind of tackled the doctor but did not use

---

[3]By Order entered contemporaneously with this Order, the Court has held that the City is entitled to summary judgment with respect to Peschel's claim that his arrest was unlawful because the officers lacked probable cause to arrest him for obstruction of a peace officer.  Consequently, the importance of the video recording pertains solely to Peschel's claim that he was subjected to the excessive use of force during the arrest.

ORDER - Page 12

crazy force." What the testimony of these individuals will actually be remains to be seen.

Finally, Peschel's wife Peggy testified:

there's a police officer that comes up from behind my husband and he places both of his hands with a very, very strong blow to my husband's back that I could actually hear the sound of the impact. Then I proceed to see my husband almost tumbling up in the air with one of his arms up in the air as he's tumbling. And then I see my husband as he is rolling down the knoll, come flat on his chest and he was facing down with a very hard fall.

The testimony of these three percipient witnesses appears to suggest that significant force was used by Officer Serba in knocking down Peschel, but each characterizes it in a somewhat different manner. The on-the-scene officers will testify the force used was entirely reasonable under the circumstances. The obvious inherent value of the video recording is that it would have allowed the jury, the arbiter of the facts, to see the actual events unfold and make its own collective assessment as to whether the force used by Serba, and subsequently by other officers, was or was not reasonable under the circumstances. The jury would not be forced to rely on the conclusions drawn by the various witnesses as to the reasonableness of the force used. Rather, the jury would have been able to form its own conclusions - unfiltered by the perceptions or sentiments of the various witnesses.

ORDER - Page 13

The City seeks to convince the Court that the Plaintiff has not been prejudiced by the loss of the video because the "others" at the scene - including the on-the-scene officers - can simply testify as to what they saw and did at the scene. In the City's view, it should be allowed to present the testimony of the arresting officers, as well as their colleagues, that the amount of force used to arrest Peschel was reasonable and necessary. The City coyly argues that if inclined to impose a sanction, the Court should simply prohibit the officers from testifying "as to what they saw in the video."

The City's proposed panacea, however, is illusory. The mischief in the proposal lies in the fact there would effectively be no sanction whatsoever for the City's spoliation of the best evidence of what occurred during the arrest of Peschel. The purported sanction would have absolutely no punitive, deterrent, or remedial value. It is cavalier to suggest otherwise. At worst, the Court would be effectively condoning the spoliation of the best evidence available to resolve the factual dispute with the greatest accuracy. The importance of video recordings to the fair, accurate, and expeditious resolution of disputes emanating from encounters between law enforcement and the public cannot be overstated. The Court would be remiss to simply ignore, as suggested by the City, the spoliation of the video recording.

ORDER - Page 14

C.     <u>**The Appropriate Sanction**</u>

The Court has considered the factors identified in both *Halaco Engineering*,

and *Leon* to determine the appropriate sanction.  In the exercise of its properly

restrained discretion, the Court is not convinced that an outright default judgment

against the City for its spoliation of the video recording is appropriate.  Instead,

the Court designates, as established for purposes of the case, that the arresting

officers used unreasonable force to effect the arrest of Peschel.  In addition to the

issues of causation, injury, and damages, the Court shall reserve for determination

by the jury the following specific factual issues relating to the arrest itself: (1)

whether, in addition to the unreasonable physical force applied, the officers

tasered Peschel; and (2) whether the officers acted with malice.[4]

The Court is mindful that the sanction chosen effectively grants summary

judgment to Peschel on the issue of unreasonable force and, as such, is tantamount

to a default judgment.  Consequently, the Court has carefully considered each of

the *Halaco Engineering* and *Leon* factors.

---

[4]As to the alleged deprivation of medical care, Peschel has not articulated, let alone persuasively argued, that the video recording would have assisted the jury in resolving this issue.  Consequently, this issue will remain for resolution by the jury based upon the evidence presented at trial.

ORDER - Page 15

### 1.    The Existence of Extraordinary Circumstances

The City's spoliation of the video recording severely disrupted the orderly administration of justice in this case, and destroyed the evidentiary balance essential to the accuracy of the fact-finding process. *See Halaco*, 843 F.2d at 380; *Gates Rubber Co.*, 167 F.R.D. at 106. These conditions warrant a strict sanction.

Even a cursory review of the record makes clear that the spoliation of the video recording resulted in the unnecessary expenditure of judicial resources - to say nothing of the parties' resources - in resolving issues related to the spoliation. At bottom, the case is relatively simple. But because of the City's failure to use a modicum of prudence in preserving the video recording, the case burgeoned into one about computer forensics and the personal life of a disgraced police officer.[5] Most importantly, the spoliation irreparably jeopardized the accuracy of the fact-finding process to the prejudice of Peschel.

