# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

_____

WALTER PESCHEL, M.D.,                          CV 08-79-M-JCL

           Plaintiff,

                            ORDER

     vs.

CITY OF MISSOULA, acting through the
Missoula Police Department,
MISSOULA CITY POLICE CHIEF RUSTY
WICKMAN, ASSISTANT CHIEF MARK MUIR,
LT. GREGG WILLOUGHBY, SGT. DANIEL JASON
HUNTSINGER, OFFICER CRAIG SERBA,
and OFFICER RYAN PRATHER,

           Defendants.

_____

This matter is before the Court upon "Plaintiffs' Motion for Summary Judgment on Issue of Negligent Hiring and Retention of Former Sgt. Jason Hunstinger", and on "Defendant City of Missoula's Motion for Summary Judgment on State Law Claims". The motions are filed pursuant to Fed. R. Civ. P. 56. On August 11, 2009, the Court held a hearing on the motions. For the reasons discussed below, the Court deems it appropriate to deny Plaintiff's motion, and to grant, in part, the City of Missoula's motion.

## I.      INTRODUCTION

This action has its genesis in the August 18, 2007 arrest of Plaintiff Walter Peschel by officers of the City of Missoula, Montana Police Department.  Peschel was charged with, and prosecuted for, the misdemeanor offense of obstructing a peace officer in violation of Mont. Code Ann. § 45-7-302.  Peschel was ultimately acquitted of the charge by a jury.

Peschel commenced this action against the individual officers who participated in Peschel's arrest, their superiors, and the City of Missoula.  Peschel advances claims for relief under the Federal Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, as well as Montana's Constitution and common law.  All of Peschel's claims for relief are bottomed on three basic assertions:  (1) the officers lacked probable cause to arrest Peschel - thus rendering his arrest unlawful; (2) the officers used excessive force to effect the arrest; and (3) the officers deprived Peschel of necessary medical treatment after the arrest.  To put Peschel's claims in perspective, review of the circumstances surrounding the arrest is in order.

On August 18, 2007, Walter Peschel was mowing the lawn at an apartment complex he owns in Missoula when tenant, Anna Martello, asked him for assistance with another tenant, Julie Huguet.  Peschel, a medical doctor, found Huguet in her car nearly unconscious from an apparent prescription medication

ORDER - Page 2

overdose.  Huguet had a gun and was threatening to commit suicide.  Peschel

engaged Huguet to dissuade her from taking her life - while directing Martello to

call 911.

Numerous City of Missoula police officers responded to the scene.  The

officers immediately ordered Peschel to get away from Huguet's car and out of the

line of fire.  Instead of complying with the officers' directive, Peschel asked the

officers to assist him with Huguet.  With their guns trained in the direction of

Peschel and Huguet, the officers repeated their command that Peschel move away

from Huguet's car.  Again, Peschel would not move away from Huguet's car

because Huguet had apparently told him she would shoot herself if he left.

The tension between Peschel and the officers escalated as Peschel, agitated

by the manner in which the police responded to the situation, cursed at the

officers.  The standoff continued for approximately 46 minutes - the officers

repeatedly ordering Peschel to move away from the car and Peschel refusing.

Eventually, Huguet lost consciousness and sloughed to the seat of the car.

At that point, Peschel moved away from the car to the top of a nearby grassy knoll.

From below, Officer Duncan Crawford ordered Peschel to come down the knoll.

When Peschel did not immediately comply with Crawford's order, the

commanding officer at the scene, Jason Huntsinger, issued the order to arrest

ORDER - Page 3

Peschel.  Officer Craig Serba responded by knocking Peschel down from behind causing him to fall down the grassy slope.  Peschel states that during his arrest Officers Serba and Ryan Prather were on top of him, and that he felt someone knee him in the back.  Peschel also asserts that either Serba or Crawford used a taser on him - the officers claim no taser was used.

Peschel claims he suffered various injuries during the course of the arrest. He complains that although emergency medical responders were at the scene, the officers failed to offer him necessary medical treatment - notwithstanding the fact that Officer Prather noticed that Peschel was panting and sweating after the arrest. Instead, according to Peschel, the officers placed him face down in a police car - leaving him there with windows rolled up and no air conditioning on a very hot day.

The events which occurred at the scene - including the conduct of Officers Serba and Prather in gaining physical custody of Peschel - were recorded by a video camera located in one of the police cars.  The video was eventually uploaded to the hard drive of a Missoula Police Department computer and viewed by several police officers in the days following the arrest.  At some point, however, the video was "lost", as were numerous other video recordings of

ORDER - Page 4

unrelated police encounters.  The City of Missoula unsuccessfully attempted to retrieve the video through a forensic computer analysis.

Peschel seeks to impose liability directly on the City for the conduct of its officers in relation to the arrest of Peschel.  Peschel advances various theories of liability under Montana constitutional, common, and statutory law.  The City asserts it is entitled to summary judgment upon Peschel's state law claims.  For the reasons discussed below, the Court agrees, in part, with the City.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) entitles a party to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).   A party opposing summary judgment must identify evidence establishing that a dispute as to a particular material fact is genuine.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id*.  The party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the outcome of the case.  *Id*. at 248.

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  *Freeman v. Arpaio*,

ORDER - Page 6

125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds as noted in Shakur*

*v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

### B.    Application of Montana Law

In view of Peschel's claims under federal law, jurisdiction over his claims

advanced under Montana law is founded upon the Court's supplemental

jurisdiction under 28 U.S.C. § 1367(a).  "[A] federal court exercising supplemental

jurisdiction over state law claims is bound to apply the law of the forum state to

the same extent as if it were exercising its diversity jurisdiction."  *Bass v. First*

*Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).  "The task of a

federal court in a diversity action is to approximate state law as closely as possible

in order to make sure that the vindication of the state right is without

discrimination because of the federal forum."  *Gee v. Tenneco, Inc.*, 615 F.2d 857,

861 (9th Cir. 1980).  Federal courts "are bound by the pronouncements of the

state's highest court on applicable state law[,]" *Appling v. State Farm Mutual*

*Auto. Ins. Co.*, 340 F.3d 769, 778 (9th Cir. 2003) (quoting *Ticknor v. Choice Hotels*

*International, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)), and "are generally bound by

the dicta of state courts."  *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*,

479 F.3d 1099, 1110 n.12 (9th Cir. 2007).

ORDER - Page 7

When an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (citations omitted). In doing so, the court must "look to existing state law without predicting potential changes in that law." *Ticknor*, 265 F.3d at 939 (citation omitted). The court should also rely on persuasive authorities, including treatises and decisions from other jurisdictions, as guidance. *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865 (9th Cir. 1996).