The circumstances presented mandate the sanction in order that the fair and orderly administration of justice is restored to these proceedings. Any lesser sanction would be ineffective and result in a trial divorced from the merits and focused upon the spoliation itself.

---

[5]Huntsinger was convicted of the federal felony offense of receipt of obscene material from an interactive computer service. *See* Dkt. #314 at 29.

ORDER - Page 16

The Court finds that two of the factors identified in *Leon* - the public's interest in expeditious resolution of litigation and the court's need to manage its dockets - are subsumed in the extraordinary circumstances factor discussed in *Halaco Engineering Co.* and need no further discussion.[6]

## 2.    Wilfulness, Bad Faith or Fault

Undoubtedly, the City is at fault for the spoliation of the video recording. The City seeks to minimize its fault by arguing the loss occurred accidentally due to glitches in its newly installed digital video system.  Whatever afflictions the system may have had, the record establishes the City, through its Police Department, utterly failed to have any controls in place to ensure the video recordings from police vehicles were adequately preserved.

When the video recordings contained on the "flash cards" from the patrol cars - including Officer Lear's recording of Peschel's arrest - were downloaded to a police department computer, the data was deleted from the flash cards.  The department failed to have any type of back-up system in place to ensure the preservation of the video recordings.  In view of the importance of the video

---

[6]These two factors generally support sanctions. *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997) (quoting *Adrian International Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990)).

ORDER - Page 17

recordings, it went beyond mere negligence for the department not to have adequate safeguards in place for protection of the recordings.

Peschel argues the evidence surrounding the spoliation of the video recording supports the conclusion that the spoliation was the result of gross negligence, even wilfulness, on the part of the City and its employees.  Peschel, however, has failed to sustain his burden in establishing the video recording was destroyed wilfully or in bad faith.  The evidence does, however, support the conclusion that the spoliation of the video recording was the result of recklessness.

### 3.     Nexus Between Sanctions, Misconduct and Matters in Controversy

"The most critical criterion for the imposition of a [dispositive] sanction is that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case."  *Halaco Engineering Co.*, 843 F.2d at 381.  The City does not seriously dispute, nor could it, that spoliation of the video recording relates to the principal matter in controversy - whether or not the arresting officers used reasonable force to effect the arrest of Walter Peschel.  Dkt. # 138, Defendants' Br. in Opposition to Sanctions, at 13.  As previously discussed, the video recording constituted the best evidence of what

occurred during the course of the arrest.  Spoliation of the video has directly

interfered with the rightful decision of this case, and weighs in favor of the

selected sanction.

### 4.     Risk of Prejudice to Peschel

Peschel has sustained his burden in establishing that he has been prejudiced

by the spoliation of the video recording.  The record, as developed, reflects that

the statements of the only two non-party or non-interested individuals who

observed the arrest - Pat Harrison and Michelle Puerner - clearly suggest the

arresting officers employed more force in arresting Peschel than may have been

necessary under the circumstances.  The obvious indication is that Peschel, armed

with the video, could have established that unreasonable force was used.  In the

absence of the video recording, Peschel is left with the difficult, if not impossible,

task of rebutting the various officers' testimony that the force used was entirely

reasonable under the circumstances.  The task would be particularly difficult in

view of Peschel's recalcitrance in obeying the officers' orders to move away from

Huguet's vehicle.  His recalcitrance does not, however, justify the use of

unreasonable force.

ORDER - Page 19

### 5.     Public Policy Favoring Disposition of Cases on their Merits

Ordinarily, the public policy favoring disposition of cases on their merits

counsels against a sanction in the form of a default.  *Payne*, 121 F.3d at 507

(citation omitted).  But this policy weighs little here.  As earlier pointed out, the

public has a keen interest in the fair and accurate resolution of disputes emanating

from encounters between law enforcement and the public.  At the risk of

belaboring the point, the video recording constituted the best evidence of what

occurred during Peschel's arrest.  The spoliation of that recording has hindered the

most accurate determination of this case upon its merits and weighs in favor of the

selected sanction.

### 6.     Lesser Sanction

Before imposing a dispositive sanction under its inherent powers for

spoliation of evidence, the Court must:  (1) consider the feasibility of less drastic

sanctions; and (2) provide a reasonable explanation why such alternate sanctions

would be inappropriate.  *Halaco Engineering Co.*, 843 F.2d at 381; *Leon*, 464 F.3d

at 960 (citing  *Anheuser-Busch, Inc.*, 69 F.3d at 352).[7]

---

[7]*Leon* set forth two additional criterion (implementing drastic sanctions in
the first instance and warning the party of a possible dispositive sanction) that are
inapplicable in the present situation because the disputed evidence was spoliated
prior to the commencement of this case.