### C.   Claims Under the Montana Constitution

#### 1.   Viability of Constitutional Claims - Other Remedies

The City of Missoula first argues that Peschel cannot advance his claims under the Montana Constitution because he has other adequate remedies available to him under Montana statutory and common law. In support of its argument the City relies on statements of the Montana Supreme Court in both *Dorwart v. Caraway*, 2002 MT 240, 312 Mont. 1, 58 P.3d 128 (2002) and *Sunburst School District No. 2 v. Texaco, Inc.*, 2007 MT 183, 338 Mont. 259, 165 P.3d 1079 (2007). The City misreads these cases.

ORDER - Page 8

In *Dorwart*, the Montana Supreme Court addressed the issue of whether a state actor's violation of a plaintiff's rights protected under the Montana Constitution gave rise to a private cause of action. The court concluded that an injured plaintiff could pursue a private cause of action under the self-executing provisions of the Montana Constitution. *Dorwart*, at ¶ 44. Although the plaintiff's common law claims of trespass and conversion had previously been dismissed, the court's recognition of viable claims under the self-executing constitutional provisions was not dependent on the unavailability of the common law claims; the absence of common law claims available to the plaintiff merely supported, but was not a condition precedent to, the recognition of a constitutional tort. *Sunburst*, at ¶ 64. The court's ruling does not support the City's argument and, in fact, the court actually rejected the argument that the availability of other adequate remedies precludes claims under the Montana Constitution. *Dorwart*, at ¶ 46.

The court in *Dorwart* emphasized that claims under the self-executing provisions of the Montana Constitution are, in fact, available to remedy injuries caused by an individual acting under the authority of the state. *Dorwart*, at ¶ 46. The court stated that:

there is a great distinction between wrongs committed by one private individual against another *and wrongs committed under authority of the state*. Common law causes of action intended to regulate relationships among and between individuals are not adequate to redress the type of damage caused by the invasion of constitutional rights.

*Dorwart*, at ¶ 46 (emphasis added).  *See Sunburst*, at ¶ 63 (noting that *Dorwart* was referring to "the invasion of constitutional rights by government actors[]"). "A police officer's actions are likely to be more harmful than those resulting from the conduct of a private citizen." *Sunburst*, at ¶ 63.

In *Sunburst*, the Montana Supreme Court considered the availability of a cause of action under the provision of the Montana Constitution which guarantees "the right to a clean and healthful environment[.]" Mont. Const. art. II, § 3.  The issue for the court's consideration was whether the provision was "self-executing". *Sunburst*, at ¶ 62.  In addressing the issue, however, the court applied the long-standing principle that the "courts should avoid constitutional issues whenever possible." *Id*.  Accordingly, the court chose to avoid deciding whether the provision was self-executing because it found the plaintiffs had other adequate statutory or common law remedies. *Id*. at ¶ 46.  Contrary to the City's contention, the ruling does not preclude constitutional claims *merely because* other remedies are available.

ORDER - Page 10

Peschel's claims under the Montana Constitution are not barred by *Dorwart* and *Sunburst*.

## 2.    Seizure - Probable Cause for Arrest

The City of Missoula requests the Court enter summary judgment dismissing Peschel's claim under Article II, § 11 of the Montana Constitution which secures his right against unreasonable searches and seizures.  In response, Peschel argues that the City of Missoula police officers lacked probable cause to arrest him on August 18, 2007, and, therefore, violated his rights under § 11.

Under Montana law, a peace officer may arrest an individual if the officer has probable cause to believe that the person committed, or is committing an offense.  Mont. Code Ann. § 46-6-311(1).  Under state law,

> [p]robable cause to arrest is established if the facts and circumstances within an officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense. [...]  Probable cause is evaluated in light of a trained law enforcement officer's knowledge, taking into account all the relevant circumstances. [...]  Furthermore, although not requiring evidence sufficient to prove a person's guilt, probable cause cannot be established based on an officer's mere suspicion of criminal activity.

*State v. Williamson*, 1998 MT 199, ¶ 12, 290 Mont. 321, 965 P.2d 231 (1998) (citations omitted).  *See also In re the License Suspension of Cybulski*, 2008 MT 128, ¶ 26, 343 Mont. 56, 183 P.3d 39 (2008).

ORDER - Page 11

In a separate Order addressing Peschel's § 1983 claims, the Court held the City of Missoula police officers had probable cause under the Fourth Amendment to the United States Constitution to arrest Peschel for obstructing a peace officer in violation of Mont. Code Ann. § 45-7-302.  The objective reasonableness standard for establishing probable cause under the Fourth Amendment is substantively the same as the probable cause standard under Montana law.  Accordingly, the police officers did not violate Peschel's rights under Article II, § 11 of the Montana Constitution.

### 3.  Seizure - Excessive Use of Force

Article II, § 11 of the Montana Constitution provides that the "people shall be secure in their persons [...] from unreasonable searches and seizures."  The Montana Supreme Court has not expressly applied § 11 to a claim asserting that a law enforcement officer used excessive force in effecting an arrest.  Sitting in diversity, however, this Court must make a reasonable determination of the conclusion the Montana Supreme Court would reach if it were deciding this specific issue.  *Medical Laboratory Mgmt. Consultants*, 306 F.3d at 812.  This Court is also permitted to rely on other persuasive authorities as guidance in considering how the Montana Supreme Court would construe the unreasonable

ORDER - Page 12

seizure clause in the context of an excessive use of force claim.  *Strother*, 79 F.3d at 865.