ORDER - Page 20

The only potentially feasible alternative would be to instruct the jury that it may infer that the spoliated video recording would have been unfavorable to the City. *Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 824 (9th Cir. 2002) (citing *Glover*, 6 F.3d at 1329, and *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)). In appropriate circumstances, the adverse inference instruction serves to foster the remedial, deterrent and punitive goals of sanctions. It will not sufficiently accomplish these goals under the circumstances of this case.[8]

The rebuttable presumption created by the adverse jury inference instruction would not sufficiently punish the City for its spoliation nor serve as a sufficient disincentive to destroy evidence. Absent a stricter sanction, the City would proceed to trial pitting the evidence of its officers against the Peschels and the other percipient witnesses - unphased by its spoliation of the video recording.

---

[8]Peschel has also requested, and the Court has considered, awarding a monetary sanction against the City. Under its inherent powers, a district court may award a sanction in the form of attorneys fees against a party who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon*, 464 F.3d at 961 (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). Before awarding such a sanction, the court is required to make an express finding that the sanctioned party's behavior "constituted or was tantamount to bad faith." *Id.* As discussed before, the evidence in this case does not support a finding that the City acted in bad faith in relation to the spoliation of the video recording.

ORDER - Page 21

Likewise, the rebuttable presumption would be insufficient to cure the prejudice to Peschel resulting from the loss of the best evidence of what occurred during his arrest. *See Unigard*, 982 F.2d at 369 (affirming district court's exclusion of evidence on the grounds that rebuttable presumption would have been insufficient to cure prejudice).[9]

It is also important to point out that an adverse inference instruction is only effective if coupled with the admission of evidence surrounding the spoliation itself. *See United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002) (citing *Akiona*, 938 F.2d at 161). Allowing evidence regarding the spoliation would prove problematic in this anomalous case for two reasons. First, rather than bringing the jury's focus to bear upon the merits of the case, the trial would become mired in a study of computer forensics that would arguably allow the City to escape responsibility for spoliation of the best evidence. Second, evidence regarding the spoliation would entail evidence pertaining to officer Jason Huntsinger's computer capabilities and purported motive to tamper with the police

---

[9]The only evidence that could be excluded in an effort to cure the prejudice would be the testimony of the on-the-scene officers regarding the force used to gain physical custody of Peschel. This alternative would prove problematic in that the void created by the lack of testimony from the officers would engender speculation on the part of the jury. Any explanatory instruction would lead directly back to an adverse inference instruction.

ORDER - Page 22

department's computer.  A foray into these matters would not enhance, but actually degrade, the truth-finding process.

### D.    Remaining Issues

As noted, the Court shall reserve for determination by the jury the specific factual issues of whether:  (1) officers tasered Peschel; and (2) the officers acted with malice.

The issue of whether Peschel was actually tasered during the course of the arrest is hotly disputed.  The sanction imposed by the Court for the City's spoliation of the video recording of the arrest would not properly be extended to designate, as established, the fact that Peschel was tasered.  Unlike the events surrounding the arresting officers' use of physical force to gain custody of Peschel, there exists a significant dispute whether the video recording would have captured the officers' use of a taser, if in fact one was used.  In view of the impact which use of a taser could have upon a jury's assessment, extension of the sanction to include the establishment of this fact would have to be supported by significant evidence in the record suggesting that a taser was used.  Peschel has failed to sustain his burden in that regard.  Consequently, the issue of whether or not a taser was used shall be presented to the jury for determination.

ORDER - Page 23

Peschel seeks to recover punitive damages under Mont. Code Ann. § 27-1-221 for the officers' conduct in effecting his arrest.[10]  To sustain his claim for punitive damages, Peschel must prove by clear and convincing evidence that the officers acted with actual malice.  Mont. Code Ann. § 27-1-221.  Montana Code Annotated § 27-1-221(2) provides:

> (2) A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
>
>> (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
>>
>> (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

Given the escalated standard of proof necessary to establish malice sufficient to justify the award of punitive damages, the Court deems it appropriate to submit this question to the jury for determination.  The issue of punitive damages will be bifurcated from the other issues in the case which will be resolved in the first phase of the trial.  Cognizant of the subjective element of malice, and in order to ensure fair resolution of the punitive damage issue, the Court shall allow the on-the-scene officers to testify in the punitive damage phase.

---

[10]The issue of whether Peschel may maintain a claim for punitive damages remains to be determined.  The Court assumes that Peschel can maintain the claim.

ORDER - Page 24

For the reasons set forth herein **IT IS ORDERED** that the Plaintiff's motion for sanctions is GRANTED to the extent set forth herein and is, in all other respects, DENIED.

DATED this 15th day of October, 2009.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

ORDER - Page 25