Where a provision of the Montana Constitution mirrors a provision of the United States Constitution, the Montana Supreme Court looks to the decisional law of the federal courts for guidance on developing the applicable analysis under the identical provision of the Montana Constitution.  *Quigg v. Slaughter*, 2007 MT 76, ¶ 18, 336 Mont. 474, 154 P.3d 1217 (2007).  Accordingly, "[i]t is perfectly proper for [the court] to use criteria developed in federal cases" when state law under a provision of the Montana Constitution is silent or lacking.  *Kafka v. Montana Department of Fish, Wildlife and Parks*, 2008 MT 460, ¶ 162, 348 Mont. 80, 201 P.3d 8 (2008) (citation omitted).  The Montana Supreme Court has found it proper "to rely on federal jurisprudence as persuasive authority" for construing a provision of the Montana Constitution which is similar to a provision of the federal constitution.  *Id*.

The Fourth Amendment to the United States Constitution similarly establishes the "right of the people to be secure in their persons [...] against unreasonable searches and seizures[.]"  This provision of the Fourth Amendment protects individuals against the use of excessive force by law enforcement in effecting an arrest.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989).  "Under the

ORDER - Page 13

Fourth Amendment, officers may only use such force as is 'objectively reasonable'

under the circumstances." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th

Cir. 2001) (quoting *Graham*, 490 U.S. at 397).

In accordance with *Quigg* and *Kafka*, this Court too will look to the federal

jurisprudence which has evolved in the interpretation of the Fourth Amendment -

applying it to a claim of the excessive use of force - and will similarly apply the

unreasonable seizure provision of the Montana Constitution, Article II, § 11 to

Peschel's claim for the excessive use of force.

The issue of whether excessive force was used by the officers in arresting

Peschel has been determined through the Court's resolution of Peschel's motion

for sanctions for spoliation of the video recording of the events which occurred at

the scene of the arrest.  The Court has concluded that the appropriate sanction for

the unexplained spoliation of the recording is to deem, as established, the fact

unreasonable force was used to effect the arrest of Walter Peschel.  Dkt. #313 at

15.  It will remain for the jury to determine the injuries, if any - together with

consequent damages - that were sustained by Peschel.[1]

---

[1]The Court has also reserved for determination by the jury whether Peschel
was tasered during the arrest.  Dkt. #313 at 15.

ORDER - Page 14

### 4.   <u>Human Dignity & Cruel and Unusual Punishment</u>

The City of Missoula asserts that summary judgment should be entered dismissing Peschel's claims under the right to human dignity and the prohibition against cruel and unusual punishment in the Montana Constitution, Article II, §§ 4 and 22, respectively.  Peschel does not present any argument opposing the City's motion on these claims.

Notwithstanding the absence of any argument from Peschel, his state constitutional claims are bottomed on Article II, § 11 of the Montana Constitution which prohibits unreasonable searches and seizures.  Thus, the issue arises as to whether Peschel can additionally assert his claims under both the human dignity and the cruel and unusual punishment provisions.  The Montana Supreme Court has not expressly addressed the issue of whether Montana law would allow a plaintiff to assert claims for a single tortious act under multiple provisions of the Montana Constitution.

Federal decisional law, however, has adopted the "explicit textual source" rule which prohibits a plaintiff from "doubling up" multiple constitutional claims stemming from a single tortious act.  "Where a claim can be analyzed under 'an explicit textual source' of rights in the Constitution, a court may not also assess the claim under another, 'more generalized,' source."  *Ramirez v. Butte-Silver Bow*

*County*, 298 F.3d 1022, 1029 (9th Cir. 2002) (quoting *Graham*, 490 U.S. at 394-95).

Under the authority of *Quigg* and *Kafka*, supra, the Court will look to federal constitutional jurisprudence, and predicts that the Montana Supreme Court would similarly adopt the "explicit textual source" rule described in *Ramirez*. Consequently, Peschel's claims must be analyzed under Article II, § 11, and not under the human dignity and the cruel and unusual punishment provisions under Article II, §§ 4 and 22, respectively. Therefore, the City's motion is properly granted and the claims are dismissed.

### 5.   Right to Privacy

The City of Missoula contends it is entitled to summary judgment upon Peschel's claims under the right to privacy at Mont. Const. art. II, § 10. Peschel argues that once he stepped away from Huguet's vehicle he had a reasonable expectation of privacy which the City of Missoula police officers violated when they tackled or pushed him down the grassy hill, arrested him, and took him into custody. Peschel contends the relevant issue is whether the police officers had probable cause to arrest Peschel.

Where a search or seizure by a law enforcement officer is lawful, i.e. supported by probable cause, the right to privacy under Article II, § 10 is not

ORDER - Page 16

implicated and cannot be relied upon to invalidate the search or seizure.  *State v.*
*Pierce*, 2005 MT 182, ¶¶ 17-18, 328 Mont. 33, 116 P.3d 817 (2005).  *See also*
*State v. Ellinger*, 223 Mont. 349, 355, 725 P.2d 1201, 1205 (1986).  Once the
"procedural safeguards attached to the right to be free from unreasonable searches
and seizures are met[,]" an individual's privacy rights under § 10 are superseded
by probable cause.  *Cf. State v. Elison*, 2000 MT 288, ¶ 53, 302 Mont. 228, 14
P.3d 456 (2000).  "Probable cause" is the "point at which the individual's interest
in privacy must yield to the governmental interest" in investigating and
prosecuting criminal behavior for the protection of the community.  *State v.*
*Sundberg*, 235 Mont. 115, 119, 765 P.2d 736, 739 (1988).  *See also State v.*
*Morris*, 230 Mont. 311, 319, 749 P.2d 1379, 1383-84 (1988) (concluding that an
individual's right to privacy is not implicated when police officer has
particularized suspicion to investigate possible criminal activity).

As discussed above, the Court has found that the police officers had
probable cause to arrest Peschel.  Therefore, the circumstances of this case do not
implicate the right to privacy under Article II, § 10 of the Montana Constitution,
and the officers did not violate Peschel's privacy rights by arresting him.  The
claim is properly dismissed.

ORDER - Page 17

### 6.    Due Process - Medical Care

The City of Missoula requests summary judgment dismissing Peschel's due process claim under the Montana Constitution asserting the City's police officers failed to provide medical treatment to Peschel at the scene of his arrest. Construing the disputed facts in favor of Peschel, there exist genuine issues of material fact warranting submission of the claim for resolution by the jury.

When Huntsinger ordered Peschel's arrest Officer Serba responded to the order by knocking Peschel down.  Peschel states he recalls blacking out and awakening to two officers on top of him.  Peschel states he felt unable to breathe and someone was kneeing him in the back.  Peschel claims that while he was face down either Officer Serba or Officer Crawford used a taser on him.

Peschel asserts he suffered injuries as a result of his arrest.  He states he had multiple bruises, a skinned knee, shortness of breath, chest pains, and was having difficulty walking.  Peschel complains that despite the fact an ambulance and medical personnel were on the scene the City of Missoula police officers did not obtain medical assistance for Peschel.

The officers state they did not seek medical attention because Peschel did not advise the officers he had any injury or condition which needed medical care. Peschel concedes he did not complain to the officers that he was injured and he

did not request medical attention on the scene.  Officer Prather, however, noticed that Peschel was panting and sweating when Prather put Peschel into the police car.

The Missoula Police Department has various policies and procedures relative to individuals who have injuries, or who have been tasered by a police officer.  The policies advise that immediately after an officer uses a taser on an individual the officers should:

> be alert to any indications that the individual needs medical care.  This includes, but is not limited to, breathing difficulties, profuse sweating, and loss of consciousness.  If any of these symptoms are present, [...], the officer shall immediately summon emergency medical aid.

Pls.' Statement of Genuine Issues (Dkt. #247) at ¶ 241-42, Ex. 40 at CITY 000738.

Further, the Police Department's policies describe the warning signs of a sudden unexpected death.  The instructions provided in the policy require officers to get medical attention to an individual who has signs of "overheating/profuse sweating", "[d]isturbances in breathing patterns or loss of consciousness", and "[c]omplaints of respiratory difficulty[.]"  The provision of medical care for these symptoms is important as the symptoms suggest the individual is at an "elevated risk for in-custody death."

ORDER - Page 19

Drawing all factual inferences in favor of Peschel, the facts could establish that the police officers used a taser on Peschel during his arrest.  If a jury concludes Peschel was tasered, then under the referenced Police Department policies the officers should have been alert to Peschel's conditions, including Peschel's panting or shortness of breath, sweating, chest pains, and his difficulty walking.  The officers would then have been required to obtain medical assistance for Peschel pursuant to the taser policies described above.

The due process clause of the Montana Constitution provides that "[n]o person shall be deprived of life, liberty, or property without due process of law."  Mont. Const. art. II, § 17.[2]  By Order entered in this case on March 27, 2009, the Court has held that the due process clause is properly construed to protect a pretrial detainee's right to receive necessary medical care while in the custody of the State.  Dkt. #103 at 32-35.

The Montana Supreme Court has not established the standards applicable to a pretrial detainee's right to receive medical care under the due process clause of the Montana Constitution.  Again, sitting in diversity this Court must make a

---

[2]The Montana Supreme Court has recognized that Article II, Section 17 constitutes a self-executing right and provides a cause of action for money damages.  *See Dorwart v. Caraway*, 2002 MT 240, ¶ 44, 312 Mont. 1, 58 P.3d 128 (2002).

ORDER - Page 20

reasonable determination of the conclusion the Montana Supreme Court would reach if it were deciding this specific issue by relying on other persuasive authorities. *Medical Laboratory Mgmt. Consultants*, 306 F.3d at 812; *Strother*, 79 F.3d at 865.

As discussed above, the Montana Supreme Court looks to the decisional law of the federal courts for guidance on developing the applicable analysis under the identical provision of the Montana Constitution. *Quigg*, 2007 MT 76, ¶ 18; *Kafka*, 2008 MT 460, ¶ 162, supra. This Court too will look to the federal jurisprudence which has evolved in the interpretation of the Fourteenth Amendment - as it applies to pretrial detainees - for guidance in predicting how the Montana Supreme Court would construe the due process provision of the Montana Constitution, Article II, § 17.

Under the United States Constitution a pretrial detainee's challenge to conditions of confinement and assertion of his right to receive necessary medical treatment while in custody are evaluated under the Due Process Clause of the Fourteenth Amendment. *Conn v. City of Reno*, 572 F.3d 1047, 1054 (9th Cir. 2009) (citations omitted). The courts borrow Eighth Amendment jurisprudence to give shape to a pretrial detainee's substantive due process rights. *Id*. The Eighth Amendment, however, establishes only "a *minimum standard of care*." *Id*.

ORDER - Page 21

(quoting *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003)

(emphasis in original)).  Thus,

> [a]n official's deliberate indifference to a substantial risk of serious harm to
> an inmate-including the deprivation of a serious medical need-violates the
> Eighth Amendment, and a fortiori, the Fourteenth Amendment.

*Conn*, 572 F.3d at 1054-55.  *See also Lolli v. County of Orange*, 351 F.3d 410, 419

n.6 (9th Cir. 2003).

To advance a constitutional claim predicated on a state actor's failure to

provide medical treatment to a pretrial detainee,

> [f]irst, the plaintiff must show a "serious medical need" by demonstrating
> that "failure to treat a prisoner's condition could result in further significant
> injury or the 'unnecessary and wanton infliction of pain.' " Second, the
> plaintiff must show the defendant's response to the need was deliberately
> indifferent.

*Conn*, 572 F.3d at 1055 (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

2006).  Deliberate indifference "requires both '(a) a purposeful act or failure to

respond to a prisoner's pain or possible medical need and (b) harm caused by the

indifference.'"  *Id*. (quoting *Jett*, 439 F.3d at 1096).

The standards for protecting rights under the due process clause of the

Montana Constitution would be, at the very least, as demanding as those applied in

the Fourteenth Amendment jurisprudence.  All of the rights set forth in the

Declaration of Rights in Article II of the Montana Constitution stand on their own

ORDER - Page 22

"and provide individuals with fundamental rights and protections far broader than those available through the federal system." *Snetsinger v. Montana University System*, 2004 MT 390, ¶ 54, 325 Mont. 148, 104 P.3d 445 (2004).

The Court concludes, however, it need not resolve the issue of whether the due process clause of the Montana Constitution requires a more demanding standard for the protection of a pretrial detainee's rights to medical care than that which is established under the Fourteenth and Eighth Amendments of the United States Constitution.  At this stage of the proceedings, viewed in the light most favorable to Peschel, the Court finds Peschel has raised a genuine issue of material fact suggesting the police officers were deliberately indifferent to Peschel's serious medical conditions.  The Missoula Police Department policies recognize that at least some of the symptoms Peschel was exhibiting following his arrest, and of which at least Officer Prather was aware, reflected medical conditions which required immediate medical attention to address the elevated risk of death.  These matters raise genuine issues of material fact establishing a viable claim under the standards as applied under the Fourteenth Amendment to the United States Constitution.  Therefore, the same facts would necessarily satisfy the more demanding standards of protection under the due process clause of the Montana

ORDER - Page 23

Constitution.  *Snetsinger*, at ¶ 54.  The City's motion with respect to Peschel's due process claim is denied.

### D.   <u>Negligence</u>

The parties have filed cross motions relative to Peschel's various negligence claims.  Peschel moves for summary judgment to establish that the City of Missoula is liable for the negligent hiring and retention of former Sgt. Jason Huntsinger.  The City of Missoula, in turn, moves for summary judgment dismissing all of Peschel's claims of negligence.

### 1.   <u>General Negligence Claims</u>

"Negligence is the failure to use the degree of care that an ordinarily prudent person would have used under the same circumstance."  *Barr v. Great Falls International Airport Authority*, 2005 MT 36, ¶ 41, 326 Mont. 93, 107 P.3d 471 (2005).  *See also* Mont. Code Ann. § 27-1-701 (imposing responsibility for the "want of ordinary care").

A cause of action for negligence requires a plaintiff to prove the following four essential elements:

> (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted.

*Peterson v. Eichhorn*, 2008 MT 250, ¶ 23, 344 Mont. 540, 189 P.3d 615 (2008).

ORDER - Page 24

Generally, summary judgment is not appropriate for negligence claims because negligence involves issues of fact. *Estate of Strever v. Cline*, 278 Mont. 165, 171, 924 P.2d 666, 669 (1996). Summary judgment dismissing a claim of negligence, however, is appropriate if the party advancing the claim fails to establish any one of the four elements. *Hagen v. Dow Chemical Co.*, 261 Mont. 487, 492, 863 P.2d 413, 416 (1993).

The City of Missoula asserts Peschel cannot establish the existence of any enforceable legal duty it owed to Peschel for purposes of his negligence claims. The City argues that the "public duty doctrine" precludes the imposition of any legal duty on the City of Missoula.

> When considering negligence claims against a public entity or person[...] it is necessary to consider the "public duty doctrine." The public duty doctrine provides that a governmental entity cannot be held liable for an individual plaintiff's injury resulting from a governmental officer's breach of a duty owed to the general public rather than to the individual plaintiff. [...] In other words, "a duty owed to all is a duty owed to none."

*Massee v. Thompson*, 2004 MT 121, ¶ 41, 321 Mont. 210, 90 P.3d 394 (2004) (quoting *Nelson v. Driscoll*, 1999 MT 193, ¶ 21, 295 Mont. 363, 983 P.2d 972 (1999)).

> [A] law enforcement officer has no duty to protect a particular person absent a special relationship because the officer's duty to protect and preserve the peace is owed to the public at large and not to individual members of the public.

ORDER - Page 25

*Gonzales v. City of Bozeman*, 2009 MT 277, ¶ 20, ___ Mont. ___, ___ P.3d ___,

2009 WL 2595618, (2009).

An exception to the public duty doctrine arises, however, when a "special

relationship" exists between the plaintiff and the governmental entity or officer.

> There are four recognized situations in which a special relationship has been
> found: (1) where a statute intended to protect a specific class of persons
> from a particular type of harm imposes a duty; (2) where the government
> agent undertakes a specific action to protect a person or property; (3) where
> government action reasonably induces detrimental reliance by a member of
> the public; and (4) where the government has actual custody of the plaintiff
> or of a third person who harms the plaintiff.

*Gonzales*, at ¶ 20.

The Court concludes the "special relationship" exception is applicable

under the facts of this case and, therefore, the public duty doctrine does not bar the

imposition of certain duties on the City of Missoula.[3]  From the moment Officer

Serba initiated physical contact with Peschel the police officers effectively had

custody of Peschel when they undertook to effect his arrest.  Thus, Peschel was in

custody at the time he alleges the officers used excessive force on him and

---

[3]The issue of the existence of a legal duty is a question of law for the court's
determination on summary judgment.  *Fisher v. Swift Transportation Co., Inc.*,
2008 MT 105, ¶ 17, 342 Mont. 335, 181 P.3d 601 (2008).  Furthermore, "where
the facts are undisputed the question of whether a 'special relationship' exists is
a question of law."  *Prosser v. Kennedy Enterprises, Inc.*, 2008 MT 87, ¶ 19, 342
Mont. 209, 179 P.3d 1178 (2008) (citation omitted).

ORDER - Page 26

breached their duty of care in providing medical treatment for his injuries.

Peschel's custody status satisfies the fourth special relationship exception.

Therefore, Peschel can pursue his negligence claim premised on the officers' use

of force to effect Peschel's arrest, and their failure to provide him with medical

care.

For purposes of Peschel's negligence claim stemming from the officers' use

of force, the issue of whether excessive force was used by the officers in arresting

Peschel has been determined through the Court's resolution of Peschel's motion

for sanctions for spoliation of the video recording of the events which occurred at

the scene of the arrest.  The Court has concluded that the appropriate sanction for

the unexplained spoliation of the recording is to deem, as established, the fact the

City's officers breached the duty of care through the use of unreasonable force to

effect the arrest of Walter Peschel.  Dkt. #313 at 15.  It will remain for the jury to

determine the injuries, if any - together with consequent damages - that were

sustained by Peschel.

With respect to Peschel's negligence claim premised on the officers' failure

to provide medical care to Peschel, the claim will survive summary judgment.  As

discussed above with respect to Peschel's due process claim for deprivation of

ORDER - Page 27

medical care, genuine issues of material fact preclude summary judgment on the claim.

### 2.    Negligent Hiring and Retention of Sgt. Huntsinger

Peschel requests the Court enter judgment in his favor on his claim that the City of Missoula is liable for negligently hiring and retaining former Sgt. Jason Huntsinger.[4]  Peschel's motion is focused on Huntsinger's misconduct as a police officer in California, and on his federal felony conviction that post-dated the events of Peschel's arrest.  In short, Peschel contends Huntsinger was unfit to serve as a police officer, and in particular, was unfit and incompetent to serve as the commanding officer on August 18, 2007, at the scene on Peggio Lane.

Before Sgt. Huntsinger was employed by the Missoula Police Department, he had resigned as a police officer in Downey, California.  An internal investigation in Downey found that Huntsinger had inappropriately taken photographs of female victims, kept the photographs in his locker, and made false statements during a resultant internal investigation.  Additionally, Huntsinger falsified reports, and failed to account for $10 of change after securing a hotel room for a victim with money given to him by the victim.

_____

[4]The City of Missoula's cross motion seeks summary judgment dismissing this negligent hiring and retention claim.

Huntsinger also provided false information on the job application that he submitted to the Missoula Police Department.  Huntsinger stated in his application that he left his job in Downey so he could move to another state when, in fact, Huntsinger remained in California for nine months after he resigned from the Downey police force.

In late 2000, after the Missoula Police Department hired Huntsinger, the department learned about Huntsinger's problems in Downey, California.  The then Chief of Police, Pete Lawrenson, investigated Huntsinger's misconduct in Downey, but ultimately Lawrenson decided to retain Huntsinger.

In 2001, then Assistant Chief of Police Rusty Wickman moved for Huntsinger's confirmation by the Missoula City Council as a city police officer. In 2006, after Wickman became Chief of Police, Wickman promoted Huntsinger to Sergeant despite Huntsinger's history in Downey, California.

In September 2007, federal investigators informed Wickman that Huntsinger was the subject of a federal investigation for criminal activity involving possible possession of child pornography through the use of a computer. Although the Missoula Police Department placed Huntsinger on administrative leave, it did not terminate his employment at that time.  In March 2009, Huntsinger pled guilty to receipt of obscene material.

Based on the foregoing description of Huntsinger's history, Peschel asserts the City of Missoula is liable for negligently hiring and retaining Huntsinger as a police officer.  Peschel contends the City's negligence in that regard exposes it to liability for Peschel's injuries and damages he allegedly sustained in the course of his arrest.

The City of Missoula argues that Peschel's negligent hiring and retention claim is barred by the public duty doctrine.  The Court does not necessarily agree that the public duty doctrine, as recognized in Montana, bars the imposition of a duty on a governmental entity to use reasonable care with respect to the hiring of law enforcement personnel.  The Court need not, however, determine the existence of an enforceable duty because, for the reasons discussed below, Peschel cannot establish the element of causation required for his negligent hiring and retention claim.

The Montana Supreme Court has recognized the viability of a tort claim against an employer for negligently hiring, supervising, or retaining an unfit employee.  *See Maguire v. State*, 254 Mont. 178,  835 P.2d 755, 760 (1992).  Although the Montana Supreme Court has not set forth the precise elements of the claim, as a general proposition negligent retention

arises when, during the course of employment, the employer becomes aware
or should have become aware of problems with an employee that indicated
his [or her] unfitness, and the employer fails to take further action such as
investigating, discharge, or reassignment.

*Bruner v. Yellowstone County*, 272 Mont. 261, 269, 900 P.2d 901, 906 (1995)

(Leaphart, J., dissenting) (citations omitted).  Liability for negligent hiring or

retention may be imposed on an employer "for injuries to third persons

proximately caused by such negligence."  *Vollmer v. Bramlette*, 594 F. Supp. 243,

248 (D. Mont. 1984) (quoting *DiCosala v. Kay*, 450 A.2d 508, 516 (1982)).

To sustain a claim of negligence a plaintiff must establish that the

defendant's negligence caused the plaintiff's injuries.  In general, "proof of

causation is satisfied by proof that a party's conduct was a cause-in-fact of the

damage alleged."  *Busta v. Columbus Hospital Corp.*, 276 Mont. 342, 371, 916

P.2d 122, 139 (1996).  In a negligence case involving multiple defendants the

plaintiff must still establish that the defendant's conduct was a cause-in-fact of the

plaintiff's injuries, but the issue is articulated as a question of whether the

defendant's conduct was a "substantial factor" in bringing about the plaintiff's

injuries.  *Id.*, 276 Mont. at 371, 373, 916 P.2d at 139-140 (citing *Rudeck v. Wright*,

218 Mont. 41, 52-54, 709 P.2d 621, 628-29 (1985)).

Peschel advances unpersuasive arguments that the City of Missoula's alleged negligent hiring and retention of Huntsinger caused Peschel's injury. Peschel asserts that Huntsinger, as the commanding officer, failed to address the crisis situation "calmly."  Instead, Huntsinger directed the officers to train their guns towards Peschel and Huguet, and he persisted in demanding that Peschel move away from Huguet's car.  Peschel contends Huntsinger unnecessarily aggravated the situation by provoking Peschel and agitating Huguet.  Peschel argues that Huntsinger's "inflexibility" resulted in a "power struggle" with Peschel that unnecessarily resulted in Peschel's arrest.

Peschel also contends Huntsinger permitted the on-the-scene officers to use excessive force to effect Peschel's arrest.  In substance, Peschel asserts that, but for the City of Missoula's negligent hiring and retention of Huntsinger, Huntsinger simply would not have been at the scene of Peschel's arrest, and the crisis would have resolved without Peschel's arrest and without subjecting him to the excessive use of force and the deprivation of necessary medical treatment.

It is undisputed that Huntsinger had no physical contact with Peschel at any time.  As the commanding officer, Huntsinger merely ordered Peschel to move away from Huguet's car, and he later ordered Peschel's arrest.  Huntsinger did not

ORDER - Page 32

direct the other officers how to effect Peschel's arrest, the amount of force they should use, or whether they should provide medical treatment to Peschel.

Peschel, however, suggests that Huntsinger did, in fact, instruct Serba as to how to effect Peschel's arrest. Peschel asserts that Huntsinger ordered Serba to "take Peschel down".

Peschel refers the Court to a recorded statement of Huntsinger made to Peschel's attorney, David Paoli, on January 16, 2009. A review of that interview reflects that Huntsinger stated he told Serba to "place [Peschel] under arrest", "I directed Officer Serba to go ahead [and] place him under arrest", and "arrest him for obstructing". Through his questioning, however, Paoli suggested to Huntsinger that "you took Dr. Peschel down by ordering Serba to arrest him[.]" Paoli again suggested to Huntsinger that he instructed Serba "to take him down". Huntsinger, however, corrected Paoli by stating that Peschel "was placed under arrest by my direction, knocked to the ground by Serba's decision. [...] I said place him under arrest." Contrary to Peschel's assertion, there is no evidence that Huntsinger ordered Peschel to be "taken down."

Peschel also refers the Court to Lt. Chris Odlin's recorded interview of Huntsinger made on August 31, 2007. In his interview Huntsinger described the layout of the scene and where Peschel was located in harms way at the top of a

ORDER - Page 33

grassy slope or hill.  Huntsinger stated he "ordered [...] Serba to arrest [Peschel...
because it] wasn't like [Serba] could just go up [the hill], grab him by the arm, and
take him down [the hill] because he still would have been directly in the line of
sight[.]"  This reference to Huntsinger's statement does not establish that
Huntsinger caused or directed Serba to use excessive force on Peschel.

There exists a paucity of Montana decisional law relating to claims of
negligent hiring and supervision.  The issue of causation in the context of a claim
of negligent hiring and supervision, however, was discussed in *Hoffman v. Austin*,
334 Mont. 357, 147 P.3d 177 (2006), *overruled on other grounds*, *Giamba v.
Kelsey*, 2007 MT 158, ¶¶ 24-25, 27, 338 Mont. 19, 162 P.3d 134 (2007) which
involved a motor vehicle accident.  Although the employee's driving record
included several speeding tickets, the court found there existed substantial
evidence that the driver was not speeding at the time of the accident.  *Id*. at ¶ 30.
Therefore, the court concluded the plaintiff failed to present sufficient evidence to
establish that the employer's negligent hiring and supervision of a driver with
several prior speeding tickets caused plaintiff's injuries since speeding was not an
issue.  *Id*.

Consistent with *Hoffman*, the evidence in this case fails to raise a genuine
issue of material fact suggesting that the City of Missoula's hiring and retention of

ORDER - Page 34

Huntsinger caused Peschel's injuries.  Huntsinger's prior conduct in Downey, California involved Huntsinger inappropriately taking pictures of female victims, keeping those pictures in his locker, lying to Downey investigators, and failing to account for money he received from a victim.  Huntsinger's conduct at the scene of Peschel's arrest does not involve any conduct similar to his inappropriate conduct as a police officer in Downey.  Huntsinger's prior misconduct did not include excessive use of force or the denial of medical treatment to a pretrial detainee.  In accordance with *Hoffman* there is no evidence that the City of Missoula's hiring and retention of Huntsinger, with his prior history, was a substantial factor in causing the injuries of which Peschel complains.

Peschel's motion for summary judgment on his claim for negligent hiring and retention of Huntsinger is properly denied.  The City's motion is granted and this claim is dismissed.

### E.   **Assault and Battery**

The City of Missoula moves for summary judgment dismissing Peschel's claims of assault and battery.  Peschel argues there exist genuine issues of material fact with respect to the issue of whether the officers committed the tort of battery.

ORDER - Page 35

Peschel does not, however, present any arguments in support of his allegation that the officers assaulted him.  Therefore, Peschel's assault claim is properly dismissed.

> The torts of assault and battery are separate and distinct torts.
>
> [B]attery is "an intentional contact by one person with the person of another which is harmful or offensive," while the tort of assault is "any intentional threat of harmful or offensive contact with another by force under circumstances which create a well founded fear of such contact, coupled with the apparent present ability to carry out the threat."

*Saucier ex rel Mallory v. McDonalds Restaurants of Montana, Inc.*, 2008 MT 63, ¶ 62, 342 Mont. 29, 179 P.3d 481 (2008).  An arresting "officer who uses more force than is reasonably necessary to effect a lawful arrest commits a battery upon the person arrested as to such excessive force."  *Smith v. Roosevelt County*, 242 Mont. 27, 35, 788 P.2d 895, 900 (1990) (quoting approved jury instruction).

As noted above, the issue of whether the officers used more force than was reasonably necessary to effect Peschel's arrest has been determined through the Court's resolution of Peschel's motion for sanctions for spoliation of the video recording.  The Court has concluded that the appropriate sanction for the unexplained spoliation of the recording is to deem, as established, the fact the City's officers used more force than was reasonably necessary to effect the arrest of Walter Peschel.  Dkt. #313 at 15.  It will remain for the jury to determine the

ORDER - Page 36

injuries, if any - together with consequent damages - that were sustained by

Peschel.  Therefore, Peschel's claim of battery is not amenable to summary

judgment.

### F.     Negligent and Intentional Infliction of Emotional Distress

Peschel asserts claims for negligent and intentional infliction of emotional

distress.  The City contends it is entitled to summary judgment on the claims

because the evidence of emotional distress presented by Peschel does not rise to

the level of serious or severe emotional distress which the Court should permit the

jury to consider.

In *Sacco v. High County Independent Press, Inc.*, 271 Mont. 209, 896 P.2d

411 (1995), the Montana Supreme Court set "a threshold level of emotional

distress that must be met for such claims [of negligent or intentional infliction of

emotional distress] to be compensable."  *Renville v. Fredrickson*, 2004 MT 324, ¶

11, 324 Mont. 86, 101 P.3d 773 (2004).  "[I]t is for the court to determine

whether[,] on the evidence[,] severe or serious emotional distress can be found; it

is for the jury to determine whether, on the evidence, it has in fact existed."

*Sacco*, 271 Mont. at 233 and 239, 896 P.2d a 425 and 429.  A cognizable claim for

emotional distress must demonstrate that the emotional distress a plaintiff suffered

was serious or severe, defined as follows:

ORDER - Page 37

> Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like.  It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.  It is only where it is extreme that the liability arises.  Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people.  The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.  The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved....[.]

*Sacco*, 271 Mont. at 234, 896 P.2d at 426.  Additionally, an individual may experience physical manifestations of "severe" or "serious" emotional distress, and the manifestations demonstrate that the distress was genuinely serious or severe. *Renville*, at ¶ 12.

Walter Peschel testified in his deposition that he suffered emotional distress. Deposition of Walter Peschel (May 6, 2009) at 250.  Specifically, he claims he experienced "significant worry that he suffered from amyotrophic lateral sclerosis," broke out with shingles, and ground his teeth so much that it irritated his tongue.

Peschel also contends the Missoula Police Department's accusations against him, and the news reports regarding his arrest and prosecution have been embarrassing to him and detrimental to his reputation.  Peschel also asserts he experienced "fright, humiliation, disgrace, [and] embarrassment[.]"

ORDER - Page 38

Peschel's assertion that he suffered fright, humiliation, worry, embarrassment, together with the alleged physical manifestations, is consistent with the definition of serious or severe emotional distress adopted in *Sacco*. Therefore, the Court concludes there exists sufficient evidence on which a jury could find Peschel suffered serious or severe emotional distress. "[A] jury is capable of determining whether the emotional distress claimed to have been sustained is 'serious' or 'severe'." *Sacco*, 271 Mont. at 233, 896 P.2d at 425. The City's motion is properly denied with respect to Peschel's emotional distress claims.

The Court further notes that Peschel's Second Amended Complaint contains a prayer for relief seeking compensation for emotional distress as an element of damages. Second Am. Compl. at 18. The high standard established in *Sacco* applies only to an independent cause of action for the infliction of emotional distress, and the standard does not apply to a claim requesting compensation for emotional distress as an element of damages pursuant to other torts in general. *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶¶ 188-191, 345 Mont. 12, 192 P.3d 186 (2008). To the extent Peschel requests compensation for emotional distress as an element of damages "[t]he measure of [his] actual damages is a factual matter for the jury to determine." *Id*. at ¶ 194.

ORDER - Page 39

**G.    Slander**

Peschel states that the witness whose testimony he intended to use in

support of his claim of slander is now equivocal about his testimony.  Therefore,

Peschel agrees that his slander claim should be dismissed.

**H.    Malicious Prosecution**

After a jury trial, Peschel was acquitted of the obstruction charge.  Having

been acquitted, Peschel maintains the prosecution was malicious.

A cause of action for malicious prosecution requires a plaintiff to allege and

prove the following six elements:

> (1) a judicial proceeding was commenced and prosecuted against the plaintiff;
>
> (2) the defendant was responsible for instigating, prosecuting or continuing such proceeding;
>
> (3) there was a lack of probable cause for the defendant's acts;
>
> (4) the defendant was actuated by malice;
>
> (5) the judicial proceeding terminated favorably for plaintiff; and
>
> (6) the plaintiff suffered damage.

*Plouffe v. Montana Dept. of Public Health and Human Services*, 2002 MT 64, ¶

16, 309 Mont. 184, 45 P.3d 10.

ORDER - Page 40

In a contemporaneously issued Order, the Court has concluded that Defendants had probable cause to arrest Peschel for obstructing a peace officer in violation of Mont. Code Ann. § 45-7-302.  Consequently, Peschel cannot establish the third element of his malicious prosecution claim.  The City of Missoula's motion for summary judgment on the claim is properly granted.

## I.   <u>Acting in Concert</u>

The City of Missoula moves for summary judgment dismissing Peschel's Eleventh Cause of Action which alleges that all Defendants acted in concert with each other to effect violations of Peschel's constitutional, statutory, and common law rights.  The gravamen of Peschel's claim is that Defendants Wickman, Muir, Willoughby, Huntsinger, Serba, and Prather acted in concert with each other in various instances, as contemplated under *Sloan*, in the commission of a tort against Peschel.

Under Montana law, an individual defendant can be held liable for the tortious conduct of another individual if the former "knows that the other's conduct constitutes a breach of duty and [the former] gives substantial assistance or encouragement to the other so to conduct himself."  *Sloan v. Fauque*, 239 Mont. 383, 385, 784 P.2d 895, 896 (1989) (quoting Restatement (Second) of Torts § 876).  Thus, "where two or more persons commit tortious acts in concert, all are

ORDER - Page 41

liable for the tortious acts of anyone." *Id*. *See also Oberson v. United States*, 311 F. Supp. 2d 917, 960 (D. Mont. 2004).

The City of Missoula can only act through its officials, employees, or agents. *See State v. Bourdeau*, 126 Mont. 266, 269, 246 P.2d 1037, 1039 (1952); *Broyles v. Thurston County*, 195 P.3d 985, 995 (Wash. App. Div. 2 2008); and *SJL of Montana Associates Limited Partnership v. City of Billings*, 263 Mont. 142, 150, 867 P.2d 1084, 1089 (1993) (Trieweiler, J., dissenting). Therefore, the actions of Wickman, Muir, Willoughby, Huntsinger, Serba, and Prather are attributable to the City and constitute the actions of the City. As a matter of law, therefore, the logic of Peschel's argument attempts, in effect, to convince the Court that the City of Missoula acted in concert with itself. Since the acting-in-concert theory applies only where two or more persons commit tortious acts in concert, the theory of liability cannot apply where all the actions are attributable to a single defendant such as the City of Missoula. The City's motion is properly granted on this claim.

The Court notes, however, that the dismissal of the acting-in-concert theory, as against the City of Missoula, does not absolve the City from liability for any torts committed by the other Defendants. Even in the absence of the acting-in-concert theory, if an individual city employee Defendant is found liable for having

committed a tort against Peschel, then the City of Missoula is vicariously liable for that tort.  Mont. Code Ann. § 2-9-103.  The City has already conceded that the individual Defendants acted within the course and scope of their employment with respect to the subject matter of this lawsuit.

## III.  CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED** that:

1.  Peschel's Motion for Summary Judgment on Issue of Negligent Hiring and Retention of Former Sgt. Jason Hunstinger is **DENIED**.

2.  The City of Missoula's Motion for Summary Judgment on State Law Claims is **GRANTED** in part as follows:[5]

    A.    Peschel's claims under the rights to privacy, to human dignity, against unreasonable searches and seizures - premised on Peschel's unlawful arrest claim, and against cruel and unusual punishment, Article II, Sections 4, 10, 11, and 22 of the Montana Constitution, are **DISMISSED**; and

    B.    Peschel's claims for slander, assault, malicious prosecution, negligent hiring and retention of Jason Huntsinger, and acting in concert are **DISMISSED**.

---

[5]The City of Missoula also moves for summary judgment dismissing Peschel's claims for punitive damages.  The Court will address that aspect of the City's motion by separate Order.

3.  The City of Missoula's summary judgment motion is **DENIED** in all

further respects.

DATED this 15th day of October, 2009.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

ORDER - Page 